UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD HELLER, | ) | |
|     Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION |
| | ) | FILE NO. 04-11875 - WGY |
| CAP GEMINI ERNST & YOUNG WELFARE | ) | |
| PLAN (RE: ACCIDENTAL DEATH BENEFITS), | ) | |
| AMERICAN INTERNATIONAL LIFE ASSURANCE | ) | |
| COMPANY OF NEW YORK, and CAPGEMINI | ) | |
| U.S. LLC | ) | |
|     Defendants | | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR
SUMMARY JUDGMENT**

*BRIEF SUMMARY OF PLAINTIFF'S CLAIM AND DEFENSES RAISED*

Plaintiff Edward Heller was married to (the now deceased) Patricia Heller. For

approximately twelve years prior to January 2003, Patricia Heller was employed by

Capgemini U.S. LLC (Capgemini) and its predecessor.[1] As an employee, Patricia Heller

was a participant in the Capgemini Ernst & Young U.S.LLC Welfare Benefit Plan (the

Plan), which provided, among other benefits, accidental death (AD&D) benefits through

a Component Plan (hereinafter the AD&D Plan). At the time of her January 29, 2003

death, Patricia Heller's AD&D benefits were provided through a group policy issued by

the defendant American International Life Assurance Company of New York ("AIG") to

Cap Gemini Ernst & Young U.S. LLC (hereinafter CGE&Y). Patricia Heller named her

husband as the beneficiary of her $1,000,000 coverage under the AD&D Plan.

---

[1] Capgemini Ernst & Young U.S. LLC (CGE&Y) changed its name to Capgemini U.S. LLC effective April 15, 2004. (AR CG 00047) Prior to its acquisition by Capgemini, Patricia worked for Ernst & Young.

In January of 2003 Patricia Heller resigned from CGE&Y; her last day of work was Friday January 24, 2003. Five days later, on Wednesday January 29, 2003 Patricia Heller died as a result of injuries she suffered in a taxi cab accident.

By his Complaint[2], the plaintiff Edward Heller (Heller) alleges that the defendants (the Plan, Capgemini, and AIG) wrongfully denied his claim for AD&D benefits. Heller's complaint, under the Employee Retirement Income Security Act of 1974, (ERISA), codified at 29 U.S.C. §§1001-1461, seeks damages, costs, and attorney's fees arising from the improper denial of ERISA benefits. The defendants maintain that because Mrs. Heller resigned from CGE&Y effective Friday January 24, 2003, she was no longer covered by the AD&D Plan at the time of her accidental death five days later on Wednesday January 29, 2003. Heller contends that defendants have waived their defense to liability because while they claim Patricia's coverage terminated on January 24, 2003, the defendants initially accepted, and later knowingly refused to rebate the unearned premiums they took from Patricia for the period January 25, 2003 through January 31, 2003. Heller further contends that, even assuming a deferential review of the decision to deny his claim for benefits, because AIG repeatedly ignored Mr. Heller's unearned premium payment claims, and attempted to mislead him concerning the true premium payments, AIG's denial was unreasonable, and therefore arbitrary and capricious.

**ARGUMENT**

I.    PLAINTIFF IS ENTITLED TO THE $1,000,000 ACCIDENTAL DEATH
      BENEFITS BECAUSE DEFENDANTS WAIVED THEIR DEFENSE
      A. Because This Court Has The Authority To Fashion a Federal Common
         Law Remedy Under ERISA Based On Waiver Principles, This Court

---

[2] The parties have stipulated to dismissal of Count IV (G.L.c.175,§134 theory) and Count V (failure to inform of conversion rights theory) of the Complaint. Only Counts I-III remain.

Should Reject Defendants' Assertions That As Matter of Law Plaintiff
Cannot Assert Waiver Claims Under The Federal Common Law Of
ERISA

The defendants claim that plaintiff's waiver arguments, based the defendants'

acceptance and retention of premiums, at the same time they claimed no coverage

existed, are barred, as matter of law, by ERISA. (Joint Statement p. 3, 5). This is simply

not true. As explained by the First Circuit in Rodriguez-Abreu v. Chase Manhattan Bank,

986 F.2d 580, 587 (1st Cir. 1993):

> Issues of relinquishment of rights and waiver are governed by federal common
> law developed in ERISA cases rather than by particular state law although state
> law may inform the development of federal common law. Matter of Heci
> Exploration Co. Inc., 862 F.2d 513, 523 (5th Cir. 1988).

