UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| EDWARD HELLER,                                      )<br>                                                                    )<br>       Plaintiff,                                          )<br>vs.                                                             )<br>                                                                    )<br>CAP GEMINI ERNST & YOUNG WELFARE  )<br>PLAN (RE: ACCIDENTAL DEATH BENEFITS),  )<br>AMERICAN INTERNATIONAL LIFE ASSURANCE)<br>COMPANY OF NEW YORK, and CAPGEMINI  )<br>U.S. LLC                                                 )<br>                                                                    )<br>       Defendants | CIVIL ACTION<br>FILE NO. 04-11875 - WGY |

**PLAINTIFF'S STATEMENT OF THE MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1, the plaintiff Edward Heller submits this Statement of the Material Facts as to Which There is No Genuine Issue to Be Tried. The following undisputed facts are established by the Complaint and Answers, the Joint Statement filed by the Parties on December 6, 2004, and the Administrative Record filed by defendant AIG. The Administrative Record has been separately page numbered in the lower right hand corner. Prefixes of "CG" and "AIG" have been added to identify documents provided by Capgemini (pp. 00026-00108) and AIG (00001-00162). The Administrative Record is referenced herein as AR p. ___

PARTIES

1) The plaintiff Edward Heller is an individual residing at 20 Indian Hill Road, Weston, in the County of Middlesex, in the Commonwealth of Massachusetts.(Complaint ¶1, Capgemini Answer ¶1)

1

2) The defendant Cap Gemini Ernst & Young U.S. LLC Welfare Benefit Plan (hereinafter the Plan) is a plan governed by ERISA (29 U.S.C.§§1000 et. seq.) and has a usual place of business at 1280 Wall Street West, Lyndhurst, New Jersey 07071. (Complaint ¶2, Capgemini Answer ¶2)

3) The defendant Capgemini U.S. LLC (formerly known as Cap Gemini Ernst & Young U.S. LLC hereinafter CGE&Y) is a limited liability company, with a usual place of business at 5 Times Square, New York, New York 10036. (Complaint ¶4, Capgemini Answer ¶4).

4) Until on or about January 24, 2003, the defendant CGE&Y was the employer of the now deceased Patricia Heller, wife of the plaintiff Edward Heller. (Complaint ¶5, Capgemini Answer ¶5)

5) The defendant, American International Life Assurance Company of New York (hereinafter AIG), is a corporation organized under the laws of New York with a usual place of business at 70 Pine Street New York New York 10270. (Complaint ¶6, AIG Answer ¶6)

BACKGROUND FACTS

6) In or about March of 1991, Patricia Heller commenced work with Ernst & Young, as a Consultant. (AR p. AIG 00152 and AIG00005; Complaint ¶ 10, Capgemini's Answer ¶10)

7) In or about May of 2000 Capgemini S.A. acquired the consulting division of Ernst & Young.(Complaint ¶12, Capgemini's Answer ¶12)

8) As an employee, Patricia was a participant in the Cap Gemini Ernst & Young Welfare Benefit Plan, as amended from time to time, offered by her employer,

which benefits included, but were not limited to, accidental death coverage as a Component Plan of the Cap Gemini Ernst & Young Welfare Benefit Plan. (Complaint ¶11, Capgemini's Answer ¶11; AR p. AIG 156-157; CG00026 and 00034)

9) As a participant, Patricia paid the full cost of her AD&D coverage through premium deductions from her twice monthly paychecks from CGE&Y, which were by forwarded by CGE&Y to AIG. (AR p. AIG00085; CG00047).

10) The plaintiff Edward Heller was the beneficiary of Patricia Heller's One Million Dollar ($1,000,000) AD&D coverage. (AR p. AIG00158 and AIG00005)

11) Effective July 1, 2001, the defendant AIG issued a Group Accident Insurance Policy to Cap Gemini Ernst & Young U.S. LLC . (Complaint ¶13, Capgemini's Answer ¶13, AIG's Answer ¶13)  A copy of the Group Policy can be found at AR p. AIG00053 to AIG00083.

