UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD HELLER,<br>          Plaintiff,<br><br>v.<br><br>CAP GEMINI ERNST & YOUNG WELFARE PLAN (RE: ACCIDENTAL DEATH BENEFITS), AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, AND CAPGEMINI U.S. LLC,<br>          Defendant. | CIVIL ACTION NO. 04-11875-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT**

This is an ERISA benefits action brought by the plaintiff Edward Heller ("Heller") to recover accidental death benefits he alleges the defendant American International Life Assurance Company of New York ("AIG") wrongfully denied upon the death of his wife Patricia Heller ("Patricia"). Patricia was employed by Cap Gemini Ernst & Young ("CGE&Y") and as an employee of CGE&Y participated in an accidental death and dismemberment plan (the "Plan"). The Plan benefits were provided through an insurance policy (the Policy") purchased from AIG. The Policy specifically provided that Patricia's entitlement to benefits ceased when she was no longer employed by CGE&Y. If she acted within thirty-one (31) days of her separation from CGE&Y, Patricia had the option to convert her group coverage into individual coverage. Patricia resigned from CGE&Y and immediately began a new position with Bearing Point. Patricia did not convert her group accidental death benefits policy to an individual policy.

Five days after her separation from CGE&Y Patricia was tragically killed in a motor vehicle accident while working for her new employer. Her husband, the plaintiff, sought the $1,000,000.00 in accidental death benefits that the CGE&Y Plan provided to eligible participants. The claim was submitted to AIG but denied because AIG determined Patricia was not an eligible participant on the date of her death. Heller filed this action and now seeks recovery of the $1,000,000.00 accidental death benefit on the basis that CGE&Y deducted a full $12 group premium payment from Patricia's last pay check even though she resigned from CGE&Y before the expiration of the full two week pay period. Based upon the material and undisputed facts, Heller has failed to state a cause of action and all counts of his Complaint should be dismissed in accordance with Fed. R. Civ. P. 56.

## ESSENTIAL FACTS

I.   The Plan Documents and Provisions

CGE&Y is the Plan Administrator and named fiduciary of the Cap Gemini Ernst & Young U.S. Accidental Death and Dismemberment Plan ("the Plan"). (Facts ¶ 1.) The Plan authorized CGE&Y to delegate its discretionary authority to interpet plan pro, which CGE&Y delegated to AIG. (Id.) Under the delegation of authority, "AIG ha[d] the sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy." (Facts ¶ 4.)

The pertinent provisions concerning eligibility are as follows:

> *Accidental Death Benefit*. If injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, the Company will pay 100% of the Principal Sum.

> *Injury* – means bodily injury caused by an accident occurring while this policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss.
>
> *Classification of Eligible Person*
> *Class   Description of Class*
> 1.      All active full-time employees working an average of 30 hours per week, all active part-time employees working an average of 20 hours per week and all retirees of Cap Gemini Ernst & Young US LLC
>
> *Insured's Termination Date*.  An Insured's coverage under this Policy ends on the earliest of: (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application.
>
> *Conversion Privilege Rider*:  If an Insured Person's coverage ends (prior to age 80) because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Master Application, coverage may be converted to an individual accidental death and dismemberment policy (herein called an Individual Policy).
>
> The Company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy.  No evidence of insurability is required to obtain the Individual Policy.  The Individual Policy will be a type the Company regularly makes available on its effective date.  The initial premium for the Individual date will be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of the application for the Individual Policy.
>
> Coverage under the Individual Policy will take effect on the later of: (1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured Person's coverage under the Policy ends.  In the event that the application and required premium are not received prior to termination of coverage under the Policy, coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective.  Coverage under the Individual Policy may not be less than $100,000 and may not exceed the greater of: (1) the amount for which the Insured Person was covered under the Policy; or (2) $250,000.

(Facts ¶ 5.) Based upon this clear language, in order to be eligible to participate in the Plan, an

individual had to be an "<u>active</u>" full-time or part-time employee and, absent an exercise of the

3

conversion option, an employee's eligibility "cease[d] on the day in which . . . the employee [was] no longer employed by CGE&Y." (Emphasis added.) (Id.)

