UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD HELLER,<br>Plaintiff,<br><br>v.<br><br>CAP GEMINI ERNST & YOUNG WELFARE PLAN (RE: ACCIDENTAL DEATH BENEFITS), AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, AND CAP GEMINI U.S. LLC,<br>Defendant. | CIVIL ACTION NO. 04-11875-WGY |

**DEFENDANT AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This is an ERISA benefits action. The plaintiff Edward Heller ("Heller") moved for summary judgment against defendants Cap Gemini Ernst & Young Welfare Plan ("the Plan"), and Cap Gemini U.S. LLC (hereinafter collectively referred to as "CGE&Y"), and American International Life Assurance Company of New York ("AIG") on the sole theory that defendants waived their right to deny Heller's claim for accidental death benefits. Heller's now deceased wife Patricia Heller ("Patricia") was formerly employed by CGE&Y and, as an employee of CGE&Y, was enrolled to receive accidental death benefits. AIG insured the Plan. On January 24, 2003 Patricia effectively resigned from CGE&Y. On January 29, 2003, while traveling for her new employer, Patricia was tragically killed in a motor vehicle accident. Heller sought $1,000,000.00 in accidental death benefits provided through CGE&Y. AIG denied Heller's request citing the plain and unambiguous language of the Plan which unequivocally provided that Heller was not entitled to benefits because at the time of her death, Patricia was not an active CGE&Y employee. AIG upheld its decision when Heller pursued an administrative appeal.

Heller filed this action asserting various theories of recovery; but in his summary judgment motion Heller appears to have abandoned all theories except for waiver. Heller claims that because CGE&Y deducted a "full" $12 premium from Patricia's final paycheck issued on January 31, 2003, rather than deducting a prorated premium to reflect that Patricia was not employed from January 25, through January 31, 2003, the defendants waived their ability to deny Heller benefits on the basis that Patricia was not an active employee at the time of her death. The plaintiff's claim fails for the following reasons: (1) under the plain and unambiguous plan language, Patricia was not an active employee at the time of her death and therefore Heller was not entitled to benefits; and (2) the plaintiff's waiver claim is preempted by ERISA.

## ESSENTIAL FACTS[1]

### I.    The Plan Documents and Provisions

CGE&Y is the Plan Administrator and named fiduciary of the Cap Gemini Ernst & Young U.S. Accidental Death and Dismemberment Plan ("the Plan"). (Facts ¶ 1.) The Plan authorized CGE&Y to delegate its discretionary authority to interpret plan provisions, which CGE&Y delegated to AIG. (Id.) Under the delegation of authority, "AIG ha[d] the sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy." (Facts ¶ 4.)

The pertinent provisions concerning eligibility are as follows:

---

[1] All of the parties have moved for summary judgment. References here to "Response ¶" refers to AIG's response to plaintiff's Rule 56.1 Statement of Facts. References to "Facts ¶" refers to AIG's Rule 56.1 Statement of Facts submitted in conjunction with its own motion for summary judgment.

*Accidental Death Benefit*.  If injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, the Company will pay 100% of the Principal Sum.

*Injury* – means bodily injury caused by an accident occurring while this policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss.

*Classification of Eligible Person*
*Class   Description of Class*
1.     All active full-time employees working an average of 30 hours per week, all active part-time employees working an average of 20 hours per week and all retirees of Cap Gemini Ernst & Young US LLC

*Insured's Termination Date*.  An Insured's coverage under this Policy ends on the earliest of: (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application.

*Conversion Privilege Rider*:  If an Insured Person's coverage ends (prior to age 80) because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Master Application, coverage may be converted to an individual accidental death and dismemberment policy (herein called an Individual Policy).

The Company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy.  No evidence of insurability is required to obtain the Individual Policy.  The Individual Policy will be a type the Company regularly makes available on its effective date.  The initial premium for the Individual date will be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of the application for the Individual Policy.

