IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD HELLER,<br><br>    Plaintiff,<br><br>v.<br><br>CAP GEMINI ERNST & YOUNG WELFARE PLAN (RE: ACCIDENTAL DEATH BENEFITS), AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK AND CAPGEMINI U.S. LLC<br><br>    Defendants | CIVIL ACTION<br>FILE NO. 04-11875WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
CAP GEMINI ERNST & YOUNG WELFARE PLAN'S AND CAPGEMIN U.S. LLC'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

I. **INTRODUCTION**

Plaintiff Edward Heller's ("Plaintiff") wife, Patricia, was employed by Defendant Capgemini U.S. LLC. One of the benefits provided to her under Capgemini U.S. LLC's ERISA-governed Cap Gemini Ernst & Young Welfare Plan (the "Plan") was an accidental death and dismemberment ("AD&D") policy with American International Life Assurance Company of New York ("AIG"). On January 24, 2003, Ms. Heller resigned from Capgemini U.S. LLC, effective immediately. Unfortunately, a few days later, on January 29, while traveling on business for her new employer, Ms. Heller died in an automobile accident.

Mr. Heller applied for benefits under the Capgemini U.S. LLC AD&D policy. AIG, acting for the Plan, denied the claim because, under the clear and unambiguous terms of the Plan, benefits are payable only to current employees. It is undisputed that Ms. Heller was no longer an employee of Capgemini U.S. LLC on the date of her untimely death.

In this action, Mr. Heller seeks to have the Court ignore the Plan's eligibility requirements and to overrule the sound decision made by AIG denying benefits. Defendants Capgemini Ernst & Young Welfare Plan (the "Plan") and Capgemini U.S. LLC (collectively herein "Capgemini"), are entitled to summary judgment for three separate reasons.

First, because the Plan grants AIG discretion to interpret the terms of the Plan and decide on benefits, the denial of benefits must be reviewed under the extremely deferential "arbitrary and capricious" standard. There can be no question that AIG's decision constitutes a reasonable interpretation of the relevant Plan documents. Therefore, it must be upheld.

Second, although Mr. Heller's purports to state common law claims for breach of contract, breach of the implied covenant of good faith or fair dealing and estoppel,[1] these claims are preempted by ERISA, which has one of the broadest preemption provisions of federal law. Where, as here, the plaintiff is seeking benefits under an ERISA-governed Plan, the exclusive remedy is a suit for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

Finally, Mr. Heller's contention that the defendants are estopped from denying coverage because Capgemini deducted from his wife's pay the premium for the AD&D policy for January also fails. Even if this contention were not preempted, the elements of this claim are not present here. Mr. Heller has failed to show reasonable or justifiable reliance or extraordinary circumstances justifying application of this equitable doctrine. Indeed, in *Sippel v. Reliance Standard Life Ins. Co.*, 128 F.3d 1261 (8th Cir. 1997), a case that has virtually identical facts to this action, the Court soundly rejected the same estoppel theory because there, as here, the unambiguous language of the ERISA-governed plan required the plan participant to be an employee at the time of death. For all of these reasons, Capgemini is entitled to summary judgment.

---

[1] Mr. Heller has agreed to dismiss his causes of action for violating Massachusetts General Law Chapter 175, § 134 and for failure to provide notice of conversion rights (the fourth and fifth counts of the Complaint, respectively). Because these claims are going to be dismissed, they are not addressed here.

## II. STATEMENT OF MATERIAL FACTS

Patricia Heller was employed and started working for Defendant Cap Gemini Ernst & Young's predecessor, Ernst & Young, in March 1991. (Complaint ¶10.) In May 2000, Cap Gemini Ernst & Young acquired the consulting division of Ernst & Young, where Ms. Heller worked. (Complaint ¶ 12.) After the acquisition, Ms. Heller became an employee of Cap Gemini Ernst & Young (now Capgemini U.S. LLC). (Complaint ¶ 4.) Effective July 1, 2001, Defendant AIG issued a Group Accident Insurance Policy to Cap Gemini Ernst & Young. (Complaint ¶13.) The policy was issued pursuant to an ERISA-governed welfare benefit plan. (Complaint ¶ 2.) The plan was paid for by payroll deductions. (Complaint ¶¶ 26-29, 32.) Pursuant to the terms of the Plan, Ms. Heller had potentially $1,000,000 in AD&D benefits. (Complaint ¶ 32.)

