UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| EDWARD HELLER,                                )<br>                                                            )<br>        Plaintiff,                                    )<br>vs.                                                        )          CIVIL ACTION<br>                                                            )          FILE NO. 04-11875 - WGY<br>CAP GEMINI ERNST & YOUNG WELFARE     )<br>PLAN (RE: ACCIDENTAL DEATH BENEFITS),   )<br>AMERICAN INTERNATIONAL LIFE ASSURANCE)<br>COMPANY OF NEW YORK, and CAPGEMINI      )<br>U.S. LLC                                                 )<br>                                                            )<br>        Defendants | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff OPPOSES the defendants' motions for summary judgment for the following reasons

I. THIS COURT SHOULD ALLOW PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENY THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

*A. Because The Defendants Have Failed to Satisfy Their Burden of Demonstrating That The AD&D Plan Gave Discretionary Authority to AIG, This Court Should Review AIG's Decision to Deny Benefits De Novo*

As explained by this Court in Radford Trust v. First Unum Life Insurance Company of America, 321 F.Supp.2d 226, 238-239 (D. Mass. 2004):

> Courts review a denial of benefits under an ERISA-governed benefits plan *de novo*, unless the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the question is whether the denial was arbitrary and capricious. See Firestone Tire & Rubber Co v. Bruch , 489 U.S. 101, 114-15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 826-27 (1st Cir. 1997). …

1

As such, the review by this Court is *de novo*, unless and until the defendants demonstrate that the AD&D Plan gave AIG discretionary authority. It is clear that the Plan Administrative Document gave CGE&Y, as Plan Administrator, discretionary authority.(AR p. CG00028-29)  However, because it is undisputed that the defendant AIG, not CGE&Y, made and communicated the decision denying benefits, AIG cannot rely on this Plan language. Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 583-584 (1st Cir. 1993) (where relevant plan documents gave plan fiduciaries discretionary authority, but plan administrator (who was not also a plan fiduciary) actually made the decision; *de novo,*, not arbitrary and capricious, standard of review appropriate). In its memorandum, CGE&Y notes the language of the SPD "echoes" the language of the Plan Administration Document. (CGE&Y Memo at p. 6) Whatever this may mean, it is not sufficient to give AIG discretionary authority. AIG asserts that CGE&Y delegated its discretionary authority to AIG. (AIG Memo at pp. 2, 6) Certainly, the Plan Administrative Document states that such delegation is possible, but no procedures for such delegation (as required by ERISA) were set forth in the Plan Administrative Document. Cf. Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 584 and n. 6 (1st Cir. 1993) ("ERISA allows named fiduciaries to delegate responsibilities… *through express procedures* provided in the plan." (emphasis added)) AIG points to certain language in the SPD as proof of the delegation of discretionary authority. (AIG Memo pp. 2, 6)  First, this appears to be impermissible bootstrapping, because there is no evidence of the procedures necessary for a proper delegation, nor any evidence that those procedures were followed in preparation of the SPD.  Second, as discussed below, the SPD was never properly "furnished" to Patricia Heller as required

by ERISA, so neither defendant should be permitted to rely upon the SPD as evidence of delegation in this case.

**1. Because CGE&Y Failed to Properly Furnish the Summary Plan Description to Patricia Heller as Required By ERISA, This Court Should Ignore the Summary Plan Description in Deciding This Case**

ERISA requires that participants be "furnished" a summary plan description (SPD). 29 U.S.C. §§1021-1024. There is no dispute that CGE&Y, through Fidelity, prepared an SPD for the AD&D Plan. (AR AIG 00084-00100) However, there is a dispute about whether CGE&Y properly "furnished" the SPD to Patricia Heller as required by ERISA. ERISA regulations distinguish between making information available to participants and furnishing information to participants. 29 C.F.R. §2510.104b-1(a) (disclosure takes three forms including furnishing material to participants at certain times, furnishing material upon participant request, and making material available for inspection by participants) Where ERISA requires that materials, including, but not limited to SPD's, be furnished to participants, the relevant ERISA regulations require administrators to "use measures reasonably calculated to ensure *actual receipt* of the material by plan participants…" (emphasis added) 29 C.F.R. §2510.104b-1(b)(1); Leyda v. AlliedSignal Inc. 322 F.3d 199, 202-203, 208-209 (2d Cir. 2003). CGE&Y does not contend that it furnished Patricia Heller with a written copy of the SPD. Rather, CGE&Y states that it made the SPD "available" to Patricia Heller electronically through its HR Portal and its Fidelity website.(AR p. CG00047, and CG000049) Although 29 C.F.R. §2510.104b-1(c) permits "disclosure through electronic media", it requires that:

