# Exhibit 11

# LAW OFFICE OF
# JOSEPH H. SKERRY, III, ESQ.

237 Lexington Street
Woburn, Massachusetts 01801
(Tele) 781-938-1301
(Fax) 781-938-1344
(E mail) jayskerry@rcn.com

February 19, 2004

RECEIVED

FEB 2 3 2004

A & H Claims - AIGCS

Jill Y. Vivian
Sr. AD&D Claims Examiner
AIG Claims Service Inc.
A&H Claims Department
P.O. Box 15701
Wilmington, DE 19850-5701

Re: Patricia Heller
Plan: Cap Gemini Ernst & Young US LLC employee Accidental Death and
Dismemberment plan (The Plan)
Policy: Number PAI 8050643
Policy Holder: Cap Gemini Ernst & Young US LLC (CGE&Y)
Date of Death: January 29, 2003

RECEIVED

FEB 2 3 2004

AD&D UNIT

Dear Ms. Vivian:

Please be advised that the undersigned represents Edward Heller, the named beneficiary of the above-referenced accidental death coverage.

Mr. Heller has asked me to investigate the Plan's December 11, 2003 decision to deny him benefits under the above-referenced AD&D coverage.

In connection with my review, kindly provide me with AIG's claim file on this matter, including but not limited to the following information: [I would be happy to reimburse you for any reasonable copying charges]
1) the Accidental Death and Dismemberment Plan Document in effect on January 29, 2003;
2) any group insurance contract or policy purchased by the Plan or CGE&Y to fund the benefits under the Accidental Death and Dismemberment Plan in effect on January 29, 2003;
3) Confirm that the Summary Plan Description for the AD&D Plan (SPD) provided by you to Mr. Heller by fax on June 9, 2003, was the applicable Summary Plan Description;
4) the CGE&Y Welfare Plan Administration Document mentioned in the SPD provided to Mr. Heller in June of 2003;

AIG 00013

5) all evidence of the manner in which the above-referenced Summary Plan Description was distributed to Patricia prior to her departure from CGE&Y;
6) copies of the additional information provided by CGE&Y dated April 29, 2003; May 12, 2003 and May 13, 2003 as referenced in your June 23, 2003 letter to Mr. Heller;
7) A copy of the legal opinion referenced in your October 7, 2003 letter to Mr. Heller;
8) A description of the manner in which premiums are collected by CGE&Y for this 100% employee paid benefit and transmitted to AIG;
9) confirmation that on January 31, 2003 (two days after her untimely death), CGE&Y issued Pat's last paycheck and CGE&Y deducted the full $12.00 AD&D premium from Pat's last paycheck as set forth in CGE&Y's August 13, 2003 letter (provided to you in connection with Mr. Heller's August 20, 2003 appeal) and in CGE&Y's April 28, 2003 e mail to you ;
10) an explanation of why neither the June 23, 2003 nor the December 11, 2003 AIG denials addressed the issue of charging Pat for AD&D coverage that was not provided during the period January 25, 2003 to January 31, 2003 as specifically raised by Mr. Heller's August 20, 2003 appeal;
11) identify the members of the ERISA Appeals Committee mentioned in your December 11, 2003 letter;
12) provide copies of all materials provided to the ERISA Appeals Committee and all minutes of any meetings of the Committee about this claim;
13) All Materials authorizing the ERISA Appeals Committee of AIG to act on Mr. Heller's Appeal.

I have enclosed an AUTHORIZATION executed by Mr. Heller permitting you to provide this information to me.

Very truly yours,

Joseph H. Skerry, III
cc. Edward Heller

AIG 00014

# Exhibit 12



AIG Claim Services, Inc.®
*A&H Claims Department*
P. O. Box 15701
Wilmington, DE 19850-5701
800.551.0824

On behalf of:
*American International Life*
*Assurance Company of New York*

March 18, 2004

Joseph H. Skerry, III, Esq.
237 Lexington Street
Woburn, MA 01801

RE:                Patricia Heller
Policy Number:     PAI 8060643
Policyholder:      Cap Gemini Ernst & Young US LLC
Date of Accident:  January 29, 2003

Dear Mr. Skerry:

We are writing in response to your letter dated February 19, 2004 and received on February 23, 2004. We understand that you are aware that the final administrative decision regarding this claim was issued on December 11, 2003 and that you have the right to file a lawsuit under ERISA section 502 (a). We have enclosed a copy of our entire administrative record for this claim. Additionally, we will address all thirteen (13) items outlined in your letter, in the order in which you raised them.

