# Exhibit 17



American International Life Assurance
Company of New York
Home Office: 70 Pine Street
New York, New York 10270
(212) 770-7000
(Herein called the Company)

Policyholder: Cap Gemini Ernst & Young US LLC
Policy Number: PAI 8060643

## MASTER APPLICATION FOR
## GROUP ACCIDENT INSURANCE POLICY

Application is hereby made for a plan of accident insurance based on the following statements and representations:

1. **Identification of Policyholder:**

   Name of Policyholder: Cap Gemini Ernst & Young US LLC
   Address of Policyholder: 1114 Avenue of the Americas, 29th Floor, New York, NY 10036
   Type of Business or Purpose of Organization: Law Firm
   Name(s) of Affiliates(s) or Subsidiary(ies) to be covered: None
   Policy Number: PAI 8060643

2. **Classification of Eligible Persons:**

   | Class | Description of Class |
   |---|---|
   | 1. | All active full-time employees working an average of 30 hours per week, all active part-time employees working an average of 20 hours per week and all retirees of Cap Gemini Ernst & Young US LLC. |
   | 2. | All Eligible Spouse of Class I Insureds. |
   | 3. | All Eligible Dependent Children of Class 1 Insureds. |
   | 4. | All Eligible Spouse and Eligible Dependent Children of Class I Insureds. |

   **Eligible Spouse** - as used above, means the Insured's spouse (to whom the Insured's marriage is recognized under state law) provided that the Insured is not legally separated or a domestic partner as defined below.

   **Eligible Dependent Children** - as used above, means the Insured's unmarried children under age 25 who are dependent upon the Insured for support; the Insured's unmarried children who become permanently disabled prior to age 25 (Insured must provide proof that the dependent children are disabled within 31 days after the reach of age 25); or any other unmarried person who has not yet reached age 25 and, receives more than half his or her support from the Insured; has the Insured's home as his or her principal residence; and for whom the Insured is legal guardian under state law.

The Insured's children include their own, their spouse's or domestic partner's biological and adopted children (including children placed for adoption). The Insured can also enroll a child who meets the definition of a dependent and for whom the Insured is required to provide health coverage as a result of a Qualified Medical Child Support Order issued on or after the Insured's date of eligibility.

At anytime during the plan year, the Plan Administrator may require the Insured to provide documentation to support a dependent's eligibility status.

**Continuation of Eligibility.** If premium payments are continued on a basis that precludes individual selection, an Insured who ceases to be a member of any eligible class of persons as described above may still be regarded as in an eligible class of persons as follows: (1) if the Insured is on temporary lay-off or leave of absence (other than an authorized family or medical leave), for the full period of the lay-off or leave, but not for more than three months in a row; or (2) if the Insured is absent from work due to an authorized family or medical leave, for the full period of the leave, but not for more than three months in a row unless a longer period is agreed to by the Company and the Policyholder.

3. **Principal Sum:**

| Class | Basic Amount | Voluntary Amount |
|---|---|---|
| 1 | N/A | Not less than $10,000 nor more than $1,000,000 in increments of $10,000. |
| 2 | N/A | (See the following description) |
| 3 | N/A | (See the following description) |
| 4 | N/A | (See the following description) |

Family Coverage bundled:

**For an Insured Dependent Child.** If an Insured Dependent Child suffers a loss for which a benefit is payable under the Policy and there is an Insured Spouse on the date of the accident causing the loss, the Insured Dependent Child's Principal Sum is the lesser of $100,000 or 15% of the Insured's Principal Sum on the date of the accident causing the loss. If there is no Insured Spouse on the date of the accident causing the loss, the Insured Dependent Child's Principal Sum is the lesser of $100,000 or 20% of the Insured's Principal Sum on the date of the accident causing the loss.

