(iii)   In accordance with DHHS Reg. 164.504(f)(2)(iii), the Plan shall adopt sanction procedures that provide an effective mechanism for resolving any issues of noncompliance by persons described in paragraph (i) above with the provisions of this Section 6. The Plan Sponsor will promptly report any breach, violation or noncompliance to the Plan and will cooperate with the Plan to correct the breach, violation or noncompliance, to impose appropriate disciplinary action and/or sanctions, and to mitigate any deleterious effect of the breach, violation or noncompliance.

7.  <u>Specific Uses and Disclosures</u>. The Plan may:

(i)   Disclose Protected Health Information to the Plan Sponsor to carry out Plan Administration Functions that the Plan Sponsor performs only consistent with the provisions of Section 5 above;

(ii)  Not permit a health insurance issuer or HMO with respect to the Plan to Disclose Protected Health Information to the Plan Sponsor except as permitted by this Section;

(iii) Not Disclose Protected Health Information to the Plan Sponsor for the purpose of employment-related actions or decisions or in connection with any other benefit or employee benefit plan of the Plan Sponsor; and

(iv)  Not Disclose, and may not permit a health insurance issuer or HMO to Disclose, Protected Health Information to the Plan Sponsor as otherwise permitted by this Section, unless the Plan gives the individual written notice required by DHHS Reg. 164.520(b), and including a separate statement that the Plan, or a health insurance issuer or HMO with respect to the Plan, may Disclose Protected Health Information to the Plan Sponsor.

8.  <u>Plan Administration Functions</u>. The Plan Sponsor may use the Protected Health Information for the following Plan Administration Functions:

(i)   payment; and

(ii)  Health Care Operations, such as quality assurance, claims processing, auditing, monitoring and management of carve-out plans such as vision or dental plans.

CG 00040

## EXHIBIT A

### CERTIFICATION OF PLAN SPONSOR

The undersigned hereby certifies on behalf of Cap Gemini Ernst & Young U.S. LLC (the "Plan Sponsor") that the Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document (the "Plan"), including its component plans, has been amended in accordance with Regulation Section 164.504(f) of the Department of Health and Human Services, and that the Plan Sponsor agrees to all of the conditions set forth in Appendix C to the Plan entitled "HIPAA Privacy Rules."

Cap Gemini Ernst & Young U.S. LLC

By: _____

Its: _____

CG 00041

APPENDIX D
SAMPLE ADOPTION AGREEMENT

for the
Cap Gemini Ernst & Young
Welfare Benefit Plan Administrative Document

Effective _____, 2003, _____, Inc. ("XXX") elects to become a participating Employer in the Cap Gemini Ernst & Young Welfare Benefit Plan Administrative Document (the "Welfare Benefit Plan"), and its component plans, for the benefit of its eligible employees. XXX has received a copy of the Plan document and the component plan documents and agrees to be bound by the terms and conditions set forth therein. XXX acknowledges that its election to adopt the Plan will remain in effect until and unless it notifies Cap Gemini Ernst & Young U.S. LLC, the Plan Administrator, in writing of its decision to withdraw from the Plan.

SIGNED:

_____, Inc.

By: _____
Its: _____

Date: _____, 2003

ACCEPTED:

Cap Gemini Ernst & Young U.S. LLC

By: _____
Its: Chief People Officer
Date: _____, 2003

17

CG 00042

# Exhibit 1

Back to Summary Report                    PREV 2 of 4 NEXT

**Citation # 1**
2005 U.S. Dist. LEXIS 365

ROBERT L. GIROUX, Plaintiff v. FORTIS BENEFITS INSURANCE CO., Defendant

Civil No. 04-104-P-C

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

2005 U.S. Dist. LEXIS 365

January 11, 2005, Decided

**DISPOSITION:** Plaintiff's motion for summary judgment granted, and defendant's motion for summary judgment denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant insurer, alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., arising from the insurer's denial of long term disability (LTD) benefits under an LTD policy. The parties cross-moved for summary judgment. The employee sought prejudgment interest, costs, and attorney's fees.

