# Exhibit 20

Back to Summary Report

⟨PREV⟨4 of 4⟩

**Citation # 2**
**2000 U.S. Dist. LEXIS 3152**

ALAN R. KUTNER, ESQUIRE, Plaintiff, v. UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

CIVIL ACTION NO. 99-800

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2000 U.S. Dist. LEXIS 3152; 24 Employee Benefits Cas. (BNA) 2145

March 20, 2000, Decided

**DISPOSITION:** [*1] Defendant UNUM Life Insurance Company of America's Motion for Summary Judgment GRANTED. Judgment entered in favor of Defendant UNUM Life Insurance Company of America and against Plaintiff Alan R. Kutner, Esquire.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant insurer moved for summary judgment in plaintiff's Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001, action after defendant denied his claim for total disability.

**OVERVIEW:** Plaintiff, a trial attorney, submitted a long-term disability claim to defendant, stating that as a result of a progressive bilateral hearing loss, he became, was and remained totally disabled from that occupation. Defendant conducted an investigation and advised plaintiff he did not qualify. Plaintiff sought reconsideration of his claim; an Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001, was conducted and his claim again denied. Plaintiff initiated the instant action and defendant moved for summary judgment. The court granted defendant's motion, finding that, in light of the evidence that was before the plan administrator, there was nothing arbitrary or capricious about the determination. Based on the evidence before defendant, it was obvious that plaintiff was able to perform several of the material duties that coincide with the duties of a trial attorney.

**OUTCOME:** Defendant insurer's motion for summary judgment was granted. The determination by defendant that plaintiff could perform material duties of his occupation as a trial lawyer was not arbitrary or capricious.

**CORE TERMS:** duties, disability, occupation, arbitrary and capricious, plan administrator, claimant, conflict of interest, administrator, disability benefits, eligibility, regular, personal injury, hearing loss, summary judgment, satisfactory, non-moving, sickness, trial attorney, handle, discretionary power, capricious, standard of review, total disability, disabled, discretionary authority, heightened, insurer, deposition, moving party, ambiguous

## LexisNexis(TM) Headnotes

### Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN1* Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. A factual dispute is "material" if it might affect the outcome of the case under the governing substantive law. Additionally, an issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

### Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN2* On summary judgment, it is not the court's role to weigh disputed evidence and decide which is more probative; rather, the court must consider evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the non-moving party. If a conflict arises between evidence presented by both sides, the court must accept as true the allegations of the non-moving party. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In doing so, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted.

### Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures

*HN3* The Employee Retirement Income Security Act (ERISA) requires that every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan. 29 U.S.C.S. § 1102(a)(1) (1988).

### Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

*HN4* The United States Supreme Court has outlined the standard of judicial review for claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001, as follows: A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Where a plan does provide such discretionary authority, the "arbitrary and capricious" or "abuse of discretion" standard of review shall be applied.

### Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

*HN5* Discretionary powers may be implied by a plan's terms even if not granted expressly.

### Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

*HN6* When the plan language at issue is ambiguous, it must then be construed against the defendant, and a de novo standard of review must be applied.

### Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies

*HN7* Plan language which requires a claimant to submit "proof" of a claim does, by its very nature, grant discretion to the plan administrator to determine eligibility for benefits. A policy that requires proof of eligibility satisfactory to the administrator has been held to vest an administrator with sufficient discretion to justify the more deferential arbitrary and capricious standard.

### Labor & Employment Law > Employee Retirement Income Security Act

**(ERISA) > Procedures**

*HN8*✛A plan administrator that requests "proof" of a claimant's disability must out of necessity examine the evidence submitted by the claimant to determine whether or not it amounts to "proof" of the alleged disability.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

*HN9*✛When a plan governed under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001, provides the administrator with discretionary authority to determine eligibility for benefits under the plan, a district court reviews such determinations under the arbitrary and capricious standard. Under that standard, the administrator's interpretation of the plan will not be disturbed if reasonable. That is, the district court may overturn a decision of the plan administrator only if it is without reason, unsupported by the evidence or erroneous as a matter of law. The scope of this review is narrow, and the court is not free to substitute its own judgment for that of the administrator to determine a participant's eligibility for plan benefits.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

*HN10*✛If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. The Third Circuit has concluded that if the plaintiff has established the existence of sufficient facts to prove the administrator of an Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001, plan has a conflict of interest, then the court may apply a modified arbitrary and capricious standard. However, a heightened standard of review is not required when a company "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**

*HN11*✛The Third Circuit has found that a conflict of interest may exist in the following situations: (a) where the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001, plan is unfunded, and the benefits come directly from the sponsor's assets, or (b) the plan is funded but the sponsor's contributions each year are determined by the cost of satisfying plan liabilities in the immediately preceding years.