See also Iwata v. Intel Corporation, 349 F.Supp.2d 135, 142 n.1 (D.Mass. 2004) ("federal

courts have the power to fashion 'a federal common law of rights and obligations under

ERISA-regulated plans', quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822,

831 (2003) in turn quoting Pilot Life).

Because it is clear that this Court has the authority to fashion a remedy under

ERISA federal common law principles, this Court should reject Defendants' assertions

that plaintiff's waiver claims are barred as matter of law.

B. Although Waiver And Estoppel Principles Are Often Discussed Interchangeably, They
Are Separate And Distinct Legal Theories And This Court Should Ignore Defendants'
Citations to Estoppel Cases

> As explained in Appleman on Insurance:
> > Waiver can be found where there is an intentional, voluntary
> > relinquishment of a known right [or] intentional conduct inconsistent with
> > claiming that right …[because an] insurer cannot treat a contract as valid
> > for the purpose of collecting premiums, and invalid for the purpose of
> > indemnity.

5 E.M. Holmes, Appleman on Insurance 2d §28.2 at p. 324, §30.4 at p. 455 (1998); see

also 17 Lee R. Russ, Couch on Insurance §239:95 at p. 103 (3d ed. 2000). Some cases

frame the latter issue in terms of an "unjust benefit circumstance". <u>Bowers</u> v. <u>Blue Cross Blue Shield of Georgia</u>, 16 F.Supp. 2d 1374, 1378 (N.D. Ga. 1998) quoting <u>Glass v. United Omaha Life Ins Co.</u> 33 F.3d 1341, 1348 (11th Cir. 1994).  As explained in <u>Pitts v. American Security Life Ins. Co.</u>, 931 F.2d 351, 357 (5th Cir. 1991):

> Although *waiver* and *estoppel* are sometimes used interchangeably, especially in the law of insurance, there is a subtle but significant legal distinction between the two. <u>Intel Corp. v. Hartford Accident & Indem. Co., 692</u> F. Supp. 1171 (N.D. Cal. 1988) Strictly defined, *waiver* describes the act or consequences of the act of one party only, while *estoppel* exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. <u>Id.</u> at 1179.n.8. In contrast to waiver then, estoppel involves some element of reliance or prejudice on the part of the insured before an insurer is foreclosed from raising a ground for denial of liability that was known at an earlier date. See Restatement (Second) of Torts §894(1) (1977).

See also 17 Lee R. Russ, Couch on Insurance §239:96 at p. 104-105 (3d ed. 2000) (waiver and estoppel are not interchangeable); <u>Glass v. United Omaha Life Ins Co.</u> 33 F.3d 1341, 1347 n.5 (11th Cir. 1994) (same).

Because they are separate and distinct legal theories, in analyzing Plaintiff's waiver claim under the federal common law of ERISA, this Court should ignore defendants' citations to estoppel cases.

  C.  The Relevant First Circuit Decisions Support the Recognition of Plaintiff's Cause of
        Action Under the Federal Common Law of ERISA

The relevant First Circuit decisions support relief on the facts of this case, because under the federal common law of ERISA, an insurer or plan administrator can waive, by conduct inconsistent with such defense, a defense otherwise available under the policy or plan.. In a case decided last summer, <u>Glista</u> v. <u>Unum Life Insurance Company of America</u>, 378 F.3d 113, 128-132 (1st Cir. 2004), the First Circuit held that where in communications denying plaintiff's claim prior to suit, the insurer relied on a "treatment"

4

clause (defining a pre-existing condition), it was barred from later raising the

"symptoms" clause for the first time as a defense in the court proceedings. In <u>Rodriguez-</u>

<u>Abreu</u> <u>v.</u> <u>Chase Manhattan Bank,</u> 986 F.2d 580, 587-588 (1st Cir. 1993), the First Circuit

held that a participant could waive his rights to ERSIA welfare benefits under the federal

common law of ERISA. <u>Cf.</u> <u>Radford Trust</u> <u>v.</u> <u>First Unum Life Insurance Company of</u>

<u>America,</u> 321 F.Supp.2d 226, 243 n.16 (D. Mass. 2004) (noting the possibility of waiver

under federal common law of ERISA, but not necessary to address them in the case).