12) Among other provisions, the Group Accident Insurance Policy issued by AIG to CGE&Y provided:

> **GENERAL PROVISIONS**
> …
> **Certificates of Insurance** The Company [AIG] will provide certificates of insurance for delivery to each Insured describing the coverage provided, any limitations, reductions, and exclusions applicable to the coverage and to whom benefits will be paid.

AR p. AIG 00066

13) The Administrative Record does not contain any evidence that any of the defendants provided Patricia with a copy of the certificate referenced in the GENERAL PROVISIONS of the Group Policy issued by the defendant AIG.

3

(Complaint ¶17, Capgemini and AIG Answers ¶17- asserting lack of knowledge; and review of AR- no Certificate located).

14) Effective September 2002 CGE&Y, through its agent Fidelity, prepared a document entitled "CAP GEMINI ERNST & YOUNG U.S. ACCIDENTAL DEATH & DISMEMBERMENT SUMMARY PLAN DESCRIPTION" (hereinafter the Summary Plan Description or SPD) describing the main provisions of the AD&D Plan as of July 1, 2002, and superceding any prior AD&D plans or programs.(Complaint ¶14, Capgemini Answer ¶14; A copy of the SPD can be found at AR p. AIG00084-AIG00100)

15) CGE&Y says that although it has no evidence that Patricia was given a written copy, the SPD was made available to employees on CGE&Y's HR Portal and the Fidelity benefits website. (AR CG 00047)

16) In or about January, 2003 Patricia resigned from CGE&Y; her last day of work at CGE&Y's offices being Friday January 24, 2003. (Complaint ¶20, Capgemini's Answer ¶20; AR p. AIG00152)

17) On January 29, 2003 Patricia died as the result of injuries she sustained while riding in a taxi cab, which crashed into a tree in Atlanta, Georgia. (AR p. AIG00153-154, AIG00134, AIG 00136, AIG 00109 and AIG00005)

18) Patricia's death was an accidental death within the meaning of the AD&D Plan. (AR p. AIG00154 and AIG00005)

19) CGE&Y was informed of Patricia's death by telephone on January 29, 2003 (AR p. CG00048)

4

20) By e mail dated Thursday January 30, 2003 CGE&Y (Maryanne Alvarez, an Associate in CGE&Y's National Benefits Department) notified AIG's Claim Manager (Myra Zimmerman) of Patricia's January 24, 2003 departure from CGE&Y and her January 29, 2003 accidental death. (AR p. AIG00161). The e mail was copied to Tracy McGee (Associate Director), Jacqueline Gathers (Assistant Director) and Carolyn Berish (Associate), all of CGE&Y. (AR p. AIG00161)

21) On Friday January 31, 2003 CGE&Y issued Patricia's last paycheck. (Complaint ¶25, Capgemini's Answer ¶25; AR p. CG00047; AIG00131)

22) On January 31, 2003 CGE&Y deducted "the full $12.00 premium, representing the pay period from January 16, 2003 through January 31, 2003" from Patricia's paycheck for her AD&D coverage. (Complaint ¶26, Capgemini Answer ¶26; AR p. CG00047; AIG00146-147; AIG00133; AIG00131; Joint Statement p. 2)

23) CGE&Y forwarded the full $12.00 premium deducted from Patricia's last paycheck for her AD&D coverage to AIG. (Joint Statement p. 2; Complaint ¶ 27; Capgemini Answer ¶ 27; AR p. AIG00146)

24) CGE&Y states that it was its standard payroll practice to deduct the full premium for insurance coverage from the last paycheck when employees separated from CGE&Y. (AR p. CG00047; AIG00146; Complaint ¶28, Capgemini Answer ¶28)

25) At no time has either CGE&Y or AIG offered to refund or rebate the unearned premium for Patricia's coverage for the period January 25, 2003 to January 31, 2003.(Joint Statement p. 2)

26) Among other provisions, the Master Application for the Group Accident Insurance Policy issued by AIG to CGE&Y provided "premiums are due and payable in the following manner: <u>Monthly in arrears</u>" (AR p.AIG00056). The premium for Patricia's coverage was $24.00 per month. (Id.)