### II. Patricia Heller's Employment With CGE&Y

In March 1991, Patricia, the plaintiff's now deceased wife, began working as a consultant for co-defendant Cap Gemini Ernst & Young ("CGE&Y"). (Facts ¶ 7.) As an employee of CGE&Y, Patricia participated in a Group Accident Insurance Plan, ("the Plan") which became effective on July 1, 2001. (Facts ¶ 8.) In January 2003, Patricia resigned from CGE&Y. Her last day of work was January 24, 2003. (Facts ¶ 10.) Although Patricia had the option of converting her group policy into an individual policy within thirty-one (31) days of her separation from CGE&Y, she did not exercise this option. (Facts ¶ 11.) On January 29, 2003, five days after voluntarily severing her employment relationship with CGE&Y, Patricia was killed while riding in a taxi cab that crashed into a tree in Atlanta, Georgia. (Facts. ¶ 12.) At the time of her death Patricia was traveling for her new employer Bearing Point. (Facts ¶ 13.)

CGE&Y paid Patricia on a biweekly basis. Two days after her death, on January 31, 2003, CGE&Y issued Patricia's final paycheck. (Facts ¶ 14.) CGE&Y deducted $12 from Patricia's check for the premium payment of Patricia's group Accidental Death and Dismemberment policy. (Facts ¶ 15.) CGE&Y did not prorate the group premium payment to reflect the fact that Patricia had only worked one of the two weeks in the final pay period. (Id.)

### III. Edward Heller's Claim for Accidental Death Benefits

On February 27, 2003, Heller submitted a Proof of Loss Claim form seeking the $1,000,000.00 accidental death benefits he alleges he is entitled to. (Facts ¶ 16.) After AIG

4

requested and received various information from the plaintiff concerning the status of Patricia's employment on her date of death, AIG determined that Patricia was no longer an eligible participant on the date of her death because she was neither a full nor a part-time employee of CGE&Y. (Facts ¶ 17.) AIG denied the plaintiff's claim for benefits on June 23, 2003. (Id.) On August 20, 2003, the plaintiff appealed the denial of benefits. On December 11, 2003, AIG upheld its denial. (Facts ¶ 18.)

## ARGUMENT

The Court should grant AIG's motion for summary judgment because there are no material facts in dispute and the plaintiff's claim fails as a matter of law. The plaintiff relies solely upon the fact that rather than prorating Patricia's premium payment for coverage under the group accidental death plan, CGE&Y deducted a "full" $12 premium from her final pay check. CGE&Y's administrative decision to deduct a full rather than a prorated premium does not entitle the plaintiff to receive benefits under a Plan that no longer covered Patricia. Summary judgment should enter in favor of AIG because (1) AIG's denial of benefits was not arbitrary and capricious because it was reasoned and supported by the evidence in the administrative record; and (2) any other claims asserted by the plaintiff are preempted by ERISA.

### I.    Standard of Review

The familiar Rule 56 standard provides that summary judgment should be granted in favor of the moving party where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c), Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998). In order to succeed on a motion for summary judgment, the moving party must demonstrate there is an absence of

5

evidence necessary to support the nonmoving party's position.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  "Even in an ERISA case '. . . summary judgment may be appropriate if the nomoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995), cert. denied, 516 U.S. 1113 (1996) (quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)).  Thus, Rule 56 "mandates the entry of summary judgment . . . upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In accordance with this standard, for the following reasons, AIG is entitled to summary judgment.

> II. AIG's Denial of Benefits Was Neither Arbitrary Nor Capricious as it Was Clearly Reasoned and Supported by Substantial Evidence in the Record.

Where a plan beneficiary seeks judicial review of a denial of benefits, the benefits determination should be reviewed under an arbitrary and capricious standard if, as in this case, discretionary authority has been appropriately delegated.  This Court's review should proceed under an arbitrary and capricious standard because CGE&Y had discretionary authority to interpret the Plan and clearly delegated its discretionary authority to AIG.  See Terry, 145 F.3d at 37.  Specifically, "AIG [had] the sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy."  Under this deferential standard of review, a benefits determination must be upheld if it was within the decision maker's "authority, reasoned, and 'supported by substantial evidence in the record.'"  Doyle v. Paul Revere Life Ins. Co., 144

F.3d 181, 184 (1st Cir. 1998). See also Leahy v. Raytheon Co., 315 F.3d 11, 15 n. 3 (1st Cir. 2002).