Coverage under the Individual Policy will take effect on the later of: (1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured Person's coverage under the Policy ends.  In the event that the application and required premium are not received prior to termination of coverage under the Policy, coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective.  Coverage under the Individual Policy may not be less than $100,000 and may not exceed the greater of: (1) the amount for which the Insured Person was covered under the Policy; or (2) $250,000.

(Facts ¶ 5.) Based upon this clear language, in order to be eligible to participate in the Plan, an individual had to be an "<u>active</u>" full-time or part-time employee and, absent an exercise of the conversion option, an employee's eligibility "<u>cease[d]</u> on the day in which . . . the employee [was] <u>no longer employed by CGE&Y</u>." (Emphasis added.) (Id.)

  II.  <u>Patricia Heller's Employment With CGE&Y</u>

In March 1991, Patricia, the plaintiff's now deceased wife, began working as a consultant for co-defendant Cap Gemini Ernst & Young ("CGE&Y"). (Response ¶¶ 6-7; Facts ¶ 7.) As an employee of CGE&Y, Patricia participated in a Group Accident Insurance Plan, ("the Plan") which became effective on July 1, 2001. (Response ¶¶ 8, 11; Facts ¶ 8.) In January 2003, Patricia resigned from CGE&Y. Her last day of work was January 24, 2003. (Response ¶ 16; Facts ¶ 10.) Although Patricia had the option of converting her group policy into an individual policy within thirty-one (31) days of her separation from CGE&Y, she did not exercise this option. (Facts ¶ 11.) On January 29, 2003, five days after voluntarily severing her employment relationship with CGE&Y, Patricia was killed while riding in a taxi cab that crashed into a tree in Atlanta, Georgia. (Response ¶ 17; Facts ¶ 12.) At the time of her death Patricia was traveling for her new employer Bearing Point. (Facts ¶ 13.)

CGE&Y paid Patricia on a biweekly basis. Two days after her death, on January 31, 2003, CGE&Y issued Patricia's final paycheck. (Response ¶ 21; Facts ¶ 14.) CGE&Y deducted $12 from Patricia's check for the premium payment of Patricia's group Accidental Death and Dismemberment policy. (Response ¶ 21; Facts ¶ 15.) CGE&Y did not prorate the group premium payment to reflect the fact that Patricia had only worked one of the two weeks in the final pay period. (Id.)

4

III.    Edward Heller's Claim for Accidental Death Benefits

On February 27, 2003, Heller submitted a Proof of Loss Claim form seeking the $1,000,000.00 accidental death benefits he alleges he is entitled to. (Response ¶ 27; Facts ¶ 16.) After AIG requested and received various information from the plaintiff concerning the status of Patricia's employment on her date of death, AIG determined that Patricia was no longer an eligible participant on the date of her death because she was neither a full nor a part-time employee of CGE&Y. (Response ¶ 46; Facts ¶ 17.) AIG denied the plaintiff's claim for benefits on June 23, 2003. (Response ¶ 40; Facts ¶ 17.) On August 20, 2003, the plaintiff appealed the denial of benefits. On December 11, 2003, AIG upheld its denial. (Response ¶ 53; Facts ¶ 18.)

ARGUMENT

The Court should deny the plaintiff's motion for summary judgment as there are no material facts in dispute and the plaintiff's claim fails as a matter of law. The plaintiff does not argue that the explicit terms of the Plan entitle him to benefits. Rather, he argues that because CGE&Y deducted the full $12 group accidental death policy premium from Patricia's final paycheck the defendants have waived their ability to claim that Patricia was not an eligible plan participant on the date of her death. The plaintiff's summary judgment motion should be denied because (1) AIG's denial of benefits was based upon the plain and unambiguous plan language and was not arbitrary or capricious because it was reasoned and supported by the evidence in the administrative record; and (2) the plaintiff's waiver claim is preempted by ERISA.

I.    Standard of Review

"Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact

5

exists." Ciccone v. US Airways Inc., 144 F. Supp. 2d 30, 33 (D. Mass. 2001). See Fed. R. Civ. P. 56. In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999); see also Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998); Hinchey v. Nynex Corp., 144 F.3d 134, 140 (1st Cir. 1998); Dykes v. DePuy, Inc., 140 F.3d 31, 33 (1st Cir. 1998). In accordance with this standard, for the following reasons, the plaintiff's motion for summary judgment should be denied.