On January 24, 2003, Ms. Heller tendered her resignation, effective immediately. (Complaint ¶20.) On January 29, 2003, Ms. Heller was killed in a car accident while traveling on business for her new employer. (Complaint ¶ 21.)

On February 27, 2003, Mr. Heller applied for benefits under the Plan. (Complaint ¶ 30.) The AD&D Policy sets out the following provisions for eligibility of benefits:

> 1. All active full-time employees working an average of 30 hours per week are covered under the policy. (R. 56.1[2], Exh. 17, p.1).
>
> 2. An Insured's coverage under the Policy ends on the **earliest of:** (1) the date the Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) **the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application.** (Emphasis added.) (R. 56.1, Exh. 2, p.3).
>
> 3. If an Insured Person coverage ends because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Master Application, coverage may be converted to an individual accidental death and dismemberment policy (an individual policy). The company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy. Coverage under the Individual Policy will take effect on the later of:

---

[2]    R. 56.1 refers to the District of Massachusetts Local Rule 56.1 statement filed by Capgemini.

(1) the date the application and required premium payment are received by the company; or (2) the date that the Insured Person's coverage under the Policy ends. In the event that the application and required premium are not received prior to termination of coverage under the Policy, coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective. (Emphasis added.) (R. 56.1, Exh. 3, p. 1).

4. The Classification of Eligible Persons is as follows:

1. All active full-time employees working an average of 30 hours per week, all active part-time employees working an average of 20 hours per week and all retirees of Cap Gemini Ernst & Young LLC.
2. All Eligible Spouse of Class 1 Insureds.
3. All Eligible Dependent Children of Class 1 Insureds.
4. All Eligible Spouse and Eligible Dependent Children of Class 1 Insureds.

(R. 56.1, Exh. 17, p. 1). Based on these Plan provisions, AIG determined that Ms. Heller was not entitled to benefits because she was not an employee of Capgemini U.S. LLC at the time of her death. AIG, therefore, denied her claim on June 23, 2003. (Complaint ¶ 35.) Mr. Heller appealed the denial on August 20, 2003. (Complaint ¶ 36.) His appeal was denied by AIG on December 11, 2003. (Complaint ¶ 38.)

Plaintiff brought this suit on August 27, 2004, alleging that he was entitled to AD&D benefits of $1,000,000. (Complaint, generally.) Mr. Heller alleges three causes of action: (1) he was improperly denied benefits under the terms of the Plan; (2) defendants Capgemini and AIG (collectively "Defendants") breached their duty of good faith; and (3) because Capgemini deducted Ms. Heller's AD&D premium from her last payroll check, Defendants are estopped from denying Mr. Heller's claim for benefits.

## III. ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The moving party bears the burden of informing the court of the basis for its motion together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 325. The moving party bears the initial burden of "averring 'an absence of evidence to support the nonmoving party's case.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990), quoting *Celotex*, 477 U.S. at 325. Once that burden has been met, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), citing Fed. R. Civ. P. § 56(e). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or shows that there is no genuine issue as to any material fact that supports plaintiff's claim. *See Lawrence v. Northrop Corp.*, 980 F.2d 66, 68 (1st Cir. 1992). Rule 56 does not require that any discovery take place before summary judgment can be granted. Fed. R. Civ. Pro. § 56(b); *see Gifford v. Travelers Protective Ass'n*, 153 F.2d 209, 211 (9th Cir. 1946) (defending party "may *at any time* move with or without supporting affidavits for a summary judgment in his favor under the Rules") (emphasis in original).