> [t]he administrator take[] appropriate and necessary measures reasonably calculated to ensure that the system for furnishing documents—(A) Results in

3

> actual receipt of transmitted information (e.g. using return–receipt or notice of undelivered electronic mail features, conducting periodic reviews or surveys to confirm receipt of the transmitted information)

CGE&Y's "distribution" method appears to fail in two important respects: First, there is no evidence that CGE&Y transmitted the SPD to Patricia Heller. Rather, GCE&Y states that the SPD was (passively) made available on the HR Portal (or Fidelity website); both of which required Patricia Heller to take some action to review it. This passive method of "distribution" does not appear to comport with the requirements of 29 C.F.R. §2510.104b-1(b) and (c) requiring active transmission to the participant. Compare 29 C.F.R. §2510.104b-1(b)- ("in no case is it acceptable to merely place copies of the material in a location frequented by participants."); Sedlack v. Braswell Services Group Inc., 134 F.3d 219, 227 (4th Cir. 1998) (where ERISA (§1024(b)(4)) required that plan administrator furnish material upon request of participant, simply making material available for copying does not satisfy ERISA duty to furnish). Second, CGE&Y has failed to provide any evidence of actual receipt of the SPD by Patricia Heller (or other any other participant) (e.g. return –receipt etc.). Leyda v. AlliedSignal Inc. 322 F.3d 199, 202-203, 208-209 (2d Cir 2003) (where employer gave notice of meeting to each employee (where employer distributed SPD's), held not sufficient to comply with requirement that steps be designed to ensure actual receipt of the SPD, because, among other things, employees might have been too busy to attend meetings). Because CGE&Y failed to take steps ensure that Patricia Heller actually received a copy of the SPD, this Court should ignore the SPD in analyzing plaintiff's entitlement to benefits in this case.

In the absence of the SPD, there is no basis for AIG's claim to discretionary authority. Therefore this Court's review should AIG's decision to deny benefits *de novo*.

*B. The Defendants Have Failed to Demonstrate that Patricia Heller's Coverage Terminated on January 24, 2003*

Although it is not clear from the defendants' Memoranda (in particular in AIG's Memorandum at pp. 3, and 8 which quotes the language of the SPD, but leads the reader to believe that it is quoting the Group Policy), comparison of the SPD and Group Policy reveals a conflict as to the date coverage terminates. The relevant portion of the Group Policy provides that coverage ceases "the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application" (AR AIG00060); while the SPD states that coverage terminates when "You are no longer employed by a participating employer." (AR p. AIG00092) Because the SPD expressly states that in the event of a conflict, the terms of the Group Policy control, (AR p. AIG00085), (and, as discussed above, CGE&Y never properly "furnished" the SPD to Patricia Heller in any event), this Court should ignore the language of the SPD in deciding these motions.