1) Enclosed is a copy of the Accidental Death and Dismemberment Policy in effect on January 29, 2003.
2) We have no knowledge of any other group insurance contracts that may exist or have been purchased by the Plan. However, the Plan is fully insured by the enclosed Policy issued to the Plan by American International Life Assurance Company of New York, ("AILife").
3) The Summary Plan Description ("SPD") that was faxed to Edward Heller on June 9, 2003 was the SPD that was in effect at the time that the accident occurred, as verified by the Policyholder.
4) To the extent that this is not addressed in the administrative record, please obtain this information from the Plan Administrator. Instructions appear in the SPD. The following is the name and address of the Plan Administrator: Cap Gemini Ernst & Young U.S. LLC, 1280 Wall Street West, Lyndhurst, NJ 07071.
5) To the extent that this is not addressed in the administrative record, please obtain this information from the Plan Administrator.
6) These documents are included in the administrative record enclosed.
7) A copy of the legal opinion is included in the administrative record enclosed.
8) To the extent that this is not addressed in the administrative record, please obtain this information from the Plan Administrator.
9) To the extent that this is not addressed in the administrative record, please obtain this information from the Plan Administrator.

A Member Company of
American International Group, Inc

Page 2. Mr. Skerry

10) Please refer to the administrative record. The basis for our denial is fully explained in our letters.
11) The appeal procedures applicable to this claim are set forth in the documents contained in the administrative record. The Appeals Committee is selected and maintained by us, as the Claims Administrator with discretionary authority. It is comprised of individuals with pertinent knowledge and experience. No person involved in the original claim decision may be a member of the committee. ERISA law does not require further disclosure to our knowledge.
12) The ERISA Appeals Committee reviewed only the entire administrative record, a copy of which is attached. No minutes are kept.
13) See number 11.

If you have any questions, do not hesitate to contact our office at the above telephone number.

American International Life Assurance Company of New York reserves all rights and defenses concerning this claim for plan benefits. Nothing in this letter or any other communication that you have received or will receive from us should be interpreted as waiving or prejudicing any of the rights and defenses of ourselves or the plan, which we specifically reserve.

Sincerely,


Jill Y. Vivian
Sr. AD&D Claims Examiner
302.661.8920

cc:  Cap Gemini Ernst & Young U.S. LLC

AIG 00011

# Exhibit 13

# LAW OFFICE OF
# JOSEPH H. SKERRY, III, ESQ.

237 Lexington Street
Woburn, Massachusetts 01801
(Tele) 781-938-1301
(Fax) 781-938-1344
(E mail) jayskerry@rcn.com

April 2, 2004

Plan Administrator
Cap Gemini Ernst & Yong U.S. LLC
1280 Wall Street West
Lyndhurst, N.J. 07071

Re: Patricia Heller
Plan: Cap Gemini Ernst & Young US LLC Welfare Benefit Plan Administration
Document – re Employee Accidental Death and Dismemberment (The Plan)
AIG Group Policy: Number PAI 8050643
Plan Administrator: Cap Gemini Ernst & Young US LLC (CGE&Y)
Date of Death: January 29, 2003

Dear Sir/Madam:

    Please be advised that the undersigned represents Edward Heller, the named beneficiary of the above-referenced accidental death coverage on your former employee Patricia Heller.

    As you may be aware, by letter dated December 11, 2003 (copy enclosed) AIG denied Mr. Heller's appeal of his claim for benefits under the above-referenced AD&D coverage. He has asked me to investigate the appropriateness of this decision.

    In connection with my review, I wrote to AIG (see copy of letter dated February 19, 2004 enclosed). AIG responded by letter dated March 18, 2004 (copy also enclosed- without attachments). In response to several of my inquiries, AIG directed me to you as the Plan Administrator. Kindly provide me with the following:

4.) the CGE&Y Welfare Plan Administration Document mentioned on pages 2 and 12 of the Summary Plan Description provided to Mr. Heller in June of 2003;
5.) all evidence of the manner in which the [any] Summary Plan Description was distributed to Patricia after the July 1, 2001 effective date of the AIG Group Policy and prior to her January 2003 departure from CGE&Y;
8.) a description of the manner in which premiums are collected by CGE&Y for this 100% employee paid benefit and transmitted to AIG [along with, I assume, supporting documentation of such payments];
9.) confirmation that on January 31, 2003 (two days after her untimely death), CGE&Y issued Pat's last paycheck and CGE&Y deducted the full $12.00 AD&D premium from Pat's last paycheck as set forth in CGE&Y's August 13, 2003

letter (provided to AIG in connection with Mr. Heller's August 20, 2003 appeal) and in CGE&Y's April 28, 2003 e mail to AIG;