**For an Insured Spouse.** If an Insured Spouse suffers a loss for which a benefit is payable under the Policy and there is an Insured Dependent Child on the date of the accident causing the loss, the Insured Spouse's Principal Sum is 50% of the Insured's Principal Sum to a maximum of $600,000 on the date of the accident causing the loss. If there is no Insured Dependent Child on the date of the accident causing the loss, the Insured Spouse's Principal Sum is 60% of the Insured's Principal Sum to a maximum of $600,000 on the date of the accident causing the loss.

In the event that a person is covered under the Policy as an Insured and as an Insured Dependent, the combined Principal Sum on that person may not exceed $1,000,000.

"Annual Salary" means the Insured's current base pay plus a 12-month average of any bonuses and commission as determined as of December 31st of each year.

4. **Policy Benefits and Coverages:**

Check one and only one:

_____ Accidental Death Benefit Only
\_\_X\_\_ Both Accidental Death and Accidental Dismemberment, Paralysis and Coma Benefits

The following Riders are attached to and made part of the Policy as of the Policy Effective Date. Each Rider is subject to all provisions, limitations and exclusions of the Policy that are not specifically modified by the Rider.

CLASS(ES)   1 and 2

| FORM NO. | DESCRIPTION |
| --- | --- |
| C11970 | Common Disaster Benefit |
| C11971 | Conversion Privilege |
| C11972NY | Day Care Benefit |
| C11975 | Family Coverage |
| C11986 | Permanent Total Disability Benefit |
| C11987NY | Rehabilitation Benefit |
| C11991 | Seat Belt and Air Bag Benefit |
| C11992NY | Tuition and Group Medical/Dental Premium Continuation Reimbursement] Benefit |
| C11689 | Waiver of Premium Benefit |

5. **Premiums:**
It is hereby agreed and understood that the premium rate per $ 1,000 of Principal Sum is as follows for each class described above:

| Class | | Premium |
| --- | --- | --- |
| 1 | Employee Only Coverage | $.015 per month |
| 1+2 | Employee and Spouse Coverage | $.024 per month |
| 1+3 | Employee and Dependent Child(ren) Coverage | $.024 per month |
| 1+4 | Family Coverage | $.024 per month |

Such premiums are due and payable in the following manner: <u>Monthly in arrears</u>

C11962NY (4/02 revised)                            3                                                    CAP

6. **Coverage Effective Date:**

Subject to the Policy provisions regarding the effective date of coverage for individuals, insurance will become effective as to each eligible person for whom enrollment has been received by the Policyholder, if applicable, and for whom premium has been paid on the following date: July 1, 2001 or the first day of the month coincident with or next following date of employment.

A change in coverage due to a change in the eligible person's class or Annual Salary or election of Principal Sum amount will become effective on the latest of the following dates: (1) if individual enrollment for the change is required, the date the written enrollment form requesting the change is received by the Policyholder; (2) if the change requires a change in premium, the date the first changed premium is paid when due; or (3) the first of the month coincident with or next following date of employment. A change in coverage applies only with respect to accidents that occur on or after the effective date of the change.

7. **Policy Effective Date:**   July 1, 2001

8. **Policy Termination Date:**   July 1, 2003

_____
Signed for the Policyholder

_____
Title

_____
Date

_____
Signed by Licensed Resident Agent
(Where Required by Law)

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, committees a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

C11962NY (4/02 revised)　　　　　　　　　　　　4　　　　　　　　　　　　　　　　　　　　CAP

AIG 00057

# Exhibit 1

CAP GEMINI ERNST & YOUNG
WELFARE BENEFIT PLAN ADMINISTRATIVE DOCUMENT

(As Amended and Restated Effective July 1, 2002)

PREAMBLE

Cap Gemini Ernst & Young U.S. LLC hereby adopts each of the Component Plans (as hereinafter defined), as amended and restated effective July 1, 2002 ("Amended and Restated Effective Date"), and hereby amends and restates this Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document ("Administrative Document"), effective July 1, 2002 (unless otherwise noted herein), for the purpose of supplementing the terms and provisions of each Component Plan, as set forth in the applicable Component Documents.