**OVERVIEW:** In 1997, the employee was diagnosed with multifocal motor neuropathy (MMN), but treatment from a neurologist resulted in significant improvement. On September 7, 2000, the employee's primary care physician treated the employee for guttate psoriasis lesions. The primary care physician mentioned in medical notes that the employee could need more treatment for MMN. On August 16, 2002, the employee stopped working because his MMN worsened. The insurer denied the employee's claim for LTD benefits based upon a pre-existing condition, finding that the employee received medical services for MMN on September 7, 2000. The employee submitted letters from the primary care physician stating that the employee did not receive MMN consultation from the primary care physician. The court determined that the employee was entitled to summary judgment as to his ERISA claim. The insurer's consulting physician's conclusion, based on a review of the medical records, was unsupported by any corroborating evidence and ignored the primary care physician's letter. The insurer's conclusion that the medical note implied treatment or consultation for MMN was arbitrary.

**OUTCOME:** The court granted the employee's summary judgment motion and denied the insurer's summary judgment motion. The court determined that prejudgment interest, costs, and attorney's fees were warranted.

**CORE TERMS:** administrative record, disability, disability benefits, pre-existing, long term, neuropathy, consulted, prejudgment interest, multifocal, claimant, insured, insurer, effective date, pregnancy, sickness, treating physician, administrator, treating, short term, psoriasis, symptom, advice, discretionary authority, unsupported, eligibility, fiduciary, disability

insurance, service requirement, medical care, office visit

## LexisNexis(TM) Headnotes

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

HN1⬆ Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***

HN2⬆ The happenstance that both parties move simultaneously for brevis disposition does not, in and of itself, relax the taut line of inquiry that Fed. R. Civ. P. 56 imposes. Thus, in the ordinary case, the trial court must consider each motion separately, drawing inferences against each movant in turn.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies***

HN3⬆ Summary judgment is frequently an appropriate vehicle for resolution of Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., disputes. As the United States Court of Appeals for the First Circuit has stated, in an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies***

HN4⬆ Consistent with established principles of trust law, a denial of benefits challenged under 29 U.S.C.S. § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. The threshold question, then, is whether the provisions of the employee benefit plan under which remediation is sought reflect a clear grant of discretionary authority to determine eligibility for benefits.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies***

HN5⬆ In the context of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., when reviewing a denial of benefits under the arbitrary and capricious standard, the insurer's decision must be upheld if it was within the insurer's authority, reasoned, and supported by substantial evidence in the record. Substantial evidence means evidence reasonably sufficient to support a conclusion.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures***

HN6⬆ Black & Decker does not stand for the proposition that an insurer may deny claims based only on the unsupported conclusions of its employees. Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., plan administrators are not obliged to accord special deference to the opinions of treating physicians. However, Black & Decker does not allow an insurer to disregard the opinion of a treating physician in the absence of medical evidence contrary to the treating physician's opinion.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures***

HN7⤓ In the context of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., Black & Decker, while holding that opinions of treating physician's are not afforded special weight, also notes that plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.

**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures**

HN8⤓ In the context of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., the United States Court of Appeals for the First Circuit recently has stated that notation of a symptom in a report does not constitute treatment for that symptom. Nor does it constitute consultation for that symptom.

**Civil Procedure > Costs & Attorney Fees > Judgment Interest**

HN9⤓ Prejudgment interest may be awarded to ensure that an injured party is fully compensated for its loss.

**Civil Procedure > Costs & Attorney Fees > Judgment Interest**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

HN10⤓ In Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., cases, prejudgment interest is available, but not obligatory.

**Civil Procedure > Costs & Attorney Fees > Judgment Interest**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

HN11⤓ Ordinarily, a cause of action under the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., and prejudgment interest on a plan participant's claim both accrue when a fiduciary denies a participant benefits.

**Civil Procedure > Costs & Attorney Fees > Attorney Fees**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

HN12⤓ See 29 U.S.C.S. § 1132(g)(1).

**Civil Procedure > Costs & Attorney Fees > Attorney Fees**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

HN13⤓ In the context of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., in considering whether attorney's fees are warranted, courts consider five factors: (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

**Civil Procedure > Costs & Attorney Fees > Attorney Fees**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

HN14⤓ An award of attorney's fees is an important deterrent measure: first, because of the limited remedy available to Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., plaintiffs, insurers should be dissuaded from prematurely suspending benefits with the hope that some claimants will not sue; and second, because an award of attorney's fees ensures that attorneys continue to take on ERISA cases in which the potential monetary award may be limited.