**COUNSEL:** For ALAN R. KUTNER, ESQUIRE, PLAINTIFF: ARNOLD MACHLES, MACHLES AND RING, BALA CYNWYD, PA USA.

For UNUM LIFE INSURANCE COMPANY OF AMERICA, DEFENDANT: RICHARD L. MC MONIGLE, JR., JASON P. GOSSELIN, ESQ., POST & SCHELL, P.C., PHILA, PA USA.

**JUDGES:** RONALD L. BUCKWALTER, J.

**OPINIONBY:** RONALD L. BUCKWALTER

**OPINION: MEMORANDUM**

BUCKWALTER, J.

March 20, 2000

Presently before the Court in this Employee Retirement Income Security Act, 29 U.S.C. § 1001, ("ERISA"), is the Defendant UNUM Life Insurance Company of America's ("UNUM")

Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and Plaintiff Alan R. Kutner, Esquire's ("Kutner") responses thereto. For the reasons set forth below, UNUM's Motion will be granted.

## I. BACKGROUND

Kutner was 59 years old, and still practicing law, when he submitted his claim for total disability benefits to UNUM in July, 1997. By that time, he had been practicing law as a member [*2] of the Pennsylvania Bar for over 33 years. Prior to working as a defense litigator at the firm of Korn, Kline & Kutner from 1976 to 1991, Kutner spent three years as house trial counsel for Safeguard Insurance Company and five years as chief house counsel and trial counsel for Reliance Insurance Company doing exclusively personal injury defense trial work.

In 1991, Kutner left the Korn, Kline & Kutner firm and immediately formed his own firm, Alan R. Kutner & Associates. Because of the pressures of beginning a new practice, Kutner did not try any cases in 1991 and 1992. During the next five years, he tried "4, 6, 8, maybe 10" cases before a judge or jury, an average of 1-2 cases per year. Kutner's intention was to develop his personal practice and continue representing insurance companies and defendants in defense of personal injury cases. However, by 1997, although he continued to handle defense work, he primarily practiced plaintiffs' personal injury work.

Kutner first sought treatment for bilateral hearing loss in 1979. His hearing loss worsened during the following 15 years, and he began using a variety of hearing aids. On January 19, 1996, Kutner decided that the hearing loss [*3] finally rendered him totally disabled and he filed a claim for benefits based on this disability on July 8, 1997. As a result of his disability, Kutner advertised for an attorney to handle all of his trials and files because he believed that he could no longer handle them. Eventually, Kutner was able to hire a qualified attorney. Before finally deciding to file a claim for disability benefits, Kutner visited his otolaryngologist to determine if anything could be done to reverse his hearing loss and after finding that there was no such option available to him he made the instant claim.

Kutner continued to practice law after January 19, 1996. At that point, he had come to the realization that he could not try cases and was attempting to hire persons to take over his entire trial practice. However, while making such attempts, Kutner tried a case to verdict in March, 1996, attended several Continuing Legal Education courses, and attended a total of 8 depositions or statements under oath from January 1996 to January 1997 at which he always had an associate present.

On or about July 8, 1997, Kutner submitted a long-term disability claim to UNUM. He listed his occupation as "trial atty [*4] [sic]" and stated that on January 19, 1996, as a result of a progressive bilateral hearing loss, he became, was and remained totally disabled from that occupation. UNUM conducted an investigation of his claim, and by letter dated August 29, 1997, UNUM advised Kutner that it had completed its review of his claim and had determined that he did not qualify for disability benefits.

Kutner responded by letter dated August 29, 1997, requesting that UNUM reconsider its denial of his claim, and in response, UNUM forwarded his file to its Quality Review Unit for a review as provided by ERISA. The ERISA review was conducted and on or about December 24, 1997, Kutner received notice that the Quality Review Unit agreed with UNUM's refusal of benefits and his claim was again denied.