D. The Fifth Circuit, And A Number Of District Courts, Have Permitted Recovery Under
The Federal Common Law Of ERISA On Similar Facts Based On Waiver Principles, and
A Number of Other Courts Addressing the Issue Have Left the Issue Open While Finding
No Waiver Based on the Facts of the Particular Case

The Fifth Circuit appears to be the only Circuit thus far to recognize a general

waiver doctrine under the federal common law of ERISA. <u>Pitts v. American Security Life</u>

<u>Ins. Co.,</u> 931 F.2d 351, 356-357 (5th Cir. 1991). Most of the decisions reviewed have

analyzed waiver issues on a case by case basis, an approach apparently favored by the

First Circuit. <u>Glista</u> v. <u>Unum Life Insurance Company of America,</u> 378 F.3d 113, 130-

131 (1st Cir. 2004) ("no single answer fits all cases.").

In <u>Pitts</u> the Fifth Circuit recognized that under the federal common law of ERISA,

an insurer may, by conduct (accepting premiums), waive a defense to liability otherwise

available to it under the policy. In <u>Pitts,</u> although the group policy required a minimum of

ten enrolled employees, the insurer accepted premiums knowing that only one employee

was enrolled. The insurer never refunded the premiums, but instead used them to defray

its costs. On these facts, the Fifth Circuit held that the insurer waived, under the federal

common law governing ERISA, its right to rely on the ten employee minimum as a basis

for denying coverage. See also  <u>Rhorer v.</u> <u>Raytheon Engineers and Constructors Inc.</u>, 181

F.3d 634, 644-645 (5th Cir. 1999) (where Raytheon, having purchased an executive's company, knowingly enrolled the executive (who had been diagnosed with cancer and who Raytheon knew was no longer working at the office) on its optional life plan, despite an "active at work" requirement for coverage, and thereafter Raytheon accepted his premiums, and then shortly before the executive's death, Raytheon attempted to cancel the coverage, claiming no coverage would be effective until the executive returned to active work, but Raytheon did not return the premiums paid by the executive for more than a year, error to allow summary judgment on ERISA federal common law waiver claim that Raytheon had waived the active at work requirement). In Lauder v. First Unum Life Insurance Company, 284 F.3d 375, 381-382 (2d Cir. 2002), the Second Circuit held that where the insurer initially denied participant's ERISA claim for disability benefits on the basis that participant's coverage terminated prior to the onset of disability, (and lost), the insurer waived its right to later defend on lack of disability. Deciding that a case specific approach was best, the Second Circuit limited its holding to facts of the case.

To date, the Eleventh and Seventh Circuits, "have…rejected waiver arguments in the context of particular ERISA cases, while leaving open the question of whether the principle might be a part of the federal common law of ERISA." Russo v. Abington Mem'l Hosp. No. Civ. A. 94-195, 2002 WL 1906963 at *12 n. 19 (E.D. Pa. Aug. 1, 2002); See Glass v. United Omaha Life Ins Co. 33 F.3d 1341, 1348 (11th Cir. 1994) (where insurer did not know participant ineligible for coverage when it accepted premiums, and insurer promptly attempted to refund the premiums once it became aware the participant was not eligible- no intentional relinquishment of known right or unjust benefit circumstance on facts of case); Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 650

(7th Cir. 1993) (where insurer mistakenly wrote letters indicating employee had premium

waived life coverage (due to his disability), but it turned out that because employee was

over 60 years old at the time, he was not in fact eligible for premium waived coverage-

while leaving open question of whether some waiver principles might apply under

ERISA--no waiver shown on the facts)

A number of District Courts addressing the issue have recognized a waiver claim

under the federal common law of ERISA (based on accepting premiums), either as an

issue of first impression or based on the decisions set forth above. Russo v. Abington

Mem'l Hosp. No. Civ. A. 94-195, 2002 WL 1906963 at *12 (E.D. Pa. Aug. 1, 2002)

(waiver under federal common law of ERISA found where, as in Pitts, insurer attempted

to accept the benefit of employee's enrollment (i.e. the premiums), while at the same time

attempting to disclaim its burdens (i.e. paying claims)); Burger v. Life Insurance