27) On or about February 27, 2003, the plaintiff Edward Heller signed Part C of the AIG Proof of Loss Claim Form seeking accidental death benefits under the AD&D Plan. (Complaint ¶30, Capgemini and AIG Answers ¶30; AR p. AIG00153).

28) By letter dated March 15, 2003 Ed Heller submitted a death certificate to CGE&Y. (AR p. AIG00155)

29) On March 20, 2003 Kristina Gorman of the CGE&Y Benefits Center in Merrimack N.H. signed Part A (the Group Policyholder/Employer's portion) of the AIG Proof of Loss Claim Form, certifying that the information contained therein was true and correct. (AR p.AIG00152; Complaint ¶31, Capgemini and AIG Answers ¶31)

30) Part A of the AIG Proof of Loss Claim Form stated in pertinent part:
   a. Patricia commenced work on March 25, 1991
   b. Patricia had $1,000,000 "ACCIDENTAL DEATH BENEFIT IN FORCE"
   c. Patricia's "EFFECTIVE DATE OF COVERAGE" was July 1, 2001
   d. Patricia's "DATE OF DEATH" was January 29, 2003
   e. Patricia's "DATE LAST WORKED" was January 24, 2003
   f. Patricia's "DATE PREMIUM PAID TO" was January 29, 2003

6

    g. Patricia's "TERMINATION DATE OF COVERAGE" was January 29, 2003.

(AR p. AIG00152)

31) By e mail to CGE&Y dated April 14, 2003, AIG (Jill Vivian, SR. AD&D Claims Examiner) requested that Maryanne Alvarez of CGE&Y provide AIG with a "copy of the payroll register for the last paycheck that was issued. This information is necessary to verify whether premiums for this coverage were being deducted and the date that premiums for this coverage were paid through." (AR p. AIG00149 and AIG0007)

32) By letter to plaintiff dated April 14, 2003, AIG (Vivian) informed Mr. Heller that, among other things, it was seeking payroll and premium payment information from CGE&Y. (AR p.AIG00150).

33) By e mail dated April 28, 2003 to Jill Vivian at AIG, Carolyn Berish of CGE&Y responded to AIG's April 14, 2003 inquiry as follows:

> Patricia had payroll deductions of $12.00 for the period 1/1/03 – 1/15/03 and the $12.00 full premium for the period 1/16/03 – last date worked. There was no rebate of any premium, although her coverage ended on last date worked, which was 1/24/03. This is standard payroll practice. …..

(AR p. AIG00146). Tracy McGee (Associate Director of CGE&Y) and Deborah Giles (AIG) were sent copies of the e mail (AR p. AIG00146). On April 29, 2003 Ms. Berish faxed a copy of Patricia's last pay stub to AIG. (AR p. AIG 00145 and 147)

34) By e mail dated May 12, 2003 Carolyn Berish of CGE&Y provided Jill Vivian of AIG with the SPD for the AD&D Plan and a copy of a VP Continuation of

7

Benefits Summary Sheet. (AR AIG 00144). Ms. Berish stated that the VP Continuation of Benefits Summary Sheet was provided to departing employees, but that she was researching further to confirm the date and exact version of the form given to Pat Heller, apparently because the form was in the process of being updated at the time of Pat Heller's departure. (AR p. AIG 00144)

35) By e mail dated May 13, 2003 Carolyn Berish of CGE&Y followed up on her earlier e mail message and informed Jill Vivian of AIG that "[i]t was determined that Pat Heller did not receive the Continuation of Benefits VP Summary sheet upon her termination, although it was available to her via our HR Portal." (AR AIG 00142)

36) On May 29, 2003 Jill Vivian (AIG) prepared a Claim Summary recommending denial of Mr. Heller's claim on a pre-printed form. (AR p. 00134) Ms. Vivian noted:

    a. that she had reviewed Premium Verification documents;

    b. CGE&Y, as Policyholder "confirmed that premiums for this coverage were paid through her last day worked and her coverage under this Policy ended on her last day worked"(January 24, 2003) (But see Fact 33 above- CGE&Y actually informed AIG that the full premium had been deducted for January 2003 without rebate)

37) On June 9, 2003 Edward Heller contacted AIG to check on the status of his claim (AR p. AIG00006--see 6-9-03 entry). AIG's activity sheet indicates that AIG informed Mr. Heller that a recommendation for denial was then being reviewed by management, and explained the reasons. Mr. Heller advised AIG that Patricia's

8

premiums had been paid to the end of the month (of January, 2003). AIG's activity notes indicate that AIG responded "Advised [Mr. Heller] that according to CGE&Y, premiums were paid to last day worked." (AR p. AIG00006, see 6-9-03 entry).