AIG denied the plaintiff's claim for benefits because, at the time of Patricia's death, she was no longer employed by CGE&Y and, in fact, was working for her new employer Bearing Point. The relevant portions of the Policy provided as follows:

> *Accidental Death Benefit*. If injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, the Company will pay 100% of the Principal Sum.
>
> *Injury* – means bodily injury caused by an accident occurring while this policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss.
>
> *Classification of Eligible Person*
>
> *Class   Description of Class*
> 1.      All active full-time employees working an average of 30 hours per week, all active part-time employees working an average of 20 hours per week and all retirees of Cap Gemini Ernst & Young US LLC
>
> *Insured's Termination Date*. An Insured's coverage under this Policy ends on the earliest of: (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application.
>
> *Conversion Privilege Rider*: If an Insured Person's coverage ends (prior to age 80) because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Master Application, coverage may be converted to an individual accidental death and dismemberment policy (herein called an Individual Policy).
>
> The Company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy. No evidence of insurability is required to obtain the Individual Policy. The Individual Policy will be a type the Company regularly makes available on its effective date. The initial premium for the Individual policy will be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of the application for the Individual Policy.

7

> Coverage under the Individual Policy will take effect on the later of: (1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured Person's coverage under the Policy ends.  In the event that the application and required premium are not received prior to termination of coverage under the Policy, <u>coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective</u>.  Coverage under the Individual Policy may not be less than $100,000 and may not exceed the greater of: (1) the amount for which the Insured Person was covered under the Policy; or (2) $250,000.

Simply put, there were two scenarios under which coverage could have been provided to an employee of CGE&Y.  The individual either (1) had to be an "<u>active</u>" full-time or part-time employee at the time of the accident or (2) had to have exercised her conversion option by submitting an <u>application</u> <u>and</u> <u>premium</u> for an individual policy within thirty-one (31) days of leaving CGE&Y.  If the employee did not opt to convert the policy, then eligibility under the group policy "<u>cease[d]</u> on the day in which . . . the employee [was] <u>no longer employed by CGE&Y</u>."  (Emphasis added.)  Although the Plan allowed employees thirty-one (31) days within which to convert, it explicitly stated that if there was a lapse between the last day worked and the submission of the application and premium for the new policy, coverage would <u>not</u> be provided until the materials were received.  The premium for the individual policy was to "be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of the application for the Individual Policy."

It is incontestable that Patricia's last day of work was January 24, 2005.  From that point on, Patricia ceased being an active employee of CGE&Y.  Patricia did not submit a written application and/or pay the required premium (which was to be calculated at the time of application) as provided under the Conversion Privilege Rider.  Thus, on January 25, 2005, the Plan's coverage of Patricia ceased.

8

The Plan plainly does not provide accidental death benefits to the plaintiff because Patricia indisputably was no longer employed by CGE&Y at the time of her death. She, in fact had already begun new employment. The fact that CGE&Y deducted a "full" $12 group premium payment from Patricia's last paycheck when she only worked for half of the pay period has no effect on AIG's eligibility determination. AIG's determination was reasoned and supported by substantial evidence in the administrative record as well as the plain language of the policy.

    III.    <u>The Plaintiff Has Not and Cannot Allege Facts Sufficient to Support a Claim for Equitable Relief Under Section 1132(a)(3).</u>

As a matter of law, based upon the undisputed facts, the plaintiff has not stated a cognizable equitable claim for relief. The plaintiff does not seek equitable relief – he seeks monetary damages which are not recoverable under Section 1132(a)(3).

    A.    <u>The Plaintiff Cannot Maintain a Cause of Action Under Section 1132(a)(3) Because the Plaintiff's Claim is One for Benefits and Therefore Arises Under Section 1132(a)(1)(B).</u>

Where a plan beneficiary may maintain an action under Section 1132(a)(1)(B), relief under subsection (a)(3) is inappropriate. If an ERISA equitable claim arises at all, it is maintained under Section 1131(a)(3) of ERISA, which permits a plan beneficiary to bring an action "to obtain other appropriate <u>equitable</u> relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3) (Emphasis added.). "Subsection (a)(3) does not [however] create an alternative theory upon which suits alleging denial of benefits . . . under (a)(1)(B) may be brought." <u>Corsini v. United Healthcare Corp.</u>, 51 F. Supp. 2d 103, 106 (D.R.I. 1999). Since the remedy the plaintiff seeks is "to recover

9

$1,000,000.00 AD&D benefits" it is a claim that arises under Section 1132(a)(1)(B) – not Section (a)(3).

> B. The Plaintiff Cannot Maintain a Claim for Breach of Fiduciary Duty Because He Seeks Legal Damages.