      II.      AIG's Denial of Benefits Was Neither Arbitrary Nor Capricious as it Was Clearly Reasoned and Supported by Substantial Evidence in the Record.

Where a plan beneficiary seeks judicial review of a denial of benefits, the benefits determination should be reviewed under an arbitrary and capricious standard if, as in this case, discretionary authority has been appropriately delegated. This Court's review should proceed under an arbitrary and capricious standard because CGE&Y had discretionary authority to interpret the Plan and clearly delegated its discretionary authority to AIG. See Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). Specifically, "AIG has the sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy." Under this deferential standard of review, a benefits determination must be upheld if it was within the decision maker's "authority, reasoned, and 'supported by substantial evidence in the record.'" Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). See also Leahy v. Raytheon Co., 315 F.3d 11, 15 n. 3 (1st Cir. 2002).

      AIG denied the plaintiff's claim for benefits because, at the time of Patricia's death, she was no longer employed by CGE&Y and, in fact, was working for her new employer Bearing Point. The relevant portions of the Policy provided as follows:

6

*Accidental Death Benefit*.  If injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, the Company will pay 100% of the Principal Sum.

*Injury* – means bodily injury caused by an accident occurring while this policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss.

*Classification of Eligible Person*

*Class    Description of Class*
1.       All active full-time employees working an average of 30 hours per week, all active part-time employees working an average of 20 hours per week and all retirees of Cap Gemini Ernst & Young US LLC

*Insured's Termination Date*.  An Insured's coverage under this Policy ends on the earliest of: (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application.

*Conversion Privilege Rider*:  If an Insured Person's coverage ends (prior to age 80) because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Master Application, coverage may be converted to an individual accidental death and dismemberment policy (herein called an Individual Policy).

The Company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy.  No evidence of insurability is required to obtain the Individual Policy.  The Individual Policy will be a type the Company regularly makes available on its effective date.  The initial premium for the Individual policy will be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of the application for the Individual Policy.

Coverage under the Individual Policy will take effect on the later of: (1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured Person's coverage under the Policy ends.  In the event that the application and required premium are not received prior to termination of coverage under the Policy, <u>coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective</u>.  Coverage under the Individual Policy may not be less than $100,000 and may not exceed the greater of: (1) the amount for which the Insured Person was covered under the Policy; or (2) $250,000.

Thus, there are two scenarios under which coverage could have been provided to an employee of CGE&Y.  The individual either (1) had to be an "<u>active</u>" full-time or part-time employee at the time of the accident or (2) had to have exercised her conversion option by submitting an <u>application</u> and <u>premium</u> for an individual policy within thirty-one (31) days of leaving CGE&Y.  If the employee did not opt to convert the policy, then eligibility under the group policy "<u>cease[d]</u> on the day in which . . . the employee [was] <u>no longer employed by CGE&Y</u>."  (Emphasis added.)  Although the Plan allowed employees thirty-one (31) days within which to convert, it explicitly stated that if there was a lapse between the last day worked and the submission of the application and premium for the new policy, coverage would <u>not</u> be provided until the materials were received.  The premium for the individual policy was to "be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of the application for the Individual Policy."

It is incontestable that Patricia's last day of work was January 24, 2003.  From that point on, Patricia ceased being an active employee of CGE&Y.  Patricia did not submit a written application and/or pay the required premium (which was to be calculated at the time of application) as provided under the Conversion Privilege Rider.  Thus, on January 25, 2003, the Plan's coverage of Patricia ceased.

The Plan plainly does not provide accidental death benefits to the plaintiff because Patricia indisputably was no longer employed by CGE&Y at the time of her death.  She, in fact had already begun new employment.  The fact that CGE&Y deducted a "full" $12 group premium payment from Patricia's last paycheck when she only worked for half of the pay period has no effect on AIG's *eligibility* determination.  AIG's determination is reasoned and supported by substantial evidence in the administrative record as well as the plain language of the policy.