    B.    <u>Capgemini's Decision to Deny Mr. Heller's Claim For Benefits Should Be Upheld</u>

        1.    <u>Capgemini's Decision to Deny Benefits Is Appropriately Reviewed for An Abuse of Discretion</u>

The basic facts here are undisputed: (a) the Capgemini Plan is governed by ERISA and (b) the AD&D Policy, subject to this suit, was provided pursuant to the Plan.

Beneficiaries of an ERISA-governed may sue for benefits pursuant to 29 U.S.C. 1132(a)(1)(B). In reviewing such an action, courts apply an arbitrary and capricious standard to a plan administrator's actions if the plan grants the administrator discretionary authority to

determine eligibility for benefits or to construe the plan's terms. *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 5 (1st Cir. 2003); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (courts must review an ERISA administrator's actions *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case review is under the arbitrary and capricious standard); *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998) (same); *Gannon v. Metro. Life. Ins. Co.*, 360 F.3d 211, 212-213 (1st Cir. 2004); *Lopes v. Metropolitan Life Ins. Co.*, 332 F.3d 1, 4 (1st Cir. 2003); *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 22 (1st Cir. 2003).

Thus, the first question before the Court is whether the Plan provides the decision maker with such discretion. The Summary Plan Description provides that

> AIG has the sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy. All determinations and interpretations made by AIG are conclusive and binding on all parties.

(R. 56.1, Exh. 1, p. 13). This echoes the language of the Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document. The Administrative Document, which governs the Plan, is more than sufficient to grant discretion needed for an arbitrary and capricious review. The administrative document governing the AD&D Plan provides:

> The Plan Administrator shall have **sole and absolute discretion** (a) to **interpret the provisions of the Component Plans...;** (b) **to make factual findings with respect to any issue arising under the Component Plans;** (c) **to determine the rights and status under the Component Plans of Participants, Beneficiaries and other persons;** and (d) to decide disputes arising under the Component Plans and **to make determinations and findings (including factual findings) with respect to the benefits payable thereunder and the persons entitled thereto, as may be required for purposes of the Component Plans**. In furtherance thereof, but without limiting the foregoing, the Plan Administrator is hereby granted the following specific authorities, which it shall discharge in its sole and absolute discretion in accordance with the terms of the Component Plans (as interpreted, to the extent necessary, by the Plan Administrator): (a) to resolve all questions (including factual questions) arising under the Component Plans as to any individual's entitlement to

> become a Participant; (b) **to determine the amount of benefits payable with respect to any person under the Component Plans (including, to the extent necessary,** making any factual findings with respect thereto); and (c) to conduct the claims and reviews procedures, to the extent specified herein. **All decisions of the Plan Administrator as to the facts of any case and the application thereof to any case, as to the interpretation of any provision of the Component Plans or its application to any case, and as to any other interpretative matter or other determination or question related to the Component Plans, shall be final and binding on all parties affected thereby, subject to the claims and review procedures, to the extent specified herein.**

(R. 56.1, Exh. 18, pp. 3-4.) (Emphasis added). *See Goncalves v. NMU Pension Trust*, 818 A.2d 678, 683 (R.I. 2003) (finding less explicit language sufficient to grant discretion); *see also Gannon v. Metro. Life Ins. Co.*, 360 F.3d at 213; *see also Lopes v. Metro. Life Ins. Co.*, 332 F.3d at 4. Therefore, the appropriate standard for judicial review of AIG's decision to deny Plaintiff's claim for benefits and Capgemini's decision to support the denial of benefits on appeal is whether the actions were "arbitrary or capricious." *Gannon*, 360 F.3d at 213.

The Circuit Courts of Appeal have made clear that "arbitrary and capricious" standard of review is very deferential. As the Tenth Circuit has explained:

> When reviewing under the arbitrary and capricious standard, "the Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary and capricious..." The decision will be upheld unless it is "not grounded on any reasonable basis." The reviewing court "need only assure that the administrator's decision falls somewhere on the continuum of reasonableness – even if on the low end."

*Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (internal citations omitted); *see Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998) (in an arbitrary and capricious review, courts will uphold administrative decisions interpreting the plan as long as the decisions were rational, logical, and supported by substantial evidence); *Coleman v. Metro. Life Ins. Co.*, 919 F.Supp. 573, 581 (D.R.I. 1996) ("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."); *Goncalves v. NMU Pension Trust*, 818 A.2d at 683 ("The administrator's decision

need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within their knowledge to counter a claim that it was arbitrary and capricious."), *quoting Woolsey v. Marion Lab Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991).

Not only should a plan administrator's decision be given substantial deference, a court's review of that decision is limited to the information before the administrator at the time the decision was made. In cases where the administrator's decision is reviewed under an arbitrary and capricious standard of review, the First Circuit has held that "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003); *see Curtin v. UNUM Life Ins. Co. of Am.*, 298 F.Supp.2d 149, 152 (D. Me. 2004). Discovery is limited only to the information that was available and presented to the plan administrator at the time of the administrator's decision. It is anomalous to suggest that an administrator acted unreasonably "by ignoring information never presented to it." *Lopes v. Metro. Life Ins. Co.*, 332 F.3d at 5 (internal citations omitted). Mr. Heller may not, once in litigation, introduce new records or new testimony to support his claims. The record consists only of the "evidence that was before the administrator when he made the decision being reviewed." *Cook v. Lib. Life Ins. Co.*, 320 F.3d 11, 19 (1st Cir. 2001) (citation omitted); *see Giroux v. Fortis Ins. Co.*, No. 04-104, 2005 U.S. Dist. LEXIS 365, at *13 (D. Me. Jan. 11, 2005)[3] (The district court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.") (Internal citations omitted.) In this case, the entire administrative record, consisting of, among other things, the plan documents, denial letters, and emails, was submitted to this Court by AIG on January 12, 2005 and is incorporated by reference herein.

---

[3]   As this case is unpublished, the decision is attached as Exhibit 19.

2. **Capgemini's Decision to Deny Mr. Heller's Claim for AD&D Benefits Was Not An Abuse Of Discretion**

    a. **Under the Terms of the Plan, Ms. Heller Was No Longer a Plan Participant When She Died**

It is undisputed that Ms. Heller's last day of work was January 24, 2003. (Complaint ¶20.) Under the terms of the Plan, Ms. Heller's Accidental Death Policy terminated on January 25, 2003 because, as of that date, she no longer met the eligibility requirements. The Group Accident Insurance Policy states that

> An Insured's coverage under this Policy ends on the **earliest of:** (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; or (4) **the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application.** (Emphasis added.) (R. 56.1, Exh. 2, p.3).[4]

The only way a person can continue to be covered after he or she terminates employment is by converting their group policy coverage into individual coverage.[5] At no point did anyone submit a written application nor provide payment of the required premium to receive an individual policy. (R. 56.1, Exh. 16, p.1). Thus, her policy had not been converted into an Individual Policy. Therefore, Ms. Heller was not in a class of eligible persons for purposes of the Plan and, under the terms of the plan, the denial of benefits was proper. Neither Capgemini nor AIG abused its discretion in denying benefits. Mr. Heller's claim for benefits must fail.

---

[4]     For the definition of Classification of Eligible Persons, see Page 5 of this Memorandum or see the Statement of Material Facts (R. 56.1, Exh. 17, p. 1).

[5]     An Insured Person whose coverage ends because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Master Application, may convert his group policy into an individual accidental death and dismemberment policy. The company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy. Coverage under the Individual Policy will take effect on the later of: (1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured Person's coverage under the Policy ends. (R. 56.1, Exh. 3, p.1).