Examination of the language of the Group Policy reveals an ambiguity as to the date coverage terminated. The language of the Group Policy is not self explanatory- it requires reference to the Master Application (coverage ends "(4) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application" (AR AIG00060)). The Master Application describes Class 1 as –"All active full-time employees working an average of 30 hours per week." (AR p. AIG00054) Neither the word "active", nor the manner for determining when an employee is working "30 hours per week" is defined in the either Master Application or Group Policy. The unique facts of this case, including but not limited to the fact that Patricia Heller left CGE&Y on Friday January 24, 2003

5

after working a full week, and died in a taxi cab accident the following Wednesday, and CGE&Y's standard payroll practice of deducting the full premiums from final paychecks of departing employees, (in Patricia Heller's case for both the weeks ending January 24, and 31), create an ambiguity as to whether Patricia Heller worked an average of 30 hours per week during January 2003. Cf. Tester v. Reliance Standard Life Ins. Co., 228 F.3d 372 (4th Cir. 2000) (where insurer claimed participant ceased to be eligible member of class on her last day at work, but ambiguity existed concerning active employee requirement, coverage found); Canada Life Assur. Co. v. Lebowitz, 185 F.3d 231 (4th Cur. 1999) (where employer/administrator deducted premiums for participant, conclusive evidence that employer considered employee covered); Lichtenberger v. Superior Oil, 392 N.E.2d 430, 73 Ill.App.3d 805 (Ill. 1979) (where insurer contended coverage terminated on last day employee actually at work, but policy, read as a whole, combined with fact that premiums had been paid, coverage found through later date). Because ambiguities are construed against the drafter, Hughes v. Boston Mutual Life Ins. Co. 26 F.3d 264, 268 (1st Cir. 1994); Radford Trust v. First Unum Life Insurance Company of America, 321 F.Supp.2d 226, 243 (D. Mass. 2004), the defendants have not conclusively established that Patricia Heller's coverage terminated on January 24, 2003.

*C. Even Assuming Deferential Review, The Plaintiff Has Demonstrated That The Defendants Acted With Bias, in Bad Faith, and Not In Accordance With the Plan, Such that the Denial Decision Was Unreasonable*

As demonstrated in Plaintiff's Memorandum in Support of his Motion for Summary Judgment (at pp. 14-20), the undisputed facts establish that even assuming a deferential standard of review, the defendants' decision was unreasonable as matter of law due, among other things, to their repeated failure to address Mr. Heller's premium payment

6

claim in good faith, and their repeated misleading statements concerning the period through which premiums had been paid.[1]

### D. In Any Event, The Plaintiff Has Demonstrated That The Defendants, By Retaining Unearned Premium, Waived Their Right to Deny Benefits

As demonstrated in Plaintiff's Memorandum in Support of his Motion for Summary Judgment, this Court has the authority to fashion a remedy under the federal common law of ERISA based on waiver principles. Furthermore, the facts of this case justify a finding that the defendants waived their right to claim that Patricia Heller's coverage terminated on January 24, 2003 because they should not be permitted to assert that Patricia Heller's coverage terminated on January 24, 2003, and at the same time refuse to refund the unearned premium for the period January 25, 2003 to January 31, 2003. (See Plaintiff's Memo at pp. 2-14)

### CONCLUSION

Based on the foregoing points and authorities, (and those contained in Plaintiff's Memorandum in Support of His Motion for Summary Judgment) the plaintiff Edward Heller respectfully requests that this Court **DENY** the defendants' Motions for Summary Judgment and **ALLOW** plaintiff's Motion for Summary Judgment.

EDWARD HELLER
By his attorney,

/s/ JHSkerry, III

Joseph H. Skerry, III
BBO# 544124
237 Lexington Street

---

[1] Plaintiff notes that, in addition to the facts set forth in his Rule 56.1 Statement, in its motion papers CGE&Y introduced a new Exhibit (#7) which, as discussed in Plaintiff's Response to Capgemini's Summary Judgment Facts, (¶13) discloses that CGE&Y high level employees attempted to mislead Mr. Heller concerning this issue.

                                      Woburn, Massachusetts 01801
                                      781-938-1301
                                      781-938-1344
                                      jayskerry@rcn.com

## REQUEST FOR ORAL ARGUMENT

The plaintiff hereby respectfully requests a hearing on all motions related to the parties' cross motions for summary judgment.

CERTIFICATE OF SERVICE

I Joseph H. Skerry, III hereby certify that I served the forgoing by mail on counsel of record.

March 25, 2005                                  /s/ JHSkerry, III
                                                      Joseph H. Skerry, III