In addition, I ask that you provide the following:
a. all evidence of the manner in which the applicable Summary Plan Description, which I understand to be form "AD&D SPD 07012002 rev 092002" effective July 1, 2002, was distributed to Patricia after the July 1, 2002 effective date of the SPD and prior to her January 2003 departure from CGE&Y;
b. explain why the Summary Plan Description (SPD) (form "AD&D SPD 07012002 rev 092002") mentions "Fidelity" on the cover/first page. What is Fidelity's involvement with the CGE&Y Plan? Or the AD&D Plan?
c. all communications (other than via SPD) in which CGE&Y informed Patricia of her conversion rights and the process for obtaining such coverage. For example, the General Provisions of your Group Policy with AIG says that it will provide CGE&Y with "certificates of insurance" for delivery to each Insured. Was this done? Was such a certificate provided to Patricia?;
d. an explanation of the reference by Mirick O'Connell to material being available the HR portal at E&Y (see page 2);
e. an explanation of CGE&Y's ordinary practice to provide Continuation of Benefit Summaries to departing personnel as referenced on page 2 of Mirick O'Connell's October 3, 2003 Opinion letter to AIG (copy enclosed);
f. confirmation that Patricia was NOT provided with such a Continuation of Benefits VP Summary Sheet as set forth on page 2 of Mirick O'Connell's October 3, 2003 Opinion letter to AIG;
g. an explanation of why Patricia was NOT provided with a Continuation of Benefits VP Summary as set forth on page 2 of Mirick O'Connell's October 3, 2003 Opinion letter;
h. all facts supporting the assertion on page 2 of the Mirick O'Connell October 3, 2003 Opinion letter that "Mrs. Heller was told by Ernst & Young that premiums for this coverage were paid through her last day of work and her coverage under this Policy ended on her last day worked."
i. An explanation of why CGE&Y deducted the full (rather than pro rata) bi-monthly premium on January 31, 2003, when CGE&Y knew that Patricia's last day of work was January 24, 2003;
j. The date CGE&Y was first informed of Patricia's untimely death and the manner of such notification.
k. An explanation of the apparent inconsistency on pages 13-14 of the SPD as to review of denied claims. By letter dated June 23, 2003 AIG denied Mr. Heller's claim for benefits. In accordance with the instructions contained in the June 23, 2003 letter, Mr. Heller sought an appeal of his denied claim, by letter dated August 20, 2003, which AIG reviewed and denied (again) by letter dated December 11, 2003. The December 11, 2003 letter from AIG offered no further review or appeal rights. In particular the letter said nothing about the (apparent) right of "review and reconsideration" by CGE&Y as Plan Administrator. Is it the Plan's position that Mr. Heller is to submit the December 11, 2003 decision

by AIG for "review and reconsideration" before commencing the ERISA suit mentioned by AIG in its March 18, 2004 letter?

I have enclosed a copy of an AUTHORIZATION executed by Mr. Heller permitting you to provide this information to me.

Very truly yours,

Joseph H. Skelly, III

cc. Edward Heller

CG 00045

## AUTHORIZATION

TO WHOM IT MAY CONCERN: Please be advised that I have retained Attorney Joseph H. Skerry, III of 237 Lexington Street, Woburn, Mass. 01801 to review AIG's denial of AD&D benefits to me. I hereby authorize any person or entity dealing with Attorney Skerry to provide him with any and all requested information as if I personally made the request.

February 18, 2004

Edward Heller

CG 00046

# Exhibit 14


CONSULTING.TECHNOLOGY.OUTSOURCING

Capgemini U.S. LLC
5 Times Square New York, NY 10036-6527
Tel: (917) 934-8000 · Fax: (917) 934-8001

May 28, 2004

<u>Via Federal Express</u>

Joseph H. Skerry, III, Esq.
237 Lexington Street
Woburn, MA 01801

Re:   Patricia Heller
      <u>Cap Gemini Ernst & Young U.S. Employee Accidental Death & Dismemberment (Plan)</u>

Dear Mr. Skerry:

Following up from my letter dated May 7, 2004, we are responding to your letter dated April 2, 2004 requesting information with respect to the Plan. Please note that the Company name changed effective April 15, 2004 and the new company name is Capgemini U.S. LLC.