ARTICLE I
DEFINITIONS

1.1    Beneficiary shall have the meaning set forth in the appropriate Component Plan, as set forth in the applicable Component Documents.

1.2    Code shall mean the Internal Revenue Code of 1986, as amended.

1.3    Component Documents shall mean the plan documents, summary plan descriptions, certificates of insurance, group insurance policies, and all other documents, which set forth the terms and provisions of the Component Plans, as the same may be amended from time to time. Notwithstanding any other provision to the contrary, Component Documents shall not include any collective bargaining agreement, employee handbook, or individual employment contract, even if such collective bargaining agreement, employee handbook, or individual employment contract requires coverage under one or more of the Component Plans or addresses benefits to be provided to Employees whose terms and conditions of employment are set forth in the collective bargaining agreement, employee handbook, or individual employment contract.

1.4    Component Plan shall mean a welfare benefit program provided for certain Employees and their Dependents in accordance with the terms and provisions set forth in the applicable Component Documents. Appendix A hereto sets forth the Component Plans, as such appendix may be amended from time to time.

1.5    Conversion Right shall mean a Participant's right to convert group coverage under certain Component Plans to individual coverage upon termination of the group coverage.

1.6    Dependent shall have the meaning set forth in the appropriate Component Plan, as set forth in the applicable Component Documents.

1.7    Employee shall mean any person who is employed by an Employer who is eligible to become a Participant under the terms of the applicable Component Plan, as set forth in the applicable Component Documents.

CG 00026

1.8  Employer shall mean the Plan Sponsor, and any other entity that adopts a Component Plan by written instrument in accordance with Article IX. Employers participating in the Component Plans are listed on Appendix B hereto, as such appendix may be amended from time to time.

1.9  ERISA shall mean the Employee Retirement Income Security Act of 1974, as amended.

1.10  HIPAA shall mean the Health Insurance Portability and Accountability Act of 1996, as amended, and the U.S. Department of Health and Human Services regulations issued thereunder.

1.11  Participant shall mean an Employee or Dependent who satisfies the eligibility requirements of Article III.

1.12  Plan Administrator shall mean the Plan Sponsor. The Plan Administrator shall be the "administrator" of the Component Plans, as that term is defined in ERISA section 3(16)(A).

1.13  Plan Sponsor shall mean Cap Gemini Ernst & Young U.S. LLC.

1.14  Plan Year shall mean the 12-month period commencing on July 1 of each year and ending on June 30 of the subsequent year.

1.15  Provider shall mean any insurance company or other entity with which the Plan Sponsor contracts, in its sole and absolute discretion, to provide benefits under the Component Plans.

## ARTICLE II
## INCORPORATION OF ADMINISTRATIVE DOCUMENT

The terms and provisions of this Administrative Document are made a part of each Component Plan, and an amendment to this Administrative Document shall automatically constitute an amendment to each Component Plan. In the event of a conflict between the terms and provisions of this Administrative Document and a Component Plan, the terms and provisions of the Component Plan shall control.

## ARTICLE III
## ELIGIBILITY

Eligibility to participate in the Component Plans shall be determined in accordance with the terms and provisions of each Component Plan, as set forth in the applicable Component Documents.

ARTICLE IV
BENEFITS

Benefits provided under the Component Plans shall be determined in accordance with the terms and provisions of each Component Plan, as set forth in the applicable Component Documents.

ARTICLE V
CONVERSION RIGHTS

Conversion Rights under the Component Plans shall be determined in accordance with the terms and provisions of each Component Plan, as set forth in the applicable Component Documents.

ARTICLE VI
METHOD OF FUNDING BENEFITS

Benefits under the Component Plans shall be provided by an Employer or a Provider, as applicable. The Component Plans shall be funded through the general assets of each Employer, which may, in some instances, include amounts resulting from Employee salary reduction agreements.

ARTICLE VII
CLAIMS

7.1 Claims for Benefits. Claims for benefits provided under the Component Plans shall be processed in accordance with the terms and provisions of each Component Plan, as set forth in the applicable Component Documents.