**COUNSEL:** [*1] For ROBERT L GIROUX, Plaintiff: JULIAN L. SWEET, BERMAN & SIMMONS, P.A., LEWISTON, ME.

For FORTIS BENEFITS INSURANCE COMPANY, Defendant: JOSHUA BACHRACH, RAWLE & HENDERSON, L.L.P., PHILADELPHIA, PA; GLENN H. ROBINSON, THOMPSON & BOWIE,

PORTLAND, ME; JAMES M. BOWIE, THOMPSON & BOWIE, PORTLAND, ME.

**JUDGES:** Gene Carter, Senior District Judge.

**OPINIONBY:** Gene Carter

**OPINION: ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Gene Carter, Senior District Judge

Plaintiff Robert L. Giroux initiated this suit against Defendant Fortis Benefits Insurance Co. ("Fortis"), in which he alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Now before the Court are Plaintiff's Motion for Summary Judgment (Docket Item No. 11) and Defendant's Motion for Summary Judgment (Docket Item No. 8). The Court has thoroughly reviewed the Motions and written submissions thereon, and has considered the administrative record submitted by the parties to the Court. For the reasons set forth below, the Court will grant Plaintiff's Motion for Summary Judgment and will deny Defendant's [*2] Motion for Summary Judgment.

**I. Facts**

Plaintiff Giroux began working as a blow mold technician for Poland Spring Bottling Company ("Poland Spring"), a subsidiary of the Perrier Group of America ("Perrier"), on February 25, 2001. In 1997, Plaintiff was first diagnosed with weakness is his left upper arm caused by multifocal motor neuropathy ("MMN"), a progressive muscle disorder characterized by muscle weakness in the hands and arms. Plaintiff was treated by Dr. Richard L. Sullivan, a neurologist, and received a course of medications from June 1997 through August 1998. This treatment resulted in a significant improvement in Plaintiff's condition. On September 7, 2000, Plaintiff was examined by his primary care physician, Dr. John B. McGuckin, after complaining of sores on his hands and arms. Dr. McGuckin indicated that the lesions represented guttate psoriasis or lichens planus and prescribed Ultravate cream to treat the lesions. During this office visit, Dr. McGuckin, in his medical notes, also referred to Plaintiff's MMN. Specifically, Dr. McGuckin wrote the following:PROBLEM: Multifocal motor neuropathy

SUBJECTIVE: This effects [sic] the radial nerve left [*3] hand, improved on pooled IgE, unfortunately got caught with paying the bills for this, very upset at the health insurance system for not covering this entity. The patient improved on it, may need more of it. May need to investigate with his new insurance whether it is covered, still has marked wasting of the muscles of his left hand secondary to neuropathy. Observe.

PROBLEM: Lesions on his right arm and back representing guttate psoriasis or lichen planus.

PLAN: Try Ultravate cream .1% q.d. for about two weeks, re-check with us here in a month. If no improvement, needs a biopsy.Administrative Record at 246. On August 16, 2002, Plaintiff stopped working at Poland Spring Bottling because his MMN worsened. Plaintiff submitted a claim to Defendant Fortis for short term disability benefits, which was approved on November 6, 2002, and took effect retroactively to September 7, 2002. Fortis paid Plaintiff $ 369.00 per week, the maximum benefit provided under the short term disability policy, through February 14, 2003. While receiving short term benefits for his MMN, Plaintiff was diagnosed with bladder cancer. n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The parties agree that Plaintiff's diagnosis of, and treatment for, bladder cancer is not of material issue in this dispute. The present dispute is limited to whether Plaintiff is entitled to long term disability benefits as a result of his MMN.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*4]

In addition to his claim for short term benefits, Plaintiff also submitted a claim to Fortis asserting that he was entitled to long term disability benefits. This claim was made pursuant to the long term disability benefits contained in Long Term Disability Policy No. 4018228 ("the Policy"). As set forth more fully below, Fortis denied this claim on the basis that Plaintiff's MMN was a pre-existing condition and was thus not covered under the terms of the Policy. Fortis does not dispute that Plaintiff has a disabling injury that prevents him from engaging in his employment. Rather, the only matter in dispute is whether Plaintiff's condition falls within the pre-existing condition language of the Policy, and more specifically, whether Plaintiff's September 7, 2000, visit to Dr. McGuckin was linked to the diagnosis of MMN.