In the fall of 1997, Kutner decided to close his law offices but did not actually close the office until sometime in 1998. He then interviewed with a dozen or more law firms, and ultimately decided to become "of counsel" at the litigation firm of Master, Weinstein, Schnoll & Dodig, a

plaintiffs' personal injury firm in Philadelphia. Pursuant to this new position, Kutner signed an agreement, wherein he agreed to refer **[\*5]** new personal injury matters, except those with a settlement value of less than $ 30,000, to the Master Weinstein firm. Within the two years after his alleged date of total disability, Kutner brought between 75 to 125 cases to the Master Weinstein firm and he sent out announcements in an attempt to continue generating business and practicing law for the firm.

Kutner presently handles only one or two personal injury cases with the understanding that he can only handle them up to starting suit and then must refer them to other counsel. In addition, Kutner claims that he is attempting to handle corporate matters but has almost no activity in that regard. He has attended one or two residential real estate settlements and prepared a few wills. Kutner asserts that he is unable to evaluate personal injury cases, cannot conduct legal research, cannot control the hearing environment, cannot negotiate as effectively as he used to be able to, cannot always have amplification on a phone other than the one in his own office, cannot conduct a deposition with just one witness and cannot control who is present, and cannot generate new business.

## II. STANDARD

*HN1*Summary judgment is appropriate **[\*6]** "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). A factual dispute is "material" if it might affect the outcome of the case under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Additionally, an issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

*HN2*On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative; rather, the court must consider the evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the non-moving party. See id. at 255. If a conflict arises between **[\*7]** the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. See id.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In doing so, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-50.

## III. DISCUSSION:

### A. ERISA Standard of Review

*HN3*ERISA requires that "every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1) (1988). *HN4* **[\*8]**

The United States Supreme Court has outlined the standard of judicial review for claims under ERISA as follows: "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989). Where a plan does provide such discretionary authority, the "arbitrary and capricious" or "abuse of discretion" standard of review shall be applied. n1 Id. Therefore, the appropriate standard of review must be determined prior to discussing the merits of Kutner's claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Courts have found that the grant of discretion need not be contained in the express language of the plan, but may be implied from the plan language. See Bollenbacher v. Helena Chemical Co., 926 F. Supp. 781, 786 (N.D.Ind. Feb. 29, 1996); see also Donato v. Metropolitan Life Ins. Co., 19 F.3d 375 (7th Cir.1994).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## [*9]

UNUM's Long Term Disability Plan provides that disability benefits become payable "when we [UNUM] receive proof that you: 1. are disabled due to sickness or injury; and 2. require the regular attendance of a physician." This language is not the type that expressly confers upon UNUM the discretionary power that the Firestone inquiry required. However, it has been noted that "magic words (such as 'the committee has discretion to . . .') are unnecessary." See Bollenbacher v. Helena Chemical Co., 926 F. Supp. 781, 786 (N.D.Ind. Feb. 29, 1996) (citations omitted). Furthermore, the United States Court of Appeals for the Third Circuit has found that "discretionary powers may be implied by a plan's terms even if not granted expressly." Luby v. Teamsters health, Welfare & Pension Funds, 944 F.2d 1176, 1180 (3d Cir.1991). Therefore, while it does not appear from the face of the Plan that UNUM is granted discretion to determine disability eligibility of its plan participants, discretionary power seems to be implied in the Plan.

Kutner concedes that the discretionary authority may be implied from the plain language of the plan, and he appropriately asserts **[*10]** that the Plan must "unambiguously grant discretion for the abuse of discretion standard to apply." Williamson v. UNUM Life Ins. Co., 943 F. Supp. 1226, 1229 (C.D.Cal.1996). The Third Circuit has found that <sup>HN6</sup>when the plan language at issue is ambiguous, it must then be construed against the defendant, and a de novo standard of review must be applied. While Kutner insists that the Plan at issue is, at the least, ambiguous, I disagree. Furthermore, I think that the Plan, at the least, implies discretionary power to UNUM and therefore, the arbitrary and capricious standard shall be applied.