Company of North America, 103 F.Supp2d 1344,1348 (N.D. Ga. 2000) (where no

dispute that insurer contemporaneously knew of disqualifying part time work by plaintiff

and continued to accept his premiums, insurer held to have waived, under ERSIA federal

common law principles, its right to recalculate benefits based on part time work, relying

on Glass); Bowers  v. Blue Cross Blue Shield of Georgia, 16 F.Supp.2d 1374, 1378-1379

(N.D. Ga. 1998)(where plaintiff left employment and obtained health insurance coverage

through COBRA, and near the expiration of COBRA period, sought a conversion policy,

but in the interim had become eligible for Medicare, which was a ground for termination

of any conversion policy issued, and insurer "mistakenly" issued conversion policy

despite knowledge of plaintiff's Medicare, and thereafter accepted premiums for eight

months before the error was "discovered", and upon discovery of the "error" the insurer

sought to cancel (not void) the conversion policy at a future date (which by agreement was extended until Court's decision), waiver claim under ERISA federal common law recognized relying on Glass, but the existence of factual questions precluded summary judgment resolution); Lamb v. Provident Ins. Co.,  1994 WL 1890828 (N.D. Miss. 1994) (where insurer accepted premiums for two years after insured's son reached age 19, and ten months after employer knew of son's age, waiver under ERISA federal common law principles recognized, following Pitts, as controlling, but factual question on when insurer knew of son's age, precluded summary judgment); Roth v. BFI Long Term Disability Group Ins. Plan, 1992 WL 300842 (E.D. La. 1992) (where plaintiff sold business to BFI and was assured he was covered under benefit plan immediately, defendant held to have waived under federal common law of ERISA the pre-existing condition provision in plan that would otherwise bar plaintiff's claim, following Pitts). As explained in Roth v. BFI Long Term Disability Group Ins. Plan, 1992 WL 300842 (E.D. La. 1992):

> The offensive use of waiver in an action for ERISA benefits, as in Pitts or the case at bar, is consistent with the generally accepted defensive use of waiver by insurers and plan administrators under ERISA.

Other District Court decisions have left the issue open, while determining no waiver was established on the particular facts of the case. Blum v. Spectrum Restaurant Group Inc. (et.al), 261 F. Supp 2d 697, 717-718 (E.D. Tex 2003) (no evidence that insurer waived good health requirement, (instead repeated reminders to sign the form), and premium which had been mistakenly deducted, was promptly identified as mistaken and promptly refunded); Hird v. Bostrom Seating Inc, 147 F.Supp.2d 1190 (N.D. Ala. 2001) (where employee and employer agreed to early retirement arrangement with full

continuing benefits, but employer never informed insurer of agreement, and thereafter employee paid premiums which employer forwarded to insurer, but once insurer discovered early retirement arrangement, it promptly disclaimed coverage and refunded premiums, even though waiver possible under ERISA, no waiver by insurer established on facts); Variety Children's Hospital Inc. v. Blue Cross /Blue Shield of Florida, 942 F.Supp. 562 (S.D. Fla. 1996) (where employee separated from employer and obtained continuing health coverage through COBRA, (paying premiums to a COBRA service provider), and thereafter was involved an auto accident while pregnant, leading to premature delivery and expensive medical treatment for her newborn, before its death several weeks later, and after promptly investigating the situation, the insurer denied coverage for new born, and refunded premiums, while waiver possible under ERISA federal common law principles citing Glass, no waiver established on facts).

The only decision located flatly rejecting a waiver claim under the federal common law of ERISA is White v. Provident Life & Accid Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997). In White, an employee with group life coverage became disabled and applied for and received a conversion policy, without surrendering his group life coverage. The plan precluded simultaneous group and individual coverage. The employee paid premiums for four years before the insurer discovered its "mistake", and upon becoming aware, the insurer immediately tendered the premiums mistakenly paid by employee, and disclaimed coverage under the conversion policy. The Fourth Circuit rejected plaintiff's claim under ERISA federal common law principles that insurer had waived its rights

because waiver was not recognized under ERISA.[3] The opinion does not mention, nor discuss, any of the prior decisions cited above.

Because many Courts have recognized the applicability of waiver principles to ERISA claims under federal common law, and the existing First Circuit precedent appears to support it, this Court can provide a remedy while limiting it to the facts of this case.