38) The June 9, 2003 statement by AIG to Mr. Heller at AR AIG 00006, to the effect that AIG had been informed by CGE&Y that (contrary to Mr. Heller's understanding) premiums had only been paid through January 24, 2003 is at odds with CGE&Y's April 28, 2003 e mail to AIG, which informed AIG that (i) CGE&Y had deducted the full $24.00 premium for January 2003; (ii) although CGE&Y took the position that Patricia's coverage terminated on her last day worked (January 24, 2003), (iii) pursuant to its standard payroll practice, CGE&Y had not rebated any of the premium for the period after Patricia's January 24, 2003 departure from CGE&Y. (See Fact 33 above) This is surprising in view of Mr. Heller's direct inquiry on June 9, 2003. (See Facts #33 and 37 and AR p. AIG00146)

39) On June 20, 2003 AIG prepared a Claim review. (AR p. AIG00005) Ms. Vivian's review noted, among other things:

> Email from Policyholder:
>
> > -Payroll deductions: $12.00 for 1/1 – 1/15/03; $12.00 for 1/16/03 – last day worked. There was no rebate of any premium, although her coverage ended on last date worked, which was 1/24/03. This is standard payroll practice.
>
> (AR p. AIG00005)

40) By letter dated June 23, 2003, AIG denied Mr. Heller's claim for AD&D benefits under the AD&D Plan. (AR p.AIG00136)

41) Although AIG's June 23, 2003 denial letter referenced eight different sources of information on which it based denial decision, including the payroll register for Patricia's last paycheck, AIG's denial letter did not reference the April 28, 2003 e mail response from Carolyn Berish of CGE&Y concerning premium payments for Patricia's coverage. (AR p. AIG 00136) Compare quoted portion of April 28, 2003 e mail in Fact 33 above.

42) Although AIG failed to reference CGE&Y's April 28, 2003 e mail in its June 23, 2003 letter denying the claim, in the denial letter AIG asserted that CGE&Y, not AIG, determined the dates premiums were paid through: "[Policyholder-CGE&Y] confirmed that premiums for this coverage were paid through her last day worked and her coverage under this Policy ended on her last day worked." (AR p. AIG 00136; But Compare Facts 33 and 38-39 above)

43) The assertion by AIG in its June 23, 2003 letter is at odds with CGE&Y's April 28, 2003 e mail response, which informed AIG that (i) CGE&Y had deducted the full $24.00 premium for January 2003; (ii) although CGE&Y took the position that Patricia's coverage terminated on her last day worked (January 24, 2003), (iii) pursuant to its standard payroll practice CGE&Y had not rebated any of the premium for the period after Patricia's January 24, 2003 departure from CGE&Y. (See Fact 33 above). This is surprising in view of Mr. Heller's direct inquiry and AIG's internal notes three days earlier. (See Facts #33, 37-38 and AR p. AIG00146).

44) Although in his June 9, 2003 telephone call with AIG, Mr. Heller expressly raised the issue of premium payments having been deducted from Patricia's paychecks

for the entire month of January, 2003 (see Facts 37-38 above), AIG's June 23, 2003 denial letter did not mention, or address, the issue of unearned premium payments being retained by CGE&Y/AIG for the period January 25, 2003 through January 31, 2003- a time during which CGE&Y/AIG contended there was no coverage; nor did the letter offer to rebate the unearned premiums. (AR p. AIG 00136)

45) AIG denied the claim, finding that "on January 25, 2003 [Patricia] ceased to be a member of an eligible class of persons… and on January 29, 2003 when the injury occurred her coverage was no longer in force". (AR p. AIG00136-137)