The monetary damages the plaintiff seeks – $1,000,000.00 – is not a claim for equitable relief. It is a claim for legal damages. The plaintiff cannot sue to recover damages for an alleged breach of fiduciary duty. Massachusetts Mut'l Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) (the recovery of damages for breach of fiduciary duty is limited to actions brought on behalf of a plan as an entity). Although under 29 U.S.C. Section 1132(a)(3), a plan participant may bring an individual action for breach of a fiduciary duty, a participant may bring such an action only to recover appropriate equitable relief and not money damages. See Great West Life & Annuity Ins. Co. v. Knudson, 122 S. Ct. 708, 713-14 (2002) (relief is available only in cases that follow the historical model for cases brought at equity); Varity Corp. v. Howe, 516 U.S. 489, 515 (1996); Larocca v. Borden, Inc., 276 F.3d 22, 27-29 (1st Cir. 2002); Caffey v. Unum Life Ins. Co., 302 F.3d 576, 584 (6th Cir. 2002) ("Plaintiff's claim for restoration of her lost health and life insurance benefits does not fall within this narrow category of relief [approved by Great-West]."); Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 13 (1st Cir. 1994) (disabled retirees who sought to recover taxes on lump-sum payment from employer, based on breach of fiduciary duty theory, could not recover under § 1132(a)(3) because compensatory legal damages are not "appropriate equitable relief" under the statute); Primax Recoveries, Inc. v. Carey, 247 F. Supp. 2d 337, 342 (S.D.N.Y. 2002) (insurer not entitled to declaration of entitlement to proceeds from separate lawsuit, as such relief "is not equitable [under Great-West] – the imposition of a constructive trust or equitable lien on particular property – but [is] legal – the imposition of personal liability"); Leung v. Skidmore Owings & Merrill, 213 F. Supp. 2d 1097, 1103-04 (N.D.

10

Cal. 2002) (disallowing post-death reinstatement of participant in life insurance plan due to non-disclosure of rights and benefits, as such relief would be tantamount to "a monetary award of life insurance benefits").

The plaintiff does not even attempt to phrase his request for relief as one for an equitable remedy.  He simply requests this Court award him the $1,000,000.00 in accidental death benefits he claims to be entitled to.  The plaintiff is undeniably seeking legal damages – a remedy that is not permitted by ERISA in a breach of fiduciary duty claim.  Corsini v. United Healthcare Corp., 51 F. Supp. 2d 103, 106 (D.R.I. 1999) (the use of equitable terms to describe the requested relief amounts to nothing more than the relabeling of damages claims).  See also Sampson v. Rubin, 2002 U.S. Dist. LEXIS 20877 at *16 (D. Mass. Oct. 29, 2002) (Woodlock, J.) (summary judgment entered on plaintiff's claim where he attempted to recover benefits plaintiff would have received had policy not been cancelled because such relief was not available to him under ERISA); Wilson v. Globe Specialty Products, Inc., 117 F. Supp. 2d 92, 98 (D. Mass. 2000) (the recovery of rehabilitation expenses is not equitable relief).  "Almost invariably . . . suits seeking (whether by judgment, injunction or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."  Great West, 122 S. Ct. at 713 (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)).  The plaintiff's claim for breach of a fiduciary duty fails as a matter of law because he seeks monetary damages, which is a remedy that is not available to him.  Turner v. Fallon Community Health Plans, 127 F.3d 196, 198-99 (1st Cir. 1997) (breach of fiduciary duty claim dismissed for lack of remedy).

C. As a Matter of Law, the Plaintiff Cannot Establish a Claim for Equitable Estoppel Because He Does Not Allege Facts Sufficient to Support an Estoppel Claim.

The United States Court of Appeals for the First Circuit has not specifically recognized equitable estoppel as a valid claim in ERISA cases. See Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51 (1st Cir. 2001) (leaving open the question of "whether there may exist an equitable estoppel claim in cases where misrepresentations exist apart from the plan summary"); City of Hope National Medical Center v. Health Plus, Inc., 156 F.3d 223, 230 n. 9 (1st Cir. 1998) (not reaching the issue of whether an estoppel claim exists in ERISA framework because there had been no misrepresentation and therefore estoppel claim could not be established); Law v. Ernst & Young, 956 F.2d 364, 370 n. 10 (1st Cir. 1992) (not reaching issue of whether estoppel claim was consistent with ERISA because there had been no representations to form basis of ERISA claim). This Court need not reach a determination as to whether equitable estoppel is a cognizable claim, because the facts are insufficient as a matter of law to establish such a claim.