8

Moreover, nowhere in his motion for summary judgment does the plaintiff argue that the terms of the Plan require a determination that Patricia was an eligible plan participant on the date of her death. Rather, his claim for benefits is solely based upon waiver.

### III.     The Plaintiff's Waiver Claim is Preempted by ERISA

#### A.     State Common Law Waiver Theory is Preempted

The plaintiff cannot proceed under a state common law waiver theory since such a claim is preempted by ERISA. Section 514 of ERISA "supersede[s] any and all State laws insofar as the may now or hereafter relate to any employee benefits plan." 29 U.S.C. § 1144(a); see also Vartanian v. Monsanto Co., et al., 14 F.3d 697, 700 (1st Cir. 1994). "The pre-emption clause is conspicuous for its breadth. . . . [and] include[s] all laws, decisions, rules regulations, or other State action having the effect of a law." Ingersoll-Rand Co. v. McClenndon, 498 U.S. 133, 138 (1990). The First Circuit has stated that a claim "relates to" an employee benefit plan, "if it has a connection with or reference to such a plan." Vartanian, 14 F.3d at 700 (quoting Ingersoll-Rand, Co., 498 U.S. at 139). If the court must direct its inquiry to the plan or if the action conflicts with an ERISA cause of action, it is preempted. Id.

In this matter, the resolution of the plaintiff's waiver claim is inextricably connected to the existence of the Plan. In order for the plaintiff to establish that the defendants have waived their ability to deny the plaintiff benefits under the Plan, the plaintiff must first establish the existence of the Plan. Because the plaintiff would have no cause of action if the Plan did not exist, his claim in inseparably connected with the Plan and is therefore preempted by ERISA. See Vartanian, 14 F.3d at 700 (finding that the plaintiff's misrepresentation claim was preempted

9

because in order to prevail on the state common law claim of misrepresentation, the plaintiff would have to plead, and the Court would have to find, that the plan at issue existed).

### B. Federal Common Law Waiver Theory is Preempted

The plaintiff is similarly unsuccessful in proceeding under a federal common law theory of waiver because the First Circuit has never recognized a common law waiver claim or indicated that it will do so in the future. Other circuits disagree as to whether a waiver claim may be maintained. Compare White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997) (rejecting outright any claim for waiver or estoppel in an ERISA case), with, Pitts v. American Security Life Ins. Co., 931 F.2d 351 (5th Cir. 1991) (making the Fifth Circuit the first and only circuit court of appeals to find that the plaintiff was able to establish a waiver claim in an ERISA case). Regardless of whether the First Circuit will ultimately permit a federal common law waiver claim in an ERISA case, such a claim cannot exist in this matter because it would effectively modify the plain and unambiguous terms of the Plan in direct contravention of 29 U.S.C. § 1102(a)(1). Section 1102(a)(1) requires that employee benefit plans be "established and maintained pursuant to a written instrument." What the plaintiff seeks to do in this matter is to modify the eligibility requirement which explicitly states that eligibility ceases on the last day worked.

The circuit courts of appeal have routinely rejected any common law claims that, if allowed, would serve to modify an ERISA plan. See, e.g., Blum v. Spectrum Restaurant Group, Inc., 261 F. Supp. 2d 697, 717 (E.D. Tex. 2003) (noting that "the majority of courts that have examined the issue have held or noted that waiver is unavailable when it would expand the scope of coverage under an ERISA plan.); Biggers v. Wittek Indus., Inc., 4 F.3d 291 (4th Cir. 1993) (refusing to recognize an estoppel claim where it would constitute an oral modification of the

10

plan); Rodrigue v. Western & Southern Life Ins. Co., 948 F.2d 969, 971 (5th Cir. 1991) (same); Davidian v. Southern Cal. Meat Cutters Union & Food Employees Benefit Fund, 859 F.2d 134, 136 (9th Cir. 1988) (same); Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1265 (10th Cir. 1988) (same); Nachwalter v. Christie, 805 F.2d 956, 959-960 (11th Cir. 1986) (same). It follows that a federal common law claim, such as waiver, that would orally modify or amend the terms of the plan cannot be sustained because Section 1102(a)(1) requires that ERISA plans be established and maintained in writing.