### b. Capgemini Was Not Acting Under a Conflict of Interest When It Denied Mr. Heller's Appeal

Plaintiff may argue that Capgemini and/or AIG were acting under a conflict of interest in denying the claim for AD&D benefits because they stood to benefit financially from the denial. There is simply no evidence of such a conflict, however, nor evidence that the financial interests of Defendants played any part in the denial decision. The Third Circuit has noted that the Supreme Court in *Firestone Tire & Rubber Co.*, 489 U.S. 101 (1989), implicitly adopted a position placing the burden on the claimant to demonstrate that heightened review of a decision. *See Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees*, 970 F.2d 1165, 1172 (3d Cir. 1992) ("where the *claimant demonstrates* that it would be inequitable to defer to the plan administrator, stricter scrutiny of his decision is in order") (emphasis in original); *see also Kutner v. UNUM Life Ins. Co. of Am.*, No. 99-800, 2000 U.S. Dist. LEXIS 3152, at *17-18 (E.D. Penn. Mar. 20, 2000)[6] (noting that the administrator "does not have the burden of rebutting [the claimant's] assertion that there is a conflict of interest, but rather [the claimant] has the burden of providing this Court with specific evidence that a conflict exists").

Mr. Heller cannot show that an actual conflict of interest exists. "Where the sponsor of a Plan reserves for the Plan administrators the discretion to interpret the plan, anyone urging that a court disregard that reservation has the burden of showing some reason to believe the exercise of discretion has been tainted." *Kotrosits*, 970 F.2d at 1173 (citing several cases for the rule that the mere fact that the cost of benefits will be borne by the employer is insufficient to require de novo review); *see Woolsey v. Marion Laboratories, Inc.*, 934 F.2d at 1459-60 (mere possibility that administrators of profit-sharing plan could benefit from denial of former employee's request that he receive part of his benefit in employer's stock is insufficient to show presumptive conflict of interest); *see also Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997) (a participant must provide "material, probative evidence, beyond the mere fact of the

---

[6] As this case is unpublished, the decision is attached as Exhibit 20.

apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.") (Citations omitted) (Emphasis added); see also *Romero v. Smithkline Beecham*, 309 F.3d 113, 118 (3rd. Cir. 2002) (small potential payout compared to company's revenues was not enough evidence for court to find a conflict of interest). Mr. Heller has failed to present any evidence that the structure of the Plan inherently creates a conflict of interest or that the Plan Administrator acted with bias or bad faith. Where there is no evidence of bias, there is no conflict of interest. *Nazay v. Miller*, 949 F.2d 1323, 1335 (3rd Cir. 1991) (holding no conflict of interest existed because there was no allegations of bad faith and employer/administrator had disincentives for denial of benefits). In fact, not only has Mr. Heller failed to present any evidence of a conflict of interest, he does not raise the issue of a conflict of interest in his Complaint at all.

Indeed, the nature and size of Mr. Heller's claim counsels against the finding of a conflict of interest in this case. Mr. Heller seeks benefits of $1,000,000. Defendant has total revenues of approximately €5.7 billion per year[7] (approximately $7.5 billion dollars). A company with such enormous revenues would not suffer a conflict of interest when faced with such a small claim. Generally, where such a small claim is at stake the court will find that the company was not operating under a conflict of interest. *See, e.g., Thomas v. SmithKline Beecham Corporation*, 297 F. Supp. 2d 773, 790 (E.D. Penn. 2003) ("[C]ourts are reluctant to increase the level of scrutiny significantly when relatively small sums of money are involved unless procedural anomalies are present.")

Where, as here, no evidence has been presented that the Plan acted with bias or with bad faith, no evidence has been presented of any procedural irregularities, and no evidence has been presented that the Plan's structure poses an inherent conflict of interest, the Plan's decision must be reviewed for an abuse of discretion and should only be overturned if made in bad faith. Since

---

[7] <http://www.capgemini.com/about/> (Last visited February 26, 2005).

Mr. Heller has presented no evidence that the Plan acted in bad faith in denying his claim for additional benefits under the Plan, the Plan's decision must be upheld.