In response to item 4.) of your letter, please find enclosed a copy of the Cap Gemini Ernst & Young Welfare Benefit Plan Administration Document.

In response to items 5.), and a. through d. of your letter, employees are notified each annual enrollment during a two week period of the benefits available to them and are referred to the Company's HR portal, as well as the Fidelity website, and both contain the Plan's Summary Plan Description. During annual enrollment, reminder voicemails are sent to employees referring them to the resources available to them regarding their benefits. In addition, Fidelity's website and call-in center for Company benefits is available for annual enrollment and throughout the year. This is the current procedure, and was the procedure in place during 2002 and 2003. With respect to the latter part of item c. of your letter, please direct your inquiry to AIG.

In response to items 8.), 9.), h. and i. of your letter, we confirm that premiums were collected through payroll deductions, and that the full $12.00 premium, representing the pay period from January 16, 2003 through January 31, 2003 was deducted from Mrs. Heller's paycheck, dated January 31, 2003. It is standard Company payroll practice to deduct the full premium from the last paycheck when an employee separates from the Company.



In response to items e., f. and g. of your letter, during 2002 and early 2003, continuation of benefit summaries were included on the Company's HR Portal, which Mrs. Heller could have accessed. Mrs. Heller was not mailed a Continuation of Benefit VP Summary.

In response to item h. of your letter, please refer to the Policy, the Summary Plan Description and the letter from AIG dated December 11, 2003, which describe when coverage terminates under the Plan.

In response to item j. of your letter, our internal records indicate that the Company was informed of Mrs. Heller's death on January 29, 2003. We believe that the method of such notification was by telephone.

In response to item k. of your letter, consistent with the December 11, 2003 letter from AIG, there is no further review and consideration.

We have provided you with all the Plan documentation you have requested and have provided responses to all of your questions. With respect to any other inquiries you may have, please refer back to the AIG letters and accompanying enclosures dated March 18, 2004, December 11, 2003 and June 23, 2003. Please direct all future inquiries concerning this claim to AIG.

Sincerely,

*Josephine Hughes*

Josephine Hughes
Director of Benefits

Encl.

cc: AIG

# Exhibit 15


ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CA 94105-2669

tel 415-773-5700
fax 415-773-5759

WWW.ORRICK.COM

December 20, 2004

James Baker
(415) 773-5975
jbaker@orrick.com

*VIA E-MAIL*

Joseph H. Skerry, III, Esq.
237 Lexington Street
Woburn, MA 01801

Re: Corrected May 28, 2004 Letter re Patricia Heller

Dear Mr. Skerry:

We have recently discovered new information about Patricia Heller's claim. We write to correct Capgemini's May 28, 2004 letter. We apologize for any inconvenience this may have caused you.

In item 5.) of your April 2, 2004 letter you ask for evidence that shows Mrs. Heller was distributed a summary plan description.[1] Please be advised we have learned Capgemini employees are notified for two weeks during the annual enrollment period that summary plan descriptions of the employee benefits available to them are available on the Company's HR portal, and are available on the Fidelity website. Both Capgemini's HR Portal as well as Fidelity's website contain complete downloadable copies of the Plan's Summary Plan Description. During each annual enrollment, reminder voicemails are sent to plan participants referring them to the HR portal and Fidelity website for additional employee benefit plan information. Fidelity's website and call-in center for Capgemini employee benefits is available not only for annual enrollment, it is available 365 days a year. This is the current procedure for providing participants with access to summary plan descriptions, and it was the procedure in place during 2002 and 2003. Please also be advised that

---

[1] Item "five" asks for "all evidence of the manner in which the [any] Summary Plan Description was distributed to Patricia after the July 1, 2001 effective date of the AIG Group Policy and prior to her January 2003 departure from CGE&Y."
Item "a" asks for "all evidence of the manner in which the applicable Summary Plan Description, which I understood to be form "AD&D SPD 07012002 rev 090202" effective date of the SPD and prior to her January 2003 departure from CGE&Y."
Item "b" asks Capgemini to "explain why the Summary Plan Description (SPD) (form "AD&D SPD 07012002 rev 092002") mentions "Fidelity" on the cover/first page. What is Fidelity's involvement with the CGE&Y Plan? Or the AD&D Plan?"
Item "c" asks for "all communications (other than via SPD) in which CGE&Y informed Patricia of her conversion rights and the process for obtaining such coverage. For example, the General Provisions of your Group Policy with AIG says that it will provide CGE&Y with "certificates of insurance" for delivery to each Insured. Was this done? Was such a certificate provided to Patricia?"
Item "d" asks for "an explanation of the reference by Mirick O'Connell to material being available by the HR Portal at E&Y (see page 2)."