7.2 Interpretations of Component Plans and Findings of Fact. The Plan Administrator shall have sole and absolute discretion (a) to interpret the provisions of the Component Plans (including, without limitation, by supplying omissions from, correcting deficiencies in, or resolving inconsistencies or ambiguities in, the language of the Component Plan); (b) to make factual findings with respect to any issue arising under the Component Plans; (c) to determine the rights and status under the Component Plans of Participants, Beneficiaries and other persons; and (d) to decide disputes arising under the Component Plans and to make determinations and findings (including factual findings) with respect to the benefits payable thereunder and the persons entitled thereto, as may be required for purposes of the Component Plans. In furtherance thereof, but without limiting the foregoing, the Plan Administrator is hereby granted the following specific authorities, which it shall discharge in its sole and absolute discretion in accordance with the terms of the Component Plans (as interpreted, to the extent necessary, by the Plan Administrator): (a) to resolve all questions (including factual questions) arising under the Component Plans as to any individual's entitlement to become a Participant; (b) to determine the amount of benefits payable with respect to any person under the Component Plans (including, to the extent necessary, making any factual findings with respect thereto); and (c) to conduct the claims and review procedures, to the extent specified herein. All decisions of the Plan Administrator as to the facts of any case and the application thereof to any case, as to the

3

interpretation of any provision of the Component Plans or its application to any case, and as to any other interpretative matter or other determination or question related to the Component Plans, shall be final and binding on all parties affected thereby, subject to the claims and review procedures, to the extent specified herein. The Plan Administrator may rely upon the records of the Plan Sponsor or upon any certificate, statement or other representation made to it by an Employee, a Participant, a Beneficiary, or the Plan Sponsor concerning any fact required to be determined under any of the provisions of the Component Plans, and shall not be required to make inquiry into the propriety of any action of the Plan Sponsor.

7.3 *Default Claims Procedures.* In the event that the terms and provisions of a Component Plan, as set forth in the applicable Component Documents, do not contain procedures for processing claims for benefits, the following procedures shall apply:

(a) Any Participant who believes that he is entitled to receive a benefit under a Component Plan must file a claim with the Plan Administrator.

(b) Within 90 days after such claim is filed (plus an additional period of 90 days, if required for processing, provided that notice of the extension of time is given to the claimant within the first 90-day period), the Plan Administrator shall furnish or cause to be furnished to the claimant either an approval or a detailed written denial of his claim. If the claim is denied, such written denial shall be written in a manner calculated to be understood by the claimant and will contain:

   (i) the specific reason(s) for the denial of the claim;

   (ii) specific reference to the provision(s) of the Component Plan upon which the denial of the claim is based;

   (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

   (iv) an explanation of the review procedure specified in paragraph (c) below.

If a claimant does not receive any such notice of denial within such 90-day or 180-day period, as the case may be, the claim will be deemed to have been denied in full.

(c) Within 60 days after receipt of the denial, either in whole or in part, the claimant (or his duly authorized representative) may appeal such denial by filing with the Plan Administrator his written request to review his claim on appropriate forms. If such an appeal is so filed within such 60-day period, the Plan Administrator shall conduct a full and fair review of such claim and mail or deliver to the claimant a written decision on the matter, based on the facts and the pertinent provisions of the Component Plan, within 60 days after the receipt of the request for review (unless special circumstances require an additional 60 days, in which case written notice of such extension will be given to the claimant prior to the

4

commencement of such extension). Such decision shall be written in a manner calculated to be understood by the claimant, shall state the specific reason(s) for the decision and the specific provisions of the Component Plan on which the decision was based and shall, to the extent permitted by law, be final and binding on all interested persons. During such review, the claimant or his authorized representative shall be given the opportunity to review documents that are pertinent to his claim and to submit issues and comments in writing. If the decision on review is not furnished within such 60-day or 120-day period, as the case may be, the claim shall be deemed to have been denied on review.