## II. Plaintiff's Fortis Insurance Policy

As a Perrier employee, Plaintiff was eligible for long term disability insurance as part of an employee welfare benefit plan governed by ERISA. Administrative Record at 1-36. Defendant Fortis was the insurer of the long term benefit portion of the plan. The Policy has a present service requirement of three months for [*5] those employed by Perrier on the effective date of the Policy, and a future service requirement of three months for those employed after the effective date of the Policy. Plaintiff met the future service requirement on June 1, 2001, and thus became eligible for long term disability coverage under the Perrier Plan.

The Policy provides long term disability benefits to eligible employees of Perrier as follows:*The policy* pays a monthly benefit designed to partly replace income lost during *periods of disability that* result from *injury*, sickness or pregnancy.

A *covered person* who remains *disabled* during the *qualifying period may* become eligible to receive a monthly benefit based on *monthly pay*. These benefits are payable while the *disability* continues, or until the Maximum Period ends . . . .Administrative Record at 14 (emphasis in original). The Policy contains specific circumstances under which a claimant may qualify for long term disability benefits.*Disability or disabled* means that in a particular month, you satisfy either the Occupation Test or the Earnings Test, as described below. You may satisfy both the Occupation [*6] Test and Earnings Test, but you need only satisfy one Test to be considered *disabled*.

Occupation Test. During the first 24 months of a *period of disability* (including the *qualifying period*), an *injury*, sickness, or pregnancy requires that you be under the *regular care and attendance* of a *doctor*, and prevents you from performing at least one of the *material duties* of your regular occupation; and

. after 24 months of *disability*, an *injury*, sickness, or pregnancy prevents you from performing at least one of the *material duties* of each *gainful occupation* for which your education, training, and experience qualifies you.Administrative Record at 9 (emphasis in original). The Policy also includes a limitation on coverage of pre-existing conditions as follows:We will not pay benefits for any *disability* caused by a pre-existing condition (defined below) until you have been at *active work* for a full day following 24 consecutive months

during which you are continuously insured under the *long term disability insurance policy*.

A 'pre-existing condition' means an *injury*, sickness, or pregnancy [*7] or any related *injury*, sickness, or pregnancy for which you:. consulted with or received advice from a licensed medical or dental practitioner, or

. received medical or dental care, treatment or services, including taking drugs, medicine, insulin, or similar substancesduring the 12 months that end on the day before you became insured under the *long term disability insurance policy*.Administrative Record at 26-27 (emphasis in original). Because Plaintiff had not been employed by Perrier "for a full day following twenty-four consecutive months during which [he was] continuously insured," Fortis was authorized to conduct a pre-existing condition screening. The purpose of this review was to determine whether Plaintiff had "consulted with or received advice from a licensed . . . practitioner" or "received medical . . . care, treatment or services, including taking . . . medicine . . ." during the twelve month period preceding June 1, 2001, the date he became insured under the Policy.

### III. The Administrative Process

When Plaintiff's MMN worsened to the point where he was no longer able to work, he filed a claim with Fortis for long term disability [*8] benefits. On April 14, 2003, Fortis denied Plaintiff's claim for long term disability benefits, stating:Your claim is being denied as we have determined that your disability is the result of a pre-existing condition for which you have received ongoing medical care and treatment. A pre-existing condition is one in which you receive medical care or treatment prior to the effective date of coverage, and we identified such treatment. You became insured under long term disability policy number 4018228 on June 1, 2001. You consulted with a physician and received medical care and treatment for your condition in the 12 month period prior to June 1, 2001. You were not continuously insured under the long term disability policy for 24 consecutive months as your disability began on August 17, 2002.Administrative Record at 189. Plaintiff subsequently filed a notice of appeal of Fortis's denial of disability benefits under the Policy. Included in this appeal was a brief letter, dated April 24, 2003, from Dr. McGuckin, which stated, "Robert L. Giroux was seen by me on September 7, 2000 for treatment of Guttate Psoriasis, not for Motor Neuropathy." Administrative Record at 224. Fortis's [*9] appeals specialist recommended physician review of Plaintiff's file. Accordingly, Dr. Polly M. Galbraith, Fortis's medical director, n2 reviewed Plaintiff's file n3 and concluded as follows:He is clearly noted to have consulted Dr. McGuckin regarding his neuropathy during the pre exist period and was recommended to have further therapy. It was elected to observe presumably in part, because of the expense involved in the therapy. Follow-up for this condition was sporadic or minimal. While Dr. McGuckin indicated treatment of only psoriasis, Mr. Giroux did consult and/or receive advice from a physician regarding multifocal neuropathy.Administrative Record at 238.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Dr. Galbraith is board certified in family practice and insurance medicine.