In Bollenbacher, the court found that <sup>HN7</sup>"plan language which requires a claimant to submit 'proof' of a claim does, by its very nature, grant discretion to the plan administrator to determine eligibility for benefits." Bollenbacher, 926 F. Supp. at 787. "A policy that requires proof of eligibility satisfactory to the administrator has been held to vest an administrator with sufficient discretion to justify the more deferential arbitrary and capricious standard." Sciarra v. Reliance Standard Life Ins. Co., 1998 U.S. Dist. LEXIS 13786, 1998 WL

564481, *7 (E.D.Pa. Aug 26, 1998);  **[*11]**  See e.g. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983-84 (6th Cir.1991)(finding arbitrary and capricious standard applied where disability determined "on the basis of medical evidence satisfactory to us."). In Sciarra, the policy conditions the receipt of benefits on the claimant's providing "satisfactory proof of a Total Disability to us." Id. Kutner argues that this wording is distinguishable from the case at bar, in that, it includes the modifier "satisfactory" before the word "proof of total disability." Therefore, Kutner contends that since this modifier has been held by a number of courts to change the level of deference to be given from that of a de novo review to that of an 'arbitrary and capricious' standard, its presence is necessary before the latter standard is appropriate. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Kutner continues to distinguish Sciarra by arguing that the language of the plan in that case required, "satisfactory of a Total Disability to us." (emphasis added). I find that this clarification is unnecessary, in that, the wording of the Plan sub judice states that disability benefits become payable when "we receive proof . . ." where "we" refers to UNUM.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## [*12]

In Bollenbacher, the court considered the inclusion of the modifier "satisfactory" in determining that its absence was not relevant to the application of the arbitrary and capricious standard of review. The court stated:

as a practical matter, it is difficult to detect a qualitative difference between plan language that requires a claimant to submit 'proof' and one that requires the submission of 'such due proof' or even 'satisfactory proof.' Indeed, adjectives like 'satisfactory' seem rather redundant when teamed with the concept of 'proof.'

Bollenbacher, 926 F. Supp. at 787. The court looked to the definition of "proof" n3 and reasoned that $^{HN8}$"[a] plan administrator that requests 'proof' of a claimant's disability must out of necessity examine the evidence submitted by the claimant to determine whether or not it amounts to 'proof' of the alleged disability. Id. Understandably, the court found that the terms of the plan impliedly granted discretionary power to the plan administrator.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N3 Black's Law Dictionary defines "proof" as "the effect of evidence; the establishment of a fact by evidence." Black's Law Dictionary 1093 (5th Edition 1979)(citations omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*13]**

In the case at bar, the Plan provides for the payment of disability benefits to any enrolled member in the event that the member meets the definition of a disability as set forth in the Plan. The Plan defines "disability" or "disabled" as, "because of injury or sickness you cannot perform each of the material duties of your regular occupation." "Partial disability" is defined as,because of injury or sickness you, while unable to perform all of the material duties of your regular occupation on a full-time basis, are: (a) performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and (b) currently earning at least 20% less per month than your indexed pre-disability earnings due to that same injury or sickness.

The Plan defines "injury" as "bodily injury resulting directly from an accident and indirectly of all other causes." "Sickness" is defined as "illness or disease. It includes pregnancy unless excluded in the General Exclusion section of this certificate of coverage." The Plan defines the term "physician" as a person who is:1. operating within the scope of his license; and either

2. **[*14]** licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

3. legally qualified as a medical practitioner and required to be recognized, under the policy for insurance purposes, according to the insurance statutes or the insurance regulations of the governing jurisdiction.

The Plan provides that in order for benefits to become payable, UNUM must be provided with "proof" that the claimant is disabled "due to sickness or injury" and requires the "regular attendance of a physician." Also, as stated supra, the Plan contains several definitions that, when applied to the "proof" language, implies that UNUM has discretionary power. Once UNUM receives the information that the claimant provides, the implication is that UNUM will evaluate the information to determine if the claimant has proved that he/she is disabled. There are several criteria set out in the wording of the Plan that direct the claimant as to what he/she needs to prove, and it seems apparent that it is the plan administrator that makes the final eligibility determination. Disability benefits under the Plan are not automatic, and a claimant bears the burden of demonstrating that he/she **[*15]** qualifies for such benefits. Essentially, if the claimant satisfies the terms of the Plan, the administrator will grant the applicant disability benefits.