E. Applying Waiver Principles to the Undisputed Facts Of This Case, Demonstrates that by Initially Deducting and Later Refusing to Rebate the Premiums for Patricia's Coverage for the Period January 24, to January 31, 2003, In Particular After Obtaining Knowledge That Those Premiums Were "Unearned" Due to Defendants' Claim That Patricia's Coverage Terminated Upon Her January 24, 2003 Resignation, the Defendants Waived Their Right to Claim that Patricia Was No Longer Covered at the Time of Her January 29, 2003 Accidental Death

As demonstrated in the cases cited above, it is well established law that "[a]cceptance and retention of premiums with knowledge of the facts may serve to create a waiver … as to defenses inconsistent with such retention." 17 Lee R. Russ, Couch on Insurance §239:121 at 239-138 (3d ed. 2000). Review of the cases and authorities cited above reveals that the pertinent criteria for determining whether a waiver has occurred include: (i) whether the defendant had knowledge of the relevant facts at the time it accepted the premium, and (ii) how the defendant responded once it discovered the true facts (ie. did the defendant promptly investigate? did the defendant promptly refund the unearned premiums upon discovery of the true facts?). See cases cited above; see also 5 E.M. Holmes, Appelman on Insurance 2d §30.4 at p. 457 (1998).

---

[3] Plaintiff notes, however, that even if the Fourth Circuit had recognized a waiver claim under the federal common law of ERISA, such a claim would likely fail on the facts of White, where it was undisputed that as soon as the insurer discovered the error, "Provident immediately attempted to repay [the] premiums."

Applying this law to the undisputed facts of this case demonstrates that the defendants waived their right to claim that Patricia's coverage terminated on January 24, 2003, because based on the facts outlines below-there is no dispute that the defendants violated one of the most fundamental principles of law- you cannot charge someone for insurance coverage and at the same time refuse to provide it:

a.   Premiums for the AD&D coverage were payable monthly, in arrears by Patricia through payroll deductions; (Plaintiff's Facts #9, 26)

b.   it appears as though[4] CGE&Y and AIG agreed that CGE&Y would act as the agent for AIG in determining the premiums payable to AIG. (Facts #31, 42) Cf. Canada Life Assurance Co. v. Estate of Lebowitz, 185 F.2d 231, 237 (4th Cir. 1999).

c.   on January 30, 2003 CGE&Y informed AIG of Patricia's resignation (on January 24, 2003) and her accidental death on January 29, 2003; (Fact # 20)

d.   on January 31, 2003, CGE&Y deducted the full premium from Patricia's last paycheck with full knowledge that: (i) Patricia had resigned from CGE&Y; (ii) her last day of work was January 24, 2003 and (iii) Patricia had died in a taxi cab accident on January 29, 2003;(Facts #19-23))

e.   this was no accident or clerical error; CGE&Y admits that it was its standard payroll practice to deduct the full premiums

---

[4] Defendants have objected to providing information on their premium practices.

from the last paychecks of departing employees without rebate or refund of any unearned premium; (Facts # 24, 33)

f.    CGE&Y forwarded the full premiums for Patricia's coverage for the entire month of January 2003 to AIG; (Fact #23)

g.    Upon receiving the claim, one of AIG's first tasks was to "verify whether premiums for this coverage were being deducted and the date that premiums for this coverage were paid through"; (Fact #31)

h.    By April 28, 2003 (at the latest) AIG had knowledge that CGE&Y/AIG had charged Patricia a premium for a period that CGE&Y/AIG claimed she was not covered, i.e. January 25, 2003 through January 31, 2003;(Fact #33)

i.    After obtaining knowledge of the unearned premium, neither CGE&Y or AIG did anything to initiate a refund of the unearned premium; (Fact #25)

j.    On June 9, 2003 Edward Heller argued to AIG that because CGE&Y/AIG were retaining premium for Patricia's coverage for the entire month of January 2003, Patricia should be covered for the entire month; (Fact #37)

k.    AIG misleadingly responded to Mr. Heller that it was not retaining unearned premium; rather it had been told by CGE&Y that premiums had only been paid through the last day worked (January 24, 2003); (Facts #37-39)