46) Instead of addressing Mr. Heller's assertions about unearned premiums being retained, AIG's letter stated that because Patricia had not submitted a conversion application prior to her death, no coverage was available for her January 29, 2003 death. (AR p. AIG 00137)

47) Mr. Heller contacted CGE&Y to follow up on Patricia's premium payments. By letter dated July 31, 2003 Lynne Oldham of CGE&Y wrote to Mr. Heller as follows:

> As we discussed, Cap Gemini Ernst & Young ("CGE&Y) has previously communicated with AIG, the insurer underlying the Accidental Death and Dismemberment Plan ("AD&D Plan) with respect to your wife's last payroll deductions for such insurance. The purpose of this letter is to confirm to you that we did so and to provide you with the content of that communication.
>
> On April 28, 2003, Carolyn Berish (CGE&Y Employee Benefits) responded to a standard question posed by AIG with regard to final payroll deduction. Carolyn's email was sent to Jill Vivian (AIG) with a copy to Deborah Giles (AIG). The e mail indicated the following:
>
>> "Patricia had payroll deductions of $12.000 for the period 1/1/03 – 1/15/03 and the $12.00 full premium for the period 1/16/03 – last

11

> date worked. There was no rebate of any premium, although her coverage ended on last date worked, which was 1/24/03. This is standard payroll practice."
>
> In a subsequent e mail, Tracy McGee (CGE&Y Employee Benefits) clarified to Deborah Giles (AIG) that the last day of employment was actually 1/25/03

(AR p. AIG00133) Ms. Oldham sent copies of her July 31, 2003 letter to Deborah Giles and Jill Vivian of AIG stating that her July 31, 2002 letter "just restates what information that [CGE&Y] sent to AIG to make a determination on the AD&D claim…". (AR p. AIG00132-133)

48) Without explanation, on August 13, 2003, Ms. Oldham of CGE&Y again wrote to Mr. Heller to:

> "further clarify for [his] records that Cap Gemini Ernst & Young ("CGE&Y") did indeed take two full payroll deductions from both of your wife's paychecks in January 2003. For paycheck dated January 15, 2003 as well as the paycheck dated January 31, 2003 CGE&Y deducted $12.00 to cover your wife's contribution for the Accidental Death and Dismemberment Plan ("AD&D Plan)." (AR p. AIG00131)

Ms. Oldham sent copies of her "clarifying" letter to Deborah Giles and Jill Vivian of AIG and to Laurie Jadick-Geiger (Associate Director) of CGE&Y. (AR p. AIG00130-131). No explanation was given for Ms. Oldham's need to "clarify" her July 31, 2003 letter, nor was any explanation given for Ms. Oldham's omitting from her August 13, 2003 "clarification" letter (i) any mention of CGE&Y's April 28, 2003 e mail to AIG, (ii) that although CGE&Y took the position that Patricia's coverage had terminated on January 24, 2003, no rebate had been processed for the period January 25, 2003 through January 31, 2003 (iii) all of which was done pursuant to CGE&Y's standard payroll practice. (AR AIG 00131)

12

49) By letter dated August 20, 2003 Mr. Heller appealed the denial of his claim to

   AIG asserting in part:

   Patricia's coverage under the AIG policy was supported by bimonthly payroll deductions of $12 each. Because full payroll deductions were made from both of Patricia's payroll checks for the month of January 2003 (see attached letter from Lynne Oldham, CGE&Y dated August 31, 2003) my contention is that she was fully covered by the insurance policy throughout January…
   (AR p. AIG00127)

50) By letter dated October 3, 2003, AIG received a legal opinion from Mirick

   O'Connell concerning plaintiff's claim for AD&D benefits. (AR p. AIG00116).