To establish an estoppel claim, the plaintiff must demonstrate: "(1) a representation of fact made to the plaintiff; (2) a rightful reliance thereon; and (3) injury or damage to plaintiff resulting from a denial of benefits by the party making the representation." Cleary v. Graphic Communications Int'l Union Supplemental Retirement & Disability Fund, 841 F.2d 444, 447 (1st Cir. 1988). The plaintiff's allegations fail to establish these elements.

AIG did not make any misrepresentations to the plaintiff and therefore the first element of an estoppel claim fails. See City of Hope Nat'l Medical Center, 156 F.3d at 230 n. 9 (assuming, without deciding that an estoppel claim could be stated under ERISA, but finding that no estoppel claim could exist without a misrepresentation). In this case, neither AIG nor

CGE&Y made any misrepresentations to Patricia or the plaintiff concerning the continuation of coverage beyond her tenure at CGE&Y. The plaintiff does not allege any such misrepresentations. Rather, he claims the act of deducting a full premium payment from Patricia's final paycheck entitles him to receive benefits.

Even assuming the deduction of the premium could somehow be construed as a misrepresentation, it would be impossible for either Patricia or the plaintiff to have <u>relied upon</u> the "misrepresentation," and reliance is an essential element to an estoppel claim. Patricia's last day of work was January 24, 2003. She died on January 29, 2003 and her final paycheck issued on January 31, 2003. CGE&Y deducted the premium after Patricia's death. When the premium was deducted, the accident had already happened and therefore it was impossible for the plaintiff to have changed his position in reliance upon the deduction. As a matter of law, the plaintiff has not set out a claim for equitable estoppel.

    D.    <u>ERISA Governs This Dispute and the Plaintiff's Remedies are Limited Only to Those Expressly Provided by ERISA</u>

On similar facts, this Court dismissed an action by an employee against his employer because ERISA prohibited the remedy which the plaintiff sought. <u>See</u> <u>Santos v. Visiting Nurses Assoc., Inc.</u>, CA-99-11016-RWZ, at 4 (D. Mass. March 10, 2000) (attached as Exhibit 1). In <u>Santos</u>, the plaintiff alleged his employer denied him benefits under a long-term disability plan even though the plaintiff had requested enrollment and his employer had deducted from the employee's pay the amount of the prescribed employee contribution <u>for fourteen months</u>. <u>Id.</u> at 1. The Court noted that the plaintiff failed to submit evidence of insurability or to procure a certificate of insurance, as the plan required. <u>Id.</u> at 2. The Court held that the plaintiff's claims against his employer, although fashioned as claims for breach of contract and breach of fiduciary duty, were preempted by ERISA because the plaintiff sought recovery of lost insurance benefits

– a remedy recoverable only under ERISA.  <u>Id.</u> at 3.  The Court also stated that although granting the employer's motion for summary judgment resulted in the plaintiff being "left without a remedy," such a result "cannot change the operation of ERISA."  <u>Id.</u>

As it did in <u>Santos</u>, ERISA bars the plaintiff from recovering the benefits he seeks.  Patricia's coverage ceased on the day she left the employ of CGE&Y.  The fact that CGE&Y deducted $12 for payment of the group premium rather than prorating her final group premium payment does not change the outcome.  After all, the plaintiff in <u>Santos</u> paid premiums for more than one full year and was not entitled to benefits because he failed to fulfill his eligibility requirements.  Like the plaintiff in <u>Santos</u>, the plaintiff in this matter cannot recover because the remedy he seeks – legal damages – is preempted by ERISA.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons defendant American International Life Assurance Company of New York Respectfully requests this Court dismiss all Counts contained in the plaintiff's Complaint.

Respectfully Submitted,

**AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK**
By its attorney,

/s/ Jennifer L. Markowski
_____
Robert T. Gill, BBO#192080
Jennifer L. Markowski, BBO #655927
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

14

## CERTIFICATE OF SERVICE

    I, hereby certify that on April 8, 2005, I caused to be electronically filed the preceding MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT in Civil Action No. 04-11875-WGY with the Clerk of Court using the CM/ECF system.

                                                 /s/ Jennifer L. Markowski
                                                 _____
                                                 Jennifer L. Markowski