In this case, the Plan has clearly defined eligibility requirements. In order to be eligible for benefits, on the date of the occurrence the plan participant has to be an active employee. There is no dispute that the plaintiff was not an active employee of CGE&Y at the time of her death and, in fact, had already begun working for her new employer. The date on which her benefits terminated was the date on which she ceased being an active employee. To extend benefits beyond that date would modify the unambiguous terms of the Plan and such a plan modification would impermissibly conflict with Section 1102(a)(1).

      C.      Even if a Federal Common Law Claim is not Completely Foreclosed by ERISA, the Few Cases that Have Supported Such a Claim are Inapposite to This Case.

Pitts v. American Security Life Ins. Co., is the only federal circuit ERISA case in which a waiver claim has been upheld, but the facts at issue in Pitts are inapposite to this case. 931 F.2d 351 (5th Cir. 1991); see also Rhorer v. Raytheon Engineers & Constructors, Inc., 181 F.3d 634, 645 (5th Cir. 1999) (finding that a question of fact existed as to whether plaintiff's employer knowingly waived its right to enforce active work requirement where the employer, with knowledge of facts that would permit the employer to deny enrollment, permitted the plaintiff to enroll in optional life insurance, accepted premiums for several months and did not return the

11

premiums for more than a year).  In Pitts, the plaintiff sought to have his medical expenses covered under the terms of a group employee policy issued to his employer.  Id. at 353.  The defendant insurer asserted that it should not be liable for paying benefits under the group policy because the policy was void *ab initio* as the employer had made material misrepresentations in obtaining the policy and those misrepresentations prevented the formation of a valid contract.  Id. at 353.  The policy at issue required the employer to have a minimum of ten participating employees in order for the defendant to issue a policy.  Id.  The court found that the defendant knew before the plaintiff had incurred any medical expenses that were payable under the policy, that the employer did not have the requisite number of employees.  Id. at 356.  Yet, despite this knowledge, the defendant issued the policy, accepted premiums for five months, and paid medical benefits without reservation.  Id. at 356-367.  The Fifth Circuit concluded that the policy was *voidable*, not *void ab initio*, but regardless of whether the policy was void, the affirmative actions of the defendant constituted a waiver of its defense to liability insomuch as the defense was based upon the misrepresentations of which the defendant had knowledge but chose to ignore.  Id. at 358.

The facts of this case bear no resemblance to those at issue in Pitts.  There is no dispute in this case over the validity of the policy and there are no allegations that the defendants were aware of some factual circumstances that would preclude coverage, but chose to ignore those circumstances.  To the contrary, the defendants have always consistently maintained that Heller is not entitled to benefits because Patricia was not an eligible plan participant at the time of her death.  The defendants have not waived the eligibility requirement and the plaintiff's contention that acceptance of the "full" $12 premium constitutes a voluntary or intentional relinquishment

of the right to rely upon the eligibility requirement is without merit.  See Pitts, 931 F.2d at 357 (defining waiver as "the voluntary or intentional relinquishment of a known right.")

The plaintiff's reliance on several federal district court decisions, is similarly misplaced. Many of the cases relied upon by the plaintiff discuss only the possibility that a waiver claim may be asserted in an ERISA case, but then hold that there could be no waiver under the facts before them.  See, e.g., Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida, 942 F. Supp. 562, 570 (S.D. Fla. 1996) (finding that a "something for nothing waiver claim" could not stand); Hird v. Bostrom Seating, Inc., 147 F. Supp. 2d 1190, 1201 (N.D. Ala. 2001) (finding that defendant did not intentionally waive the conversion application requirement and/or receive an unjust benefit); Blum, 261 F. Supp. 2d at 717 (dismissing waiver claim where it "would, in essence, expand the scope of coverage under the . . . Plan").