Finally, even if a conflict of interest exists, "Massachusetts district court has prophesied that in case of a conflict of interest, our court would merely 'give more "bite" to the arbitrary and capricious standard.'" *Doyle v. Paul Revere Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998) (internal citations omitted). The First Circuit went on to interpret "more bite" as "adhering to the arbitrary and capricious principle, with special emphasis on reasonableness, but with the burden on the claimant to show that the decision was improperly motivated." *Id.* (Internal citations omitted.)

### C. Any Breach of Contract or Breach of Good Faith Claim Is Preempted Under ERISA

Mr. Heller purports to bring common law claims for either breach of contract or breach of implied covenant of good faith.[8][9] It is unclear whether his claim was intended to be plead under state law or under federal common law. Regardless of what cause of action he intends to bring, it is preempted under ERISA.

#### 1. If These Claims Are Based on State Law, They Are Preempted

In *Pilot Life v. Dedeaux*, the state common law causes of action asserted in the complaint, each based on alleged improper processing of a benefit claim under an employee benefit plan "related to" an employee benefit plan and therefore fell under ERISA's preemption clause. *Pilot Life v. Dedeaux*, 481 U.S. 41 (1987), citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985); *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-100 (1983). In *Pilot Life*, the Supreme Court observed that "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life*, 481 U.S. at 45, 46. (Internal citations omitted.)

---

[8] If this is a claim for breach of fiduciary duty, it fails because ERISA § 502(a)(2) does not authorize a participant or beneficiary to bring a private right of action for damages to redress a breach of fiduciary duty.
[9] The causes of action in the Complaint are not delineated and, thus, it is unclear what causes of action he is suing under.

In *Woods v. Berry, Fowles & Co.*, No. 01-CV-37-B-C, 2001 U.S. Dist. LEXIS 21032 (D. Me. Dec. 14, 2001),[10] a widow sought a death benefit under life insurance allegedly promised to her deceased husband by the company he worked for. The court found that a state law cause of action would be preempted by ERISA if two conditions exist: (1) the plan at issue is an employee benefit plan, and (2) the cause of action relates to an employee benefit plan. Id. at *22. The court noted that the Supreme Court has held that where a state law cause of action provides an "alternative enforcement mechanism" to ERISA's enforcement regime, the action is "related to" an ERISA plan and, therefore, is preempted. *Id.* at *35. Because this was the case, plaintiff's claims were denied. Similarly, in *Spalding v. Reliance Standard Life, Ins. Co.*, 835 F.Supp. 23 (D. Mass. 1993), plaintiff brought a lawsuit alleging estoppel, breach of good faith and fair dealing, negligent misrepresentation, and violations of M.G.L.c. 176D, §§ 2, 3. The court found that the common law tort claims for estoppel, breach of good faith, and negligent misrepresentation were preempted. *Id.* at 30. The claims related to a dispute regarding the death benefits and a miscommunication between individuals at the insurance company funding the plan and, as such, directly affected and concerned the administration of death benefits under the plan. The miscommunication was essential to her cause of action and intimately related to the ERISA plan. *Id.* at 29. The state law claim closely related to the plan itself because the alleged misrepresentation involved an alleged nonpayment of death benefits and misunderstanding concerning coverage for death benefits. The court found that, while not limitless, ERISA preemption is extensive. *Id.* at 30. The court, citing *Wickman v. Northwestern Mutual Life Ins. Co.*, 908 F.2d. 1077 (1st Cir. 1990), also held that "Insurance coverage which forms part of an ERISA plan is, for purposes of uniformity, properly regulated under ERISA." *Spalding v. Reliance Standard*, 835 F.Supp. at 29.

As the cases make clear, where state law claims "relate to" an ERISA plan, they will be preempted. Plaintiff's state law claims should be preempted and dismissed.

---

[10] As this case is unpublished, the decision is attached as Exhibit 21.

### 2. If These Claims Are Based on Federal Law, They Are Not Cognizable Because ERISA Has Only Six Enforcement Mechanisms

Mr. Heller may attempt to avoid preemption by arguing that his causes of action are brought, not under state law, but under federal common law. This characterization, however, does not avoid preemption. As one court has explained: "The device of federal common law does not authorize federal courts to smuggle state common law principles into ERISA without regard for the statutory text." *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1453 (4th Cir. 1992) (Wilkinson, J., concurring). The Supreme Court has made clear that

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute.