DOCSSF1:767386.2


ORRICK

Joseph H. Skerry, III, Esq.
December 20, 2004
Page 2

Mrs. Heller was provided with a Continuation of VP Benefits Summary Sheet at her exit interview on January 24, 2003. See your item c. The referenced Summary Sheet contained a written disclosure concerning Mrs. Heller's conversion rights. This same information was also available on the Company's HR portal. With respect to whether or not AIG provided certificates of insurance to Mrs. Heller, please direct your inquiry to AIG.

In response to items e., f. and g. of your letter[2], during 2002 and early 2003, continuation of benefit summaries were included on the Company's HR Portal, which Mrs. Heller could have accessed. While Mrs. Heller was not mailed a Continuation of Benefit VP Summary Sheet, we have learned she received one at her exit interview on January 24, 2003. Capgemini's standard HR practice is to provide each departing Vice President with a copy of the Continuation of Benefit VP Summary Sheet.

Should you have any questions, feel free to contact me at 415.773.5975.

Very truly yours,

James Baker

JB/ee3

cc: Jennifer Markowski
    Robert Gill
    Gerry Silver

---

[2] Item "e" asks for "an explanation of CGE&Y's ordinary practice to provide Continuation of Benefit Summaries to departing personnel as referenced on page 2 of Mirick O'Connell's October 3, 2003 Opinion letter to AIG (copy enclosed)."
Item "f" asks for "confirmation that Patricia was NOT provided with such a Continuation of Benefit VP Summary Sheet as set forth on page 2 of Mirick O'Connell's October 3, 2003 Opinion Letter to AIG."
Item "g" asks for "an explanation of why Patricia was NOT provided with a Continuation of Benefit VP Summary as set forth on page 2 of Mirick O'Connell's October 3, 2003 Opinion Letter."

DOCSSF1:787386.2

# Exhibit 16

American International Companies File Activity Sheet

| Insured Patricia Heller | Policyholder Cap Gemini Ernst & Young PAI 8060643 | Claim Number |
|---|---|---|

| Date | |
|---|---|
| 6/20/03 | Claim review. |
| *Pg 1 of 2* | Claim form – Policyholder:<br>– Hired 3/25/91<br>– VP<br>– LDW 1/24/03 |
| | Death certificate:<br>– Date of death: 1/29/03<br>– Age 51<br>– Immediate cause: blunt force trauma of the head and torso<br>– Autopsy<br>– Manner: accident<br>– Unrestrained passenger of vehicle which struck a tree<br>– 1/29/03 |
| | Enrolled $1,000,000 employee and spouse<br>Spouse named beneficiary |
| | Policyholder called prior to claim submission to advise that they had an employee that terminated 1/24/03 and was killed in a MVA on 1/29/03. |
| | Reuben Warner confirmed no conversion |
| | E-mail from Policyholder:<br>– Her last day worked was 1/24/03. Her reason for separation was voluntary resignation.<br>– Payroll deductions: $12.00 for 1/1 – 1/15/03; $12.00 for 1/16 – last day worked. There was no rebate of any premium, although the coverage ended on last date worked, which was 1/24/03. This is standard payroll practice.<br>– No record of her making an inquiry about converting her AD&D policy. |
| | Policy:<br>– Class I: All active full-time employees working an average of 30 hours per week, …<br>– Continuation of Eligibility. … an Insured who ceases to be a member of any eligible class of persons as described above may still be regarded as in an eligible class of persons as follows: (1) if the Insured is on temporary lay-off or leave of absence (other than an authorized family or medical leave), for the full period of the lay-off or leave, but not for more than three months in a row; or (2) if the Insured is absent from work due to an authorized family or medical leave, for the full period of the leave, but not for more than three months in a row unless a longer period is agreed to by the Company and the Policyholder.<br>– Termination Date. An Insured's coverage under this Policy ends on the earliest of: (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; (3) the date the Insured requests, in writing, that his or her coverage be terminated; (4) the date the Insured ceases to be a member of any eligible class(es) of persons described in the Classification of Eligible Persons section of the Master Application. |
| | SPD:<br>– Eligible Employees. You are eligible to participate in the Plan if you are: * An active, permanent, full-time employee;<br>– Termination of Coverage. Coverage under the AD&D Plan will cease on the day in which one of the following occurs: * You are no longer employed by a participating employer; |

AIG 00005