## ARTICLE VIII
## ADMINISTRATION OF COMPONENT PLANS

8.1 **Plan Administrator.** The general operation and administration of the Component Plans, and the responsibility for carrying out their terms and provisions, shall be placed with the Plan Administrator. The Plan Administrator shall be the "named fiduciary" under the Component Plans, as described in ERISA section 402(a).

8.2 **Duties.** In addition to the specific powers and duties set forth in Section 7.2 and any implied powers and duties which are necessary to carry out the terms and provisions of the Component Plans, the Plan Administrator shall have the following specific powers and duties:

(a) to make and enforce such rules and regulations as it deems necessary or appropriate for the efficient operation and administration of the Component Plans; and

(b) to keep such accounts and records as it deems necessary or appropriate for the exercise of its powers and performance of its duties under the Component Plans.

8.3 **Liability.** The Plan Administrator shall not be liable for any act or omission, except as expressly provided by ERISA.

8.4 **Reliance.** The Plan Administrator shall be entitled to rely conclusively on all opinions and reports which are furnished by a consultant or other person who is employed or engaged for purposes of the Component Plans.

8.5 **Delegation of Duties.** The Plan Administrator shall be authorized, to the extent deemed advisable, to designate persons or entities to carry out fiduciary responsibilities allocated to each, and to rely upon such information, data, statistics, or analysis provided by such persons or entities who perform functions under the Component Plans. The Plan Administrator shall not be liable for any act or omission, or the results of any act or omission, taken by a person or entity to whom a specific fiduciary responsibility has been delegated, except as expressly provided by ERISA.

CG 00030

## ARTICLE IX
## ADOPTION BY OTHER ENTITIES

9.1 Adoption Procedure. With the written consent of the Plan Sponsor, in a form similar to the adoption agreement attached hereto as Appendix D, any entity may adopt one or more of the Component Plans for its Employees by meeting the following requirements:

   (a) Adoption. An officer designated by the adopting entity shall approve the adoption of the Component Plan(s), by which such officer agrees that the adopting entity shall be bound by all terms, provisions, conditions, and limitations of the Component Plan(s), as provided herein and in the applicable Component Documents, with respect to its eligible Employees; such adoption shall specify the effective date of the adoption of the Component Plan(s) and shall become, as to the adopting entity and its Employees, a part of the Component Plan(s).

   (b) Required Information. An adopting entity shall, compile and submit all information required by the Plan Administrator with respect to persons in its employment who may be eligible to participate in the Component Plan(s).

9.2 No Joint Venture Implied. The adoption of one or more Component Plans by an entity shall not create a joint venture or partnership relationship between it and any other party hereto, nor shall such action be construed as having that effect. Any rights, duties, liabilities, and obligations assumed hereunder by each Employer, or imposed upon it pursuant to or as a result of the terms and provisions of the Component Plan(s), shall relate to and affect only such Employer.

9.3 Allocation of Responsibilities. Only the Plan Sponsor shall have the authority to amend or terminate the Component Plans in accordance with Section 10.1, and only the Plan Administrator shall have the applicable administrative powers described in Article VIII.

9.4 Transfer of Participants. If a Participant employed by one Employer is transferred to the employment of another Employer, he shall maintain all of his rights under the Component Plan(s), and his employment and participation shall be considered uninterrupted, as if no transfer had occurred.

## ARTICLE X
## HIPAA PROVISIONS APPLICABLE APRIL 14, 2003

10.1 Component Plans Subject to Privacy Rules Under HIPAA. The Plan Sponsor has determined that the following Component Plans will be subject to the privacy rules under HIPAA:

   (a) Medical Plan (including prescription drug and vision coverage);

   (b) Dental Plan; and

   (c) Health Care Reimbursement Accounts under the Flexible Benefits Program.

6

10.2   Appendix C.   For each Component Plan subject to the privacy rules under HIPAA, Appendix C hereto shall become effective April 14, 2003.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1   Amendment or Termination.

   (a)   The Plan Sponsor reserves the right to amend or terminate the Component Plans, in whole or in part at any time, through the action of an officer designated by the Plan Sponsor.