n3 Dr. Galbraith did not perform any independent medical examination of Plaintiff.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

After receiving the results of Dr. Galbraith's physician review, Fortis affirmed its denial of Plaintiff's request for long term disability benefits. A letter from Kimberly [*10] Myers, Appeals Specialist, delineated the reasons for the denial:Since you consulted with a physician and received medical treatment for the multifocal motor neuropathy during the twelve (12) months prior to your effective date, it is considered a pre-existing condition according to the terms in the Long Term Disability policy. Therefore, Fortis Benefits will not pay benefits related to the multifocal motor neuropathy.Administrative Record at 227.

Plaintiff next filed an appeal with the Fortis Benefits Disability Claims Appeal Committee. In support of this appeal, Plaintiff filed a second letter from Dr. McGuckin indicating that the September 7, 2000, visit in dispute was limited to treatment of guttate psoriasis. Dr. McGuckin stated:I consulted with Mr. Robert Giroux on Sept. 9, 2000 [sic] n4 for a skin rash. Although I mentioned the pts motor neuropathy at the time, I did not consult with pt on it. The note was a clarification of the pathology involved in his preceeding [sic] condition. The last consultation for this condition by me was in 11/16/98 more than s1s"s years before this visit.Administrative Record at 223 (emphasis in original). [*11] Plaintiff also submitted a letter from Dr. Sullivan, the neurological specialist who treated Plaintiff's MMN. Dr. Sullivan stated:Robert Giroux was under my treatment for multifocal motor neuropathy until 3/99. His symptoms responded to treatment with plasmapheresis and Cytoxan and he remained stable until 8/02, when he returned, now with increasing weakness in the upper extremities. At that time, I instituted further treatments, which have been outlined in other notes.Administrative Record at 222.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 The actual date of the visit in question was September 7, 2000.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The Appeal Committee, after reviewing Plaintiff's medical records, the letters submitted by Dr. McGuckin and Dr. Sullivan, and the medical review performed by Dr. Galbraith, concluded as follows:Based on this record, you received medical services or consulted with or received advice from a licensed physician for the multifocal motor neuropathy during the twelve (12) months prior to your effective date. Therefore, it is a pre-existing [*12] condition according to the terms in the Long Term Disability policy. No benefits are payable for any disability related to this condition.Administrative Record at 212. Denial of Plaintiff's appeal to the Appeal Committee served as Plaintiff's final administrative remedy and paved the way for the present lawsuit.

**IV. Standard of Review**

**a. Summary Judgment Standard**

HN1 Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of

the nonmoving party." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). [*13] $^{HN2}$"The happenstance that both parties move simultaneously for brevis disposition does not, in and of itself, relax the taut line of inquiry that Rule 56 imposes." *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996). Thus, in the ordinary case, the trial court "must consider each motion separately, drawing inferences against each movant in turn. . . ." *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 n.8 (1st Cir. 1995).

$^{HN3}$Summary judgment is frequently an appropriate vehicle for resolution of ERISA disputes. As the First Circuit stated, "in an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002). Because the complete administrative record is properly before the Court, evaluation of Fortis's denial of Plaintiff's benefit claim maybe resolved on the existing record.

### b. Review of Fortis's Denial of Plaintiff's [*14] Benefit Claim

In addition to the Rule 56 standard of review, the Court must also determine the appropriate standard upon which to review Fortis's denial of Plaintiff's long term disability benefit claim. The Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989), set forth the factors appropriate for this Court's consideration. $^{HN4}$"Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. Bearing in mind the *Firestone* holding, "the threshold question, then, is whether the provisions of the employee benefit plan under which remediation is sought reflect a clear grant of discretionary authority to determine eligibility for benefits." *Leahy*, 315 F.3d at 15.