In light of the above analysis, I will review Kutner's claim under the arbitrary and capricious standard.

## B. Arbitrary and Capricious

*HN9* When a plan governed under ERISA provides the administrator with discretionary authority to determine eligibility for benefits under the plan, a district court reviews such determinations under the arbitrary and capricious standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1997). Under that standard, the administrator's interpretation of the plan "will not be disturbed if reasonable." Id. at 114. That is, "the District Court may overturn a decision of the Plan Administrator only if it is 'without reason, unsupported by the evidence or erroneous as a matter of law.'" George Mitchell, 113 F.3d 433, 439 (3d Cir.1997). The scope of this review is narrow, and the court is not free to substitute its own judgment for that of the administrator to determine a participant's eligibility for plan **[*16]** benefits. See id.

## C. Conflict of Interest

Kutner contends that this Court should apply a heightened arbitrary and capricious standard of review, as an obvious conflict of interest exists. Kutner bases his contention is on an alleged conflict of interest under which UNUM labored as both the Plan Administrator and the insurer making benefit determinations. The Supreme Court, in Firestone Tire and Rubber Co. v. Bruch, noted that ᴴᴺ¹⁰🔑if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "'factor in determining whether there is an abuse of discretion.'" 489 U.S. at 115. "The Third Circuit has concluded that if the 'plaintiff has established the existence of sufficient facts to prove the administrator of an ERISA plan [has] a conflict of interest,' then the court may apply a 'modified arbitrary and capricious standard.'" Grabski v. Aetna, Inc., 43 F. Supp. 2d 521, 1999 WL 178368, *10 (E.D.Pa. 1999)(citing Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir.)). However, a heightened standard **[*17]** of review is not required when a company "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuance of benefits." Id. (citing Abnathya, 2 F.3d 40 at 45 n.5.).

Kutner asserts that since UNUM is both the Plan Administrator, and an insurer making benefit determinations which necessarily will impact its own bottom line, it is clearly under a conflict of interest of the nature contemplated by the Supreme Court in Firestone. In support of this assertion, however, Kutner provides the Court with nothing more than five pages of case law, followed by the conclusion that:here, there is no indication that UNUM functions as other than an insurer which benefits financially each time it denies a claim and suffers a financial loss each time it pays one. There is, therefore, no basis on which the Court could decline to apply the heightened arbitrary and capricious standard . . . .
Kutner has simply misplaced the burden that was set out by the Third Circuit in Kotrosits. UNUM does not have the burden of rebutting Kutner's assertion that there is a conflict of interest, but rather **[*18]** Kutner has the burden of providing the Court with specific evidence that a conflict exists. In the Memorandum of Law in Support of Kutner's Answer to UNUM's Motion for Summary Judgment, Kutner fails to cite to any exhibits in support of his conflict of interest argument. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Furthermore, Kutner has stated that UNUM's arbitrary and capricious decision to deny Kutner's claim for disability benefits is supported by UNUM's own admission that the plan administer in this case is Kutner himself. Kutner dedicated pages to his argument that a conflict of interest existed because UNUM was the plan administrator, yet on the heels of that argument, he suggests that he may be the plan administrator.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

ᴴᴺ¹¹🔑The Third Circuit has found that a conflict of interest may exist in the following situations: (a) where the plan is unfunded, and the benefits come directly from the sponsor's assets, or (b) the plan is funded but the sponsor's contributions each year are determined by the cost of satisfying plan liabilities in the immediately **[*19]** preceding years. Kotrosits, 970 F.2d at 1173. Kutner has failed to provide any evidence of this sort. This Court is unable to conclude that the Plan Administrator was operating under a conflict of interest and, therefore, a heightened level of scrutiny will not be applied to the arbitrary and capricious standard.

### D. UNUM's Denial of Total Disability Benefits

On August 29, 1997, Cathleen M. Smith, Senior Disability Benefit Specialist for UNUM informed Kutner that his disability claim was not approved. In the letter, Ms. Smith stated the reasons for UNUM's denial of the claim.As discussed with you, in order to be considered eligible for long term disability benefits, you must be unable to perform each of the material duties of the occupation of an Attorney. As you may know the occupation of an attorney includes a variety of different specialties [sic] within the general economy. Please note that the policy under which you are covered does not specifically insure you for any particular specialty.