12

l.      Despite its knowledge of the true facts, AIG did nothing to initiate a refund of the unearned premium. Instead, AIG issued a letter dated June 23, 2003 denying Mr. Heller's claim on the basis that Patricia's coverage had terminated on her last day of work (January 24, 2003) and because she had not applied for a conversion policy, no benefits were available for her January 29, 2003 death. AIG's letter did not mention or address Mr. Heller's unearned premium argument; (Facts #40-46,25)

m.      Mr. Heller followed up with CGE&Y to determine the premium payments taken from Patricia's coverage. By letter dated July 31, 2003 (copied to AIG) CGE&Y confirmed its April 28, 2003 e mail to AIG to the effect that the full $24.00 premium had been deducted and although coverage terminated January 24, 2003, no rebate or refund was given for the period January 25, 2003 through January 31, 2003.(Facts #47-48)

n.      Mr. Heller appealed the denial on August 20, 2003 claiming that AIG could not claim that Patricia's coverage had terminated on January 24, 2003 when CGE&Y/AIG had taken the premium for the period through January 31, 2003. (Fact #49)

o.      In its December 11, 2003 denial, although on notice, AIG completely ignored the sole basis for Mr. Heller's appeal; (Facts #50-54)

      p.        In subsequent letters, AIG and Capgemini avoided the issue of

unearned premiums and did not refund them. (Facts #55-58,

25).

## II. BECAUSE THE PLAN REPEATEDLY FAILED TO ADDRESS THE UNEARNED PREMIUM PAYMENT ARGUMENT MADE BY MR. HELLER, REGARDLESS OF WHAT STANDARD OF REVIEW IS APPLIED, THE DECISION DENYING BENEFITS WAS INCORRECT, UNREASONABLE, ARBITRARY AND CAPRICIOUS

As explained by this Court in Radford Trust  v. First Unum Life Insurance

Company of America, 321 F.Supp.2d 226, 238-239 (D. Mass. 2004):

> Courts review a denial of benefits under an ERISA-governed benefits plan
> de novo, unless the plan "gives the administrator or fiduciary discretionary
> authority to determine eligibility for benefits or to construe the terms of
> the plan," in which case the question is whether the denial was arbitrary
> and capricious. See Firestone Tire & Rubber Co v. Bruch , 489 U.S. 101,
> 114-15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Recupero v. New England
> Tel. and Tel. Co., 118 F.3d 820, 826-27 (1st Cir. 1997). …
>
> …Recupero recognizes that there are two elements of judicial review in
> this context; the depth of inquiry into the factual and legal bases for the
> decision under review, and the standard that decision must meet. In all
> ERISA cases, the inquiry should be searching, that is 'de novo ', but in
> cases where an ERISA- governed plan gives the administrator or fiduciary
> discretion, the question is whether the decision under review was
> reasonable, whereas in cases where no such discretion is vested, the
> question is whether the decision was correct.

See also Pari-Fasano v. ITT Hartford Life and Accident Insurance. Co., 230 F.3d 415,

419 (1st Cir. 2000) (an "insurer's eligibility determination [that is] unreasonable in light

of the information available to it…necessarily constitute[s] an abuse of discretion, [but] a

reasonable determination necessarily would not.")

        The Welfare Benefit Plan Administrative Document in this case clearly contains

some language that, if followed, was intended to provide for arbitrary and capricious

review of benefit decisions. However, a number of facts concerning the handling of this

particular case, bring into question whether the deferential standard should be applied in this case, including:

1. Under the Welfare Benefit Plan Administrative Document, the *plan administrator*, (CGE&Y) was given discretion to determine eligibility for benefits and to construe the terms of the Component Plans; (Facts #60-61)
2. However, it is undisputed that AIG, not CGE&Y made and communicated the decision denying benefits. <u>Rodriguez-Abreu</u> v. <u>Chase Manhattan Bank,</u> 986 F.2d 580, 583-584 (1st Cir. 1993) (where relevant plan documents gave plan fiduciaries discretionary authority, but plan administrator actually made the decision; *de novo,*, not arbitrary and capricious, standard of review appropriate);
3. Confusingly, the SPD (Facts #65-66) states that:
   a. "AIG is solely responsible for evaluating claims and paying benefits under" the AD&D Plan;
   b. "AIG has sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy" ; and
   c. AIG will decide the claim and any appeal; but that
   d. the claimant has the right to have CGE&Y as Plan Administrator review and reconsider any denial;
   e. yet when Counsel for Heller inquired about such review he was told by CGE&Y "there is no further review and consideration" and AIG's December 11, 2003 letter was final (Fact #58).
4. Further, the SPD states that in the event of a conflict between the SPD, the insurance contract[5] and the Administrative Document, the Administrative Document will control.(Fact #66)
5. AIG, in its June 23, 2003 denial letter, attributed key factual determinations to CGE&Y. (Fact#42)

Perhaps the submissions of the defendants will help clarify some of these issues.