   Among other statements the October 3, 2003 letter notes that "The sole grounds

   for Mr. Heller's appeal is that because Ernst & Young deducted the full premium

   amount for January from Mrs. Heller's paycheck, coverage continued though (sic)

   January 31, 2003." (AR p. AIG00120)

51) On October 7, 2003 AIG (Jill Vivian) prepared a Memorandum to the AIG

   ERISA Appeals Committee. (AR p. AIG00111) Ms. Vivian's October 7, 2003

   memorandum informed the Appeals Committee that CGE&Y "confirmed that

   premiums for this coverage were paid through her last day worked and her

   coverage under this Policy ended on her last day worked." (AR p. AIG00111) [As

   discussed at Facts 37-38 and 42-43, above, this statement is at odds with

   CGE&Y's April 28, 2003 e mail to AIG –see Fact 33- and other internal AIG

   notes –Fact 39, and AIG's apparent attempt to avoid and swerve the issue –Facts

   47-48.] Ms. Vivian's Memorandum stated that the grounds for appeal included "

   The decedent made bi-monthly premium payments through payroll deduction.

   Because full deductions were made from both of the payroll checks in January

2003, she was covered under the policy through the end of January."(AR p.AIG00112)

52) On October 22, 2003 AIG prepared an ERISA Appeal review. (AR p. AIG00003) The notes indicated that Mr. Heller's sole ground for appeal was that because Patricia's premiums had been paid for the full month of January 2003, Patricia was covered at the time of her January 29, 2003 death. (AR p. AIG00003). [1]

53) By letter dated December 11, 2003 AIG informed Mr. Heller that the ERSIA Appeals Committee of AIG decided to uphold the June 23, 2003 denial of his claim for benefits. (AR p. AIG00108).

54) AIG's December 11, 2003 denial letter does not to mention or address the sole ground for Mr. Heller's appeal, namely that Patricia's premiums had been paid for the full month of January 2003. (AR p.AIG00108) Review of the December 11, 2003 denial letter establishes that it is completely silent about the payment of premiums-- the basis for Mr. Heller's appeal. Rather, AIG repeated its June 23, 2003 rationale (Patricia's coverage terminated on her last day worked (January 24, 2003) and because Patricia never applied for a conversion policy, there was no coverage on January 29, 2003). (AR p. AIG00108)

55) By letter dated February 19, 2004 counsel for Mr. Heller requested that AIG provide certain information about the claim and its handling (AR AIG 000104)

---

[1] Prior to filing suit, counsel for Heller requested, among other items, "copies of all materials provided to the ERISA Appeal Committee".(AR p. AIG 00014- item 12) Despite a representation that it had provided Attorney Skerry with a complete copy of the administrative record, (AR AIG 00011-item 12) neither the October 7, 2003 Memorandum to the ERISA Appeals Committee (Fact 51-AIG 00111), nor the October 22, 2003 ERISA Appeal review (AIG 00003) were provided to plaintiff until December 14, 2003, after suit was filed. Also not included with the "complete administrative record" prior to suit were the following (AIG 00001-00007; AIG 00134-135)

56) By letter dated March 18, 2004 AIG responded, in part, to the requests made by counsel for Heller (AR p. AIG 00010). AIG provided no response to counsel's inquiry why neither AIG's June 23, 2003 nor AIG's December 11, 2003 letters denying the claim addressed the issue raised by Mr. Heller's appeal, namely that Patricia was charged premium for the period January 25, 2003 through January 31, 2003, a period AIG contended there was no coverage. (Compare AR p. AIG 00014-item 10 and AIG 00011 –item 10) As to a number of other issues, (including but not limited to the process for collecting and transmitting premiums), AIG directed Heller's counsel to the Plan Administrator (AR p. AIG 00010-11-items 8-9; CG 00043).

57) By letter dated April 2, 2004 counsel for Heller sought information from the Plan Administrator (AR p. CG 00043)

58) By letter dated May 28, 2004 Capgemini responded, in part, to counsel's April 2, 2004 letter.(CG 00047). Capgemini stated that notwithstanding the SPD (See Fact #65) CGE&Y would conduct no further review of Mr. Heller's claim. (AR p. CG00044-item k and CG 00048-item k). Capgemini did not respond to counsel's request for an explanation why GCE&Y deducted the full (rather than pro rata) premium on January 31, 2003 when it knew Patricia was departed on January 23, 2003. (Compare AR p. CG00044-item I and CG00047-response to i)