Two of the cases cited by the plaintiff relate to the issue of whether a plan participant can waive his entitlement to benefits – a distinct issue from whether a plan can waive plan provisions.  See Heci Exploration Co., Inc. v. Holloway, 862 F.2d 513, 522-523 (5th Cir. 1988); Rodriguez-Abreau v. Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st Cir. 1993).  In these two cases, waiver arose in the context of a defense to the plaintiff's claim for benefits.  The assertion of waiver as a defense to a benefits claim is an entirely separate issue from the issue in the present matter, which, of course, is whether the defendants waived the Plan's eligibility requirement.

The small number of decisions that have upheld a plaintiff's waiver claim are inapposite to this case.  For example, like the defendants in Pitts, the defendant insurer in Burger v. Life Ins. Co. of North America, 103 F. Supp. 2d 1344, 1345-1346 (N.D. Ga. 2000), was aware that

13

benefits were being inappropriately paid to the plaintiff, and, despite this knowledge, continued to collect premiums and overpay benefits for four years, only to later demand reimbursement of its overpayment. Id. at 1346. Based upon these facts, the court in Burger stated, "[i]f it is ever appropriate to apply waiver principles under ERISA, then this is such a case." Id. at 1348. The court further explained its decision and stated, "[w]here an insurer, with knowledge of facts vitiating a policy, by acts, declarations, or dealings leads an insured to believe that he or she is protected under the policy, such acts, transactions, or declarations operate as a waiver of the forfeiture and preclude the insurer from relying thereon as a defense to a suit on the policy." Id. at 1349.

The decisions cited by the plaintiff and discussed above recognize the uncertainty as to whether and when a waiver claim may ever be successfully asserted by a plaintiff in an ERISA benefits case. In those rare instances in which waiver has been recognized there was some element of actual knowledge by an insurer of its ability to disclaim or deny coverage and a failure to do so in light of that knowledge coupled with the collection of premiums for an extended period of time. In this case, the defendants consistently disclaimed benefits on the same basis. They did not make any representations to the plaintiff or Patricia that were contrary to their position that Patricia was not an eligible plan participant on the date of her death. CGE&Y's routine and administrative determination to withdraw the full $12 premium from Patricia's last paycheck rather than a prorated $6 premium does not amount to a waiver of the eligibility requirement. The fact that the defendants have not as of yet reimbursed the $6 overpayment does not advance the plaintiff's waiver theory. Since the overpayment of $6 is the

14

driving force behind the present lawsuit and because the premium payment is so nominal, any attempt to return the payment would undoubtedly be in vain.[2]

## CONCLUSION

WHEREFORE, for all of the foregoing reasons defendant American International Life Assurance Company of New York Respectfully requests this Court deny the plaintiff's Motion for Summary Judgment.

          Respectfully Submitted,

          **AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK**
          By its attorney,

          /s/ Jennifer L. Markowski
          _____
          Robert T. Gill, BBO #192080
          Jennifer L. Markowski, BBO #655927
          Peabody & Arnold LLP
          30 Rowes Wharf
          Boston, MA 02110
          (617) 951-2100

---

[2] It should not go unnoticed that in his motion for summary judgment the plaintiff misrepresents that the defendants "refused" to rebate Patricia's premiums. See plaintiff's motion p. 10. The defendants could not have "refused" to return the rebate because the plaintiff never requested that it be returned. The plaintiff attempts to use this factual misrepresentation to feed into his baseless claim that the defendants were engaged in some nefarious profit-motivated scheme to bilk the plaintiff out of a nominal premium overpayment. The plaintiff clearly makes these baseless overtures to try and generate the false impression that intentional and deceitful acts were being perpetrated by the defendants. The plaintiff presents no evidence to support such allegations because none exists. At worst, the defendants mistakenly overcharged the plaintiff $6.

**CERTIFICATE OF SERVICE**

    I, hereby certify that on April 8, 2005 I caused to be electronically filed the preceding DEFENDANT AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT in Civil Action No. 04-11875-WGY with the Clerk of Court using the CM/ECF system.

                                        /s/ Jennifer L. Markowski
                                        _____