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). The Supreme Court explained that the "language and structure of [ERISA's civil enforcement provisions] support the conclusion that they were intended to provide exclusive remedies for ERISA-plan participants and beneficiaries asserting improper processing of benefit claims." *Pilot Life v. Dedeaux*, 481 U.S. at 42. ERISA is a "'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assoc.s*, 508 U.S. 248, 251 (1993), quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980); *see Great West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 209 (2002); *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 112 (1st Cir. 2002); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 226 (1st Cir. 1998).

"Interstitial lawmaking" is allowed only where ERISA does not provide a necessary cause of action. *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 265 n. 4 (1st Cir. 2001). ERISA's detailed provisions "set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures

against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 54. The Supreme Court has found that the Congressional policy choices reflected by the inclusion of certain remedies and the exclusion of others would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain other remedies. "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.*

Further, the Supreme Court has been "reluctant to tamper with [the] enforcement scheme" embodied in the statute by extending remedies not specifically authorized by its text. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. at 147. As the Supreme Court has made abundantly clear, they will not create federal common law where a cause of action and remedy already exist. Here, the essence of Mr. Heller's claims is that he is entitled to benefits under the terms of the Plan. However, Congress has specifically provided for such a remedy under ERISA § 502(a)(1)(B). Because of this, there is no need or occasion to fashion a remedy under federal common law.

### D. Mr. Heller's Estoppel Claim Must Fail

#### 1. ERISA Does Not Allow An Estoppel Claim Here

Mr. Heller asserts a claim based on a theory of equitable estoppel. In essence, Mr. Heller argues that because Ms. Heller had her premium deducted from her January 31st paycheck, Defendants are estopped from denying Mr. Heller's claim for benefits. (Complaint ¶ 26, 27.) It is still somewhat an open question whether the First Circuit will *ever* allow an equitable estoppel claim under ERISA.[11] *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 230 n. 9

---

[11] Other circuits have similarly questioned the appropriateness of an estoppel claim in the context of ERISA cases. The Tenth Circuit has left open "the possibility that estoppel might be applied in "egregious" or "extraordinary" cases, but suggested this requires, at a minimum, evidence of "lies, fraud or intent to deceive." *Kaferly v. U.S. West Techs.*, No. 98-1165, 1999 U.S. App. LEXIS 20904, at *28 (10th Cir. 1999). (As this case is unpublished, the decision is published as Exhibit 22). The court noted that, even in a case where plaintiff had received erroneous annual statements of benefits from the plan for a period of ten years, an estoppel claim was
*Footnote continued on next page*

(1st Cir. 1998). The First Circuit has noted "The Supreme Court has directed that federal courts may engage in interstitial rule-making when it is in the interests of justice." *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 57 (1st Cir. 2001), quoting *Bruch*, 489 U.S. at 110; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 56; *Kwatcher v. Mass. Serv. Employees Pension Fund*, 879 F.2d 957, 966 (1st Cir. 1989). However, the *Mauser* court also stated that "we should only act when there is, in fact, a gap in the structure of ERISA or in the existing federal common law relating to ERISA." *Id.* at 57. *See O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 265 n. 4 (1st Cir. 2001) (The First Circuit dismissed plaintiffs' federal common law claims of equitable estoppel, fraud, and negligent misrepresentation as duplicative of the ERISA claim, noting that "Although we have recognized our equitable powers to fashion a common law remedy through "interstitial lawmaking" where ERISA does not provide one this is not the appropriate case in which to do so.") (Internal citation omitted.) Because Mr. Heller's claim is virtually indistinguishable from his denial of benefits claim, there is already an adequate avenue of relief for him.