   (b)   Each Employer reserves the right to terminate the Component Plans with respect to its Employees only, in whole or in part, at any time, through the action of an officer designated by the Employer.

11.2   No Right to Employment.   The Component Plans shall not be deemed to constitute contracts of employment between an Employer and any Participant or Employee, nor to be consideration or an inducement for the employment of any Participant or Employee. Nothing contained in the Component Plans shall be deemed to give any Participant or Employee the right to be retained in the service of an Employer or to interfere with the right of an Employer to discharge any Participant or Employee at any time, with or without cause.

11.3   Number and Gender.   Wherever appropriate, words used in this Administrative Document in the singular shall include the plural, and words used in the plural shall include the singular. The use of the masculine pronoun shall be extended to include the feminine gender wherever appropriate.

11.4   Nondiscriminatory Exercise of Discretion.   Wherever it is herein provided, directly or by implication, that any person or persons concerned with the operation and administration of the Component Plans shall exercise discretion in the making of any decision, such discretion shall be exercised so as not to discriminate in favor of highly compensated employees.

11.5   Rights of Employees.   The Component Plans shall not be construed to provide any Employee or other person any legal or equitable right against the Plan Administrator or an Employer, except as expressly provided herein.

11.6   Information to be Furnished by Employees.   Employees (and Dependents) covered under any Component Plan must furnish the Plan Sponsor with any evidence, data or information that the Plan Sponsor considers necessary or desirable to administer the Plan and the Component Plans. A fraudulent misstatement or omission of fact made by a Employee or Dependent in an enrollment form or in a claim for benefits may be used to cancel coverage and/or to deny claims for benefits.

11.7   No Waiver of Plan Provisions.   Failure of the Plan Sponsor or any Employer to insist upon compliance with any provision of the Plan at any given time or under any given set

7

of circumstances will not operate to waive or modify that provision, or in any manner whatsoever render it unenforceable, as to any other time or as to any other occurrence, whether the circumstances are, or are not, the same.

11.8 <u>Workers' Compensation</u>. The Plan is not in lieu of and does not affect any requirement for coverage by workers' compensation insurance.

IN WITNESS WHEREOF, this document is executed on this ___ day of _____

_____, 2003.

CAP GEMINI ERNST & YOUNG U.S. LLC

By:_____
Title:_____

8

CG 00033

APPENDIX A
COMPONENT PLANS

1. Medical Plan (including prescription drug and vision coverage)

2. Dental Plan

3. Flexible Benefits Program (including Health Care Reimbursement Accounts and Dependent Care Reimbursement Accounts)

4. Short-Term Disability Plan

5. Long-Term Disability Plan

6. Group Life Insurance Plan

7. Accidental Death And Dismemberment Plan

8. Business Travel Accident Insurance Plan

9

APPENDIX B
PARTICIPATING EMPLOYERS

In addition to Cap Gemini Ernst & Young U.S. LLC, the following employers participate in the Plan:

1. Cap Gemini America, Inc. (effective July 1, 2001)

2. Cap Gemini North America, Inc. (effective April 1, 2003)

3. Cap Gemini Telecom Media & Networks U.S., Inc. (effective July 1, 2001)

4. Cap Gemini Ernst & Young Applications Services LLC (effective January 1, 2002)

5. Cap Gemini Ernst & Young Kansas City Service Center LLC (effective January 1, 2002)

6. Cap Gemini Technologies LLC (effective April 1, 2003)

7. Cap Gemini Government Solutions LLC (effective April 1, 2003)

## APPENDIX C
## HIPAA PRIVACY RULES

This Appendix is intended to bring the Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document and the employee assistance program maintained by Cap Gemini Ernst & Young U.S. LLC (hereinafter collectively the "Plan") into compliance with the requirements of Section 164.504(f) of the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations, 45 C.F.R. parts 160 through 164 (the regulations are referred to herein as the "HIPAA Privacy Rule" and § 164.504(f) is referred to as "the "504" provisions") by establishing the extent to which the Plan Sponsor will receive, use and/or disclose Protected Health Information in connection with any Component Plan or the employee assistance program subject to the HIPAA Privacy Rule.