The Policy at issue in this case states the following: "The *policyholder* delegates to us n5 and agrees that we have the sole discretionary authority to determine eligibility [*15] for participation or benefits and to interpret the terms of the *policy*. All determinations and interpretations made by us are conclusive and binding on all parties." Administrative Record at 29. The Policy clearly and unambiguously reserves discretion to Fortis, thus *Firestone* and its progeny mandate the Court's review be under the arbitrary and capricious standard. *Firestone*, 489 U.S. at 115; *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 22 (1st Cir. 2003); *Leahy*, 315 F.3d at 15; *Dandurand v. UNUM Life Ins. Co. of Am.*, 284 F.3d 331, 335-36 (1st Cir. 2002); *Johnson v. UNUM Life Ins. Co. of Am.*, 329 F. Supp. 2d 161 (D. Me. 2004).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 "Us" is defined in the "General Definitions" section of the Policy to mean Fortis Benefits Insurance Company.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

### V. Discussion

<sup>HN5</sup>When reviewing a denial of benefits under the arbitrary and capricious standard, the insurer's decision must be upheld "if it was within [the insurer's] [*16] authority, reasoned, and supported by substantial evidence in the record." *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 15 (1st Cir. 2003) (quoting *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion." *Doyle*, 144 F.3d at 184.

Plaintiff contends that Fortis's denial was not reasonable and Fortis failed to give weight to the letters submitted by Dr. McGuckin indicating that he did not consult with or render treatment for Plaintiff's MMN during the September 7, 2000, office visit. Fortis, in turn, relies on *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003), for the proposition that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." *Id.* at 834. This reliance, however, is misplaced. *Black & Decker* involved a situation where the benefit claimant was referred to a physician by the insurance carrier, and said physician's medical conclusions differed from the conclusions [*17] reached by the claimant's treating physician. *Id.* at 827. A unanimous Supreme Court held that the opinion of the treating physician was due no greater weight than the opinion of the insurance carrier's consulting physician. The situation here is different. Fortis's consulting physician, Dr. Galbraith, did not evaluate Plaintiff; rather, she merely reviewed the medical records and interpreted Dr. McGuckin's notes. Dr. Galbraith's conclusion that "[Plaintiff] is clearly noted to have consulted Dr. McGuckin regarding his neuropathy during the pre exist [sic] period and was recommended to have further therapy," Administrative Record at 238, is unsupported by any corroborating evidence and ignores the letter submitted by Dr. McGuckin stating "Robert L. Grioux was seen by me on September 7, 2000 for treatment of Guttate Psoriasis, not for Motor Neuropathy." Administrative Record at 224. As this Court has held, <sup>HN6</sup>*Black & Decker* does "not stand for the proposition that an insurer may deny claims based only on the unsupported conclusions of its employees." *Curtin v. UNUM Life Ins. Co. of Am.*, 298 F. Supp. 2d 149, 157 (D. Me. 2004). *Curtin* and the [*18] cases it relies on establish that ERISA plan administrators are not obliged to accord special deference to the opinions of treating physicians. However, as *Curtin* states, *Black & Decker* "does not allow an insurer to disregard the opinion of a treating physician in the absence of medical evidence contrary to the treating physician's opinion." *Id.* There is no independent support for Dr. Galbraith's conclusion that Plaintiff consulted with Dr. McGuckin for his MMN on September, 7, 2000, and no reason whatsoever for her failure to consider Dr. McGuckin's letter; her opinion is merely a bald conclusion.

Fortis's denial of Plaintiff's benefits claim is also arbitrary. Fortis has arbitrarily refused to give any weight to Dr. McGuckin's statements that he did not consult with, nor treat, Plaintiff for MMN during the pre-exist period. <sup>HN7</sup>*Black & Decker*, while holding that opinions of treating physician's are not afforded special weight, also notes that "plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker*, 538 U.S. at 834. Addressing the very dispute [*19] involved in this case, <sup>HN8</sup>the First Circuit recently stated that "notation of a symptom in a report does not constitute treatment for that symptom. Nor does it constitute consultation for that symptom." *Glista v. UNUM Life Ins. Co. of Am.*, 378 F.3d 113, 127 (1st Cir. 2004) (internal citations and punctuation omitted).