We understand that you are no longer able to try cases in a large forum. However, you indicated to me that you retain the capacity to perform a substantial **[*20]** number of duties material to the occupation of an attorney which include: meeting with clients, preparing, advising junior lawyers, attending pretrial conferences.

. . . You have demonstrated the ability to continue working in the occupation of an attorney and you have continued to perform a substantial number of the material duties of an attorney, since your claimed disability onset date of January 1, 1996.
As the letter states, UNUM denied Kutner's application for disability benefits because they concluded that under the terms of the Plan, Kutner was not disabled, in that, he was able to perform several of the material duties of his regular occupation.

Kutner contends that his "regular occupation" was that of a "trial attorney," and that he informed UNUM of this in the policy. Therefore, Kutner asserts that UNUM should have made the eligibility determination based on his ability to perform the material duties of that particular occupation, as he carried on that occupation at the time he was injured. UNUM challenges the relevance of Kutner's assertion in this respect.

Although he was unable to provide his exact number of trials between 1991 and 1996, Kutner testified **[*21]** in his deposition that he "didn't try too many cases in 1991 and 1992," but from 1992 through 1996 he did try "four, six, eight maybe ten" trials. Notwithstanding this fact, Kutner argues that since he is insured as a "trial attorney," and is unable to perform the "material and substantial duties" of his occupation as a trial lawyer, he is totally disabled within the meaning of the policy. In the alternative, Kutner contends that at the least, there exists an ambiguity in the Plan's definition of "disability," and therefore, the Court should "construe the language most strongly against the insurer and accept the construction most favorable to the insured." See D'Allessandro v. Durham Life Ins. Co., 503 Pa. 33, 467 A.2d 1303, 1305 (1984).

UNUM's second review of Kutner's claim resulted in the affirmation of the previous decision to deny his claim. In a letter dated December 24, 1997, UNUM's Senior Benefit Analyst informed Kutner that his claim was denied after review of his claim file and medical records was completed. UNUM acknowledged that his hearing loss had, in fact, affected his ability to perform courtroom duties, however, UNUM found that based on Kutner's **[*22]** own admission, he continued to perform many of the duties of an attorney. The December 24, 1997 letter stated further that during an interview which was included in the Administrative Record, Kutner stated that he continued to function as a "rainmaker" and manager of his firm. He also stated that he continued to meet with clients, contact other attorneys by phone or via correspondence, file motions, advise junior attorneys, attend pretrial conferences, and prepare documents.

During its review, UNUM utilized a vocational consultant who determined that Kutner continued to perform duties typical to that of a trial attorney. UNUM concluded that Kutner's hearing loss did not meet the Plan's definition of disability and therefore, UNUM declined to

disagree with the prior claim denial.

In light of the evidence that was before the plan administrator in this case, this Court is unable to find that there was anything arbitrary or capricious about the determination. The terms of the plan are not ambiguous, but even had I found them to be and construed them in favor of Kutner, I am unable to conclude that UNUM's determination was arbitrary or capricious. Based on the evidence before UNUM, it **[*23]** is obvious that Mr. Kutner was able to perform several of the material duties that coincide with the duties of a trial attorney. As the parties to this litigation know, the duties of a trial attorney extend much beyond those which take place in the courtroom. UNUM was provided with Kutner's own admission that while he may no longer be able to try cases in a courtroom, he is most certainly able to perform several of the duties of a trial attorney.

### IV. CONCLUSION

Based on the record, this Court concludes that UNUM's decision to deny Kutner's claim for disability benefits was not arbitrary or capricious. Therefore, that decision to deny benefits is affirmed. For all of the foregoing reasons, UNUM's Motion for Summary Judgment is granted and the case is dismissed. An appropriate order follows.

### ORDER

AND NOW, this 20th day of March, 2000, upon consideration of Defendant UNUM Life Insurance Company of America's Motion for Summary Judgment, and Plaintiff Alan R. Kutner, Esquire's Responses thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED.

Judgment is entered in favor of Defendant UNUM Life Insurance Company of America and against Plaintiff **[*24]** Alan R. Kutner, Esquire.

This case shall be marked CLOSED.

BY THE COURT:

RONALD L. BUCKWALTER, J.

Back to Summary Report                    PREV 4 of 4