Even assuming a more deferential standard of review applies, however, the undisputed facts demonstrate that the decision to deny was unreasonable in light of the available facts. <u>Pari-Fasano</u> v. <u>ITT Hartford Life and Accident Insurance. Co</u>., 230 F.3d 415, 419 (1st Cir. 2000).

The undisputed facts are that:

1) Upon receipt of Mr. Heller's claim in April 2003, one of the first inquiries made by AIG was to determine "whether premiums for this coverage were being

---

[5] The group insurance contract is silent on these issues.

deducted and the date that premiums for this coverage were paid through." (Facts #31)

2) By April 28, 2003 AIG learned that CE&Y had deducted the full premium for the month of January 2003 and had not rebated or refunded any of the unearned premium for the period January 25, 2003 to January 31, 2003. (Fact # 33)

3) On June 9, 2003 Edward Heller argued to AIG that because the full premium for the entire month of January had been paid, Patricia should be covered at the time of her January 29, 2003 death. AIG misleadingly responded to Mr. Heller that CGE&Y had informed AIG that premiums were only paid through the last date Patricia worked, even though AIG knew the true facts, namely that premium had been paid for the entire month without rebate. (Facts#37-39 and 33) It simply cannot be reasonable to mislead claimants about crucial facts. This is not a case where an ERISA decision-maker had to choose between competing fact claims. This was an ERISA decision-maker ignoring facts that it found inconvenient.

4) By letter dated June 23, 2003, AIG denied Mr. Heller's claim for AD&D benefits under the AD&D Plan. Although AIG's June 23, 2003 denial letter referenced eight different sources of information on which it based decision, including the payroll register for Patricia's last paycheck, suspiciously, AIG's denial letter did not reference the April 28, 2003 e mail from CGE&Y to AIG concerning CGE&Y's failure to rebate or refund premium for Patricia's coverage after her January 24, 2003 departure. (Facts #41-46)

5) AIG's failure to reference CGE&Y's April 28, 2003 e mail is surprising in view of AIG's position in the June 23, 2003 denial letter that CGE&Y, not AIG,

determined the date premiums were paid through, and its misrepresentation of the content of the CGE&Y e mail. In the June 23, 2003 letter AIG misleadingly stated: "[Policyholder-CGE&Y] confirmed that premiums for this coverage were paid through her last day worked and her coverage under this Policy ended on her last day worked." (Facts #42-43 Compare to 33, 39)

6) Although in his June 9, 2003 telephone call with AIG, Mr. Heller expressly raised the issue of premium payments having been made by Patricia for the entire month of January, 2003 (Facts#37-38), AIG chose to completely ignore the issue in its June 23, 2003 letter denying the claim. (Fact #44) Toland v. McCarthy, 499 F.Supp. 1183, 1190 (D. Mass. 1980) (ERISA decision maker has a duty to develop "reasonably available evidence"). Nor, obviously, did AIG offer to rebate the unearned premiums. (Facts# 40-46, 25) It simply cannot be reasonable to ignore facts raised by claimants justifying payment, and then deny the claim on completely different grounds.

7) Having been (misleadingly) informed by AIG that CGE&Y took the position that premiums had only been paid through her last day worked, Mr. Heller contacted CGE&Y to follow up on Patricia's premium payments. By letter dated July 31, 2003 CGE&Y informed Mr. Heller of its April 28, 2003 e mail to AIG (Fact# 47):

8) Apparently someone at either AIG or CGE&Y was concerned about Ms. Oldham's candor in her July 31, 2003 letter to Mr. Heller and insisted that she send an amended and "softened" letter, which she did on August 13, 2003. Unlike the July 31, 2003 letter, Ms. Oldham's August 13, 2003 letter said nothing about

Patricia's coverage terminating on January 24, 2003 or the lack of rebate.[6] (Facts#47-48) It simply cannot be reasonable under ERISA to mislead claimants about the true state of facts.