59) By letter dated December 20, 2004 counsel Capgemini wrote to counsel for plaintiff seeking to change the administrative record as to Pat Heller's (non) receipt of the VP Benefits Summary Sheet upon her separation from CGE&Y. (AR p. CG 00050) Contrary to the administrative record (see Facts 34-35 above)

in its December 20, 2004 letter Capgemini contended that "Mrs. Heller *was* provided with a Continuation of VP Benefits Summary Sheet at her exit interview." (emphasis added) (AR p. CG 00050) Counsel for Heller requested that an affidavit be provided justifying such an extraordinary change to the administrative record (more than eighteen months after the original inquiry). Counsel for Heller further stated that if an affidavit of a person with personal knowledge (i.e an attendee at the exit interview) were provided, (together with an explanation of why that person did not provide the correct answer in May 2003), Plaintiff would waive Count V of the Complaint (concerning failure to adequately inform of conversion rights). On Tuesday March 2, 2005 Capgemini provided an affidavit of Laurie Jadick-Geiger (copy attached hereto). Among other issues, Ms. Jadick-Geiger's affidavit does not assert that she attended (or otherwise has personal knowledge of) the January 24, 2003 exit interview with Patricia Heller. Rather, Ms. Jadick-Geiger asserts that it was CGE&Y's standard human resource practice to provide the Continuation of Benefits VP Summary Sheet to departing employees on their last day of employment. In this regard her statement is the same as the May 12, 2003 preliminary assertion by Ms. Berish (AR AIG p. 00144). More importantly, after further (relatively contemporaneous research in May of 2003), Ms. Berish informed AIG by e mail on May 13, 2003 that CGE&Y's ordinary human resource practice had not been followed as to Pat Heller- "[i] was determined that Pat Heller did *not* receive the continuation of benefits VP Summary Sheet upon her termination, although it was available to her via our HR Portal." (emphasis added) (AR p. AIG 00142). Ms. Jadick-Geiger's

reference in ¶3 to Capgemini's May 28, 2004 letter adds nothing because Ms. Jadick-Geiger does not assert that she attended (or otherwise has personal knowledge of) the January 24, 2003 exit interview. Nor does she provide any explanation for why Capgemini is now contradicting Ms. Berish, the CGE&Y employee who researched the matter in May of 2003 and determined that Pat Heller did not receive the form. As such, Ms. Jadick-Geiger's affidavit does nothing to justify Capgemini's attempt to change the administrative record on this issue, while at the same time raises issues about its *bona fides*.

## MISCELLANEOUS PLAN PROVISIONS

60) CGE&Y is identified as the Plan Sponsor and the Plan Administrator in both the Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document (AR p. CG00027), and in the Summary Plan Description (AR AIG 00095)

61) The Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document gives CGE&Y, as the Plan Administrator, sole and absolute discretion to (i) interpret the provisions of the Component Plans; (ii) make factual findings; (iii) determine rights; and (iv) decide disputes. (AR p. CG00028-29).

62) The Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document provides a default claims procedure if the Component Documents do not contain one. (AR CG00029).

63) The Summary Plan Description states that "AIG has sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy.(AR AIG00096; AIG 00085)

64) The Summary Plan Description provides for claims to be submitted and decided by AIG, in the first instance, and that all appeals will also be decided by AIG. (AR AIG 00096)

65) The Summary Plan Description states "You have right to have the Plan Administrator (CGE&Y) review and reconsider your claim." (AR AIG00097)

66) The Summary Plan Description states that in the event of a conflict should arise between the Summary Plan Description, the insurance policy and the Administration Document, the insurance policy or Administration Document will govern." (AR AIG00085).

          EDWARD HELLER
          By his attorney,

          /s/ JHSkerry, III

          Joseph H. Skerry, III
          BBO# 544124
          237 Lexington Street
          Woburn, Massachusetts 01801
          781-938-1301
          781-938-1344
          jayskerry@rcn.com

CERTIFICATE OF SERVICE
I Joseph H. Skerry, III hereby certify that I served the forgoing by mail on counsel of record.

March 4, 2005          /s/ JHSkerry, III
                        Joseph H. Skerry, III