### 2. Even If ERISA Permitted An Estoppel Here, Mr. Heller Has Not Proven The Elements Necessary for Such a Claim

Were Mr. Heller's claim of estoppel valid, he still would be required to prove each of the following elements: (1) that there was a material misrepresentation; and (2) reasonable and detrimental reliance upon the representation. *See Law v. Ernst & Young*, 956 F.2d at 368 (1st Cir. 1992); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir. 1986). No evidence has been presented that Mr. Heller reasonably and detrimentally relied upon the alleged representation nor has he made any showing of "extraordinary circumstances" – both of which are required elements of an estoppel claim under ERISA. *See Smith v. Hartford Ins. Group*, 6 F.3d 131, 137 (3rd Cir. 1993).

---

properly denied because plaintiff had failed to show that defendant had acted egregiously. *Id.* at 1199, citing *Miller v. Coastal Corp.*, 978 F.2d 622 (10th Cir. 1992).

In *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998), *cert. denied*, 524 U.S. 923 (1998) (Citations omitted), the court found that,

> Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions. . . . First . . . estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

Similarly, in *Sippel v. Reliance Standard Life Ins. Co.*, 128 F.3d 1261 (8th Cir. 1997), a case with facts almost identical to the case at bar, the Eight Circuit refused to allow an estoppel claim. In the case, plaintiff's husband died. Defendant took money out of plaintiff's husband's last paycheck for the premium payment. Plaintiff claimed that defendant was estopped from denying coverage because the premium payment had been taken out of her husband's last paycheck. The Eight Circuit found that the policy clearly stated that, in order to continue coverage, a participant must choose within thirty-one days after leaving his employment to continue coverage. Because plaintiff's husband failed to seek continuation coverage, his wife was not entitled to any benefits. The court looked at the plain and unambiguous language of the policies and acknowledged that, while the decedent may have intended to apply for conversion, no application for conversion was ever made. *Id.* at 1263. The Eight Circuit noted, "The circumstances are unfortunate, but the language of the policies is clear." *Id.* The court also found that "In some circumstances receipt of a premium can work an estoppel against an insurance company, but we do not believe, at least in an ERISA case, that this can occur when the language of the policy is as clear as it is here." *Id.* Like in *Sippel*, the unambiguous terms of the plan make clear that Ms. Heller was not a participant in the plan at the time of her death. Thus, Mr. Heller's estoppel claim must fail.

## IV. CONCLUSION

In a case involving accidental death benefits, such as this one, where the covered individual left employment without electing to continue individual coverage, and where the policy language is clear about the effect of a failure to make a timely election, the benefits denial must be upheld. Moreover, Plaintiff's state law claims are preempted under ERISA. Finally, even if Plaintiff's equitable estoppel claim were valid, Mr. Heller has failed to state any of the elements necessary to win under an equitable estoppel cause of action. Thus, Mr. Heller has failed to present any cognizable claim for relief and Capgemini is entitled to summary judgment on the entire action.

Respectfully submitted,

CAPGEMINI U.S. LLC AND
CAP GEMINI ERNST & YOUNG
WELFARE PLAN

Defendants

By their attorney,

_____
Brian E. Lewis (BBO#643717)
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

Dated: March 4, 2005

(Tel) 617-345-9000

- and –

D. Barclay Edmundson (SBN 89481),
admitted *pro hac vice*
Orrick, Herrington & Sutcliffe, LLP
777 S. Figueroa Street
Los Angeles, CA 90017
(Tel) 213-629-2020

Emily Epstein, Esq. (SBN 215654),
admitted *pro hac vice*
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
(Tel) 415-773-5700

CAPGEMINI U.S. LLC AND
CAP GEMINI ERNST & YOUNG
WELFARE PLAN

## CERTIFICATE OF SERVICE

I, Brian E. Lewis, hereby certify that on this 4th day of March, 2005, I served a copy of foregoing *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* by overnight mail to the following counsel of record:

Joseph H. Skerry, III
237 Lexington Street
Woburn, MA  01801

Jennifer L. Markowski
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA  02110

Brian E. Lewis