Accordingly, the Plan is hereby amended, effective April 14, 2003, as follows:

1.  <u>Definitions</u>. For purposes of this Appendix, the following definitions, in addition to those set forth above or in the Plan, shall apply:

    (i)  "Disclose" or "Disclosures" mean the release, transfer, provision of access to, or divulging in any other manner of information outside the entity holding the information.

    (ii) "Health Care" means care, services, or supplies related to the health of an individual including, without limitation:

        (A)  preventive, diagnostic, therapeutic, rehabilitative, maintenance or palliative care, and counseling, service, assessment or procedure with respect to the physical or mental condition, or functional status, of an individual, or that affect the structure or function of the body; and

        (B)  the sale or dispensing of a drug, device, equipment or other item in accordance with a prescription.

    (iii) "Health Care Clearing House" means a public or private entity, including a billing service, repricing company, community health management information system or community health information system, and "value-added" networks and switches, that does either of the following functions:

        (A)  processes or facilitates the processing of Health Information received from another entity in a nonstandard format or containing nonstandard data content into standard data elements or a Standard Transaction; or

        (B)  Receives a Standard Transaction from another entity and processes or facilitates the processing of Health Information into nonstandard format or nonstandard data content for the receiving entity.

    (iv) "Health Care Operations" has the meaning set forth in 45 C.F.R. 164.501.

11

(v)   "Health Care Provider" means a provider of services as defined in 42 U.S.C. 1395x(u), a provider of medical or health services as defined in 42 U.S.C. 1395x(s), and any person or organization who furnishes, bills, or is paid for Health Care in the normal course of business.

(vi)   "Health Information" means any information, whether oral or recorded in any form or medium, that:

(A)   is created or received by a Health Care Provider, health plan, public health authority employer, life insurer, school or university, or Health Care Clearing House; and

(B)   relates to the past, present or future physical or mental health or condition of an individual, the provision of Health Care to any individual, or the past, present, or future payment for the provision of Health Care to an individual.

(vii)   "Individually Identifiable Health Information" means information that is a subset of Health Information, including demographic information, collected from an individual that:

(A)   is created or received by a Health Care Provider, health plan (including the Plan), the Plan Sponsor or a Health Care Clearing House; and

(B)   relates to the past, present, or future physical or mental health or condition of an individual; the provision of Health Care to an individual; and

(1)   that identifies the individual, or

(2)   with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

(viii)   "Plan Administration Functions" means administration functions performed by the Plan Sponsor on behalf of the Plan, and excludes functions performed by the Plan Sponsor in connection with any other benefit or benefit plan of the Plan Sponsor.

(ix)   "Protected Health Information" means Individually Identifiable Health Information that is either transmitted by electronic media; maintained in any medium as described in the definition of "electronic media" as set forth in DHHS Reg. Section 162.103; or transmitted or maintained in any other form or medium. Notwithstanding the foregoing, Protected Health Information shall not include Individually Identifiable Health Information in education records covered by the Family Educational Right and Privacy Act, and records described in 20 U.S.C. Section 1231g(a)(4)(B)(iv).

(x)   "Standard Transaction" means a transaction described in Section 1173(a)(1) of the Social Security Act.

(xi)   "Summary Health Information" means information, including, without limitation, Individually Identifiable Health Information, that:

12

CG 00037

      (A)   summarizes the claims history, claims expenses, or type of claims experienced by individuals for whom an Employer has provided health benefits under a group health plan; and

      (B)   from which the information described in DHHS Reg. 164.514(b)(2)(i) has been deleted, provided, however, that notwithstanding the foregoing, the geographic information described in DHHS Reg. 164.514(b)(2)(i)(B) need only be aggregated to the level of a five digit zip code.