Throughout the administrative appeal process, Fortis has ignored the merits and persuasive weight of Dr. McGuckin's statements that he did not consult with or treat Plaintiff's MMN during the September 7, 2000, office visit. n6 Fortis's final denial letter indicates receipt of Dr. McGuckin's letters, yet Fortis bases its denial of long term disability benefits on the unsupported interpretation of Dr. McGuckin's medical notes. Fortis simply has no support for its position other than Dr. Galbraith's opinion, which, as the Court previously noted, has no factual foundation. As per *Glista*, Fortis cannot base its denial on a mere notation in a

medical record. Accordingly, Fortis's conclusion that Dr. McGuckin's note implied treatment and/or consultation is arbitrary and does not support its denial of Plaintiff's claim for long term disability benefits.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Fortis also failed to give any weight to the letter submitted by Dr. Sullivan, Plaintiff's treating neurologist, indicating that he did not treat Plaintiff for MMN during the pre-existing condition period.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*20]

## VI. Additional Remedies

In his Complaint, Plaintiff seeks both prejudgment interest and attorney's fees. The Court will consider each claim in turn.

### a. Prejudgment Interest

HN9 Prejudgment interest may be awarded to "ensure that an injured party is fully compensated for its loss." *Milwaukee v. Cement Division, Nat'l Gypsum Co.*, 515 U.S. 189, 195, 115 S. Ct. 2091, 132 L. Ed. 2d 148 (1995). HN10 In ERISA cases, prejudgment interest is "available, but not obligatory." *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 223 (1st Cir. 1996). After consideration of the circumstances of this case, the Court concludes that prejudgment interest is warranted.

HN11 "Ordinarily, a cause of action under ERISA and prejudgment interest on a plan participant's claim both accrue when a fiduciary denies a participant benefits." *Id*. Fortis denied Plaintiff's administrative appeal on October 23, 2003. Accordingly, prejudgment interest shall accrue from that date, and continue until the date of entry of judgment in this case. See *Black v. UNUM Life Ins. Co. of Am.*, 324 F. Supp. 2d 206, 219 (D. Me. 2004). Interest shall be calculated based [*21] on the federal prime rate for the period in question, compounded daily. n7 *Id*.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Historic daily prime rates are available at:

http://www.federalreserve.gov/releases/h15/data/d/prime.txt.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### b. Attorney's Fees

ERISA provides that HN12 "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). HN13 In considering whether attorney's fees are warranted, courts consider five factors:

(1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

Cottrill, 100 F.3d at 225; Black, 324 F. Supp. 2d at 219. [*22] First, the Court finds that Fortis exhibited bad faith in its total failure to consider the letters submitted by both Dr. McGuckin and Dr. Sullivan. These letters establish that Plaintiff was not treated for and did not consult with any doctor concerning MMN during the pre-existing condition period, and Fortis has offered no reliable evidence to the contrary. Second, Fortis has the ability to pay the attorneys' fees in this case. Third, as this Court recently stated, HN14 "an award of attorney's fees . . . is an important deterrent measure: first, because of the limited remedy available to ERISA plaintiffs . . . insurers should be dissuaded from prematurely suspending benefits with the hope that some claimants will not sue; and second, because an award of attorney's fees ensures that attorneys continue to take on ERISA cases in which the potential monetary award may be limited." Black, 324 F. Supp. 2d at 219. The fourth factor has no bearing on this case. Fifth, as noted throughout this Opinion, the Court finds little merit in Fortis's position. Accordingly, the Court concludes that an award of costs and attorney's fees is appropriate in this case.

## VII. Conclusion [*23]

In accordance with the above Opinion, it is **ORDERED** as follows:(1) Plaintiff's Motion for Summary Judgment be, and it is hereby, **GRANTED;**

(2) Defendant's Motion for Summary Judgment be, and it is hereby, **DENIED;**

(3) Judgment shall be entered in favor of Plaintiff along with prejudgment interest for the period of October 23, 2003, until the date of Judgment, to be calculated pursuant to the terms set forth in this Order;

(4) Plaintiff shall file a motion for costs and attorney's fees pursuant to Fed. R. Civ. P. 54(d) and Local Rule 54.2, to allow the Court to determine the appropriate fee.

**GENE CARTER**

Senior District Judge

Dated at Portland, Maine this 11th day of January, 2005.

Back to Summary Report                    PREV 2 of 4 NEXT