9) By letter dated August 20, 2003 Mr. Heller appealed the denial of his claim to AIG, once again raising the issue that although AIG was claiming Patricia's coverage terminated on January 24, 2003, the full premium for the month of January had been deducted and retained. (Fact #49)

10) On October 7, 2003 AIG (Jill Vivian) prepared a Memorandum to the AIG ERISA Appeals Committee. (Fact #51) Ms. Vivian's October 7, 2003 memorandum misleadingly informed the Appeals Committee that CGE&Y "confirmed that premiums for this coverage were paid through her last day worked and her coverage under this Policy ended on her last day worked." (Fact#51) Misleadingly Ms. Vivian's Memorandum did not tell the ERISA Appeals Committee that CGE&Y had actually deducted the full premium for the entire month of January, and had not rebated the unearned premium for the period January 25, 2003 through January 31, 2003. AIG cannot plead mistake- this was at the core of Mr. Heller's appeal, and AIG knew that CGE&Y/AIG were retaining unearned premium. (Facts #33, 37-39, 41-44, 47-49)

11) By letter dated December 11, 2003 AIG informed Mr. Heller that the ERSIA Appeals Committee of AIG decided to uphold the denial of his claim for benefits. (Fact#53). Inexplicably, in its December 11, 2003 denial letter, AIG chose not to mention or address the sole ground for Mr. Heller's appeal. (Facts#50-54) Review

---

[6] AIG/CGE&Y's ruse almost worked- Mr. Heller mistakenly attached the less damaging August 13, 2003 CGE&Y letter to his appeal (instead of the more damaging July 31, 2003 letter).(Fact #49)

of the December 11, 2003 denial letter establishes that it is completely silent

about the payment of premiums-- the central basis for Mr. Heller's appeal. Rather,

AIG repeated its mantra that Patricia was no longer covered. It simply cannot be

reasonable to ignore the factual basis of a claimant.

The facts of this case demonstrate that the comments of this Court in Radford Trust

v. First Unum Life Insurance Company of America, 321 F.Supp.2d 226, 240-242 (D.

Mass. 2004) were well founded. The profit motive caused these defendants to try to have

their cake and eat it too- if they took the position that Patricia's coverage expired on

January 24, 2003, they were obligated to either not charge unearned premium in the first

instance, or to return it once they discovered it was unearned. But the defendants did not

want to do this, apparently because it would upset CGE&Y's longstanding practice of

deducting the full premium from the final paychecks of each of the departing employees

(even though the premium was at least partially unearned in each case). [7]  With 55,000

CGE&Y employee**s** world-wide, upsetting this payroll practice for generating free cash

for either CGE&Y or AIG would not undertaken lightly. Instead, CGE&Y/AIG claimed

Patricia's coverage terminated on January 24, 2003, while at the same time pocketing the

unearned premium. This, they cannot do. Cf. Lauder v. First Unum Life Insurance

Company, 284 F.3d 375, 382 (2d Cir. 2002) (Court will not "endorse manipulative

strategies that attempt to take advantage of beneficiaries", rather Court wants to

encourage "candid" claims handling).

CONCLUSION

---

[7] Defendants were faced with a choice- either conform their payroll practices to track and rebate unearned premium, or amend the plan to provide coverage co-extensive with their premium charging practices. The law, ERSIA, or otherwise, simply does not permit them to charge premium and not provide coverage.

Based on the foregoing points and authorities, the plaintiff Edward Heller respectfully requests that this Court:

1.  ALLOW his motion for summary judgment;

2.  DENY defendants' motions for summary judgment;

3.  enter judgment in plaintiff's favor in the amount of the AD&D benefits in the amount of ($1,000,000);

4.  determine and add pre-judgment interest accruing from June 23, 2003 the date of AIG's wrongful denial of benefits at the higher of AIG's investment rate compounded, or the 12% Massachusetts statutory rate;

5.  hold proceedings to determine and award reasonable attorneys fees;

6.  hold proceedings to determine and award reasonable costs.

EDWARD HELLER
By his attorney,
/s/JHSkerry, III

Joseph H. Skerry, III
BBO# 544124
237 Lexington Street
Woburn, Massachusetts 01801
781-938-1301
781-938-1344
jayskerry@rcn.com

CERTIFICATE OF SERVICE
I Joseph H. Skerry, III hereby certify that I served the forgoing by mail on counsel of record.

March 4, 2005                         /s/JHSkerry, III
                                      Joseph H. Skerry, III

20