2. <u>Disclosure of Summary Health Information</u>. The Plan may Disclose Summary Health Information to the Plan Sponsor only if the Plan Sponsor requests the Summary Health Information for the purpose of:

   (i)   obtaining premium bids from health plans for providing health insurance coverage under the Plan; or

   (ii)   modifying, amending or terminating the Plan.

3. <u>Disclosure of Enrollment Information</u>. The Plan may Disclose to the Plan Sponsor information on whether the individual is participating in the Plan, or is enrolled or has disenrolled from a health insurance issuer or HMO offered by the Plan.

4. <u>Use or Disclosure of Protected Health Information</u>. With respect to Protected Health Information, the Plan shall:

   (i)   establish the permitted and required uses and Disclosures of such information by or to the Plan Sponsor, which are consistent with the HIPAA Privacy Rules and DHHS Reg. 164.504(f); and

   (ii)   Disclose Protected Health Information to the Plan Sponsor only upon receipt of a certification by the Plan Sponsor, substantially in the form attached hereto as Exhibit A, that this amended and restated Plan has been adopted to incorporate the provisions required by DHHS Reg. 164.504(f)(2)(ii).

5. <u>Plan Procedures</u>. With respect to Protected Health Information, the Plan Sponsor shall:

   (A)   Not use or further Disclose the information other than as permitted or required by the Plan documents or as required by law;

   (B)   Ensure that any agents, including a subcontractor, to whom the Plan Sponsor provides Protected Health Information received from the Plan agree to the same restrictions and conditions that apply to the Plan Sponsor with respect to such information;

   (C)   Not use or Disclose the information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of the Plan Sponsor;

13

CG 00038

(D) Report to the Plan any use or Disclosure of the information of which the Plan Sponsor becomes aware that is inconsistent with the uses or Disclosures provided for;

(E) Make available an individual's Protected Health Information to him or her in accordance with DHHS Reg. 164.524;

(F) Make available an individual's Protected Health Information to him or her for amendment by the individual, and incorporate any amendments to Protected Health Information in accordance with DHHS Reg. 164.526;

(G) Make available to the Plan the information required to provide an accounting of Disclosures in accordance with DHHS Reg. 164.528;

(H) Make its internal practices, books, and records relating to the use and Disclosure of Protected Health Information received from the Plan available to the DHHS for purposes of determining compliance by the Plan with the HIPAA Privacy Rules;

(I) If feasible, return or destroy all Protected Health Information received from the Plan that the Plan Sponsor still maintains in any form and retain no copies of such information when no longer needed for the purpose for which Disclosure was made, except that, if such return or destruction is not feasible, the Plan Sponsor will limit the further uses and Disclosures to those purposes that make the return or destruction of the information infeasible; and

(J) Ensure that the adequate separation required in DHHS Reg. 164.504(f)(2)(iii) is established.

6. Separation Between the Plan and the Plan Sponsor.

(i) In accordance with DHHS Reg. 164.504(f)(2)(iii), this paragraph describes those employees or classes of employees or other persons under the control of the Plan Sponsor to be given access to the Protected Health Information to be Disclosed. Any employee or person who receives Protected Health Information relating to payment under, Health Care Operations of, or other matters pertaining to the Plan in the ordinary course of business shall be included in this description. The following employees shall be provided such access: all employees of the National Benefits Office of Cap Gemini Ernst & Young U.S. LLC and any other employees in the legal, financial, tax, IT, payroll and other departments, groups or areas within Cap Gemini Ernst & Young U.S. LLC or any of its participating affiliates that, in the sole discretion of the Plan Sponsor, reasonably require such assess in order to carry out any of the Plan Administration Functions set forth in Section 8 hereof. The Plan Sponsor shall limit such individuals' access to Protected Health Information to the minimum reasonably necessary for such purposes.

(ii) In accordance with DHHS Reg. 164.504(f)(2)(iii), the access to and use by such employees and other persons described in paragraph (i) above shall be restricted to the Plan Administration Functions that the Plan Sponsor performs for the Plan; and

CG 00039