UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| EDWARD HELLER, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION |
| | ) FILE NO. 04-11875 - WGY |
| CAP GEMINI ERNST & YOUNG WELFARE | ) |
| PLAN (RE: ACCIDENTAL DEATH BENEFITS), | ) |
| AMERICAN INTERNATIONAL LIFE ASSURANCE) | |
| COMPANY OF NEW YORK, and CAPGEMINI | ) |
| U.S. LLC | ) |
| | ) |
| Defendants | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff OPPOSES the defendants' motions for summary judgment for the

following reasons

### I. THIS COURT SHOULD ALLOW PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENY THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

*A. Because The Defendants Have Failed to Satisfy Their Burden of Demonstrating That The AD&D Plan Gave Discretionary Authority to AIG, This Court Should Review AIG's Decision to Deny Benefits De Novo*

As explained by this Court in Radford Trust v. First Unum Life Insurance

Company of America, 321 F.Supp.2d 226, 238-239 (D. Mass. 2004):

> Courts review a denial of benefits under an ERISA-governed benefits plan
> *de novo*, unless the plan "gives the administrator or fiduciary discretionary
> authority to determine eligibility for benefits or to construe the terms of
> the plan," in which case the question is whether the denial was arbitrary
> and capricious. See Firestone Tire & Rubber Co v. Bruch , 489 U.S. 101,
> 114-15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Recupero v. New England
> Tel. and Tel. Co., 118 F.3d 820, 826-27 (1st Cir. 1997). ...

1

As such, the review by this Court is *de novo*, unless and until the defendants demonstrate that the AD&D Plan gave AIG discretionary authority. It is clear that the Plan Administrative Document gave CGE&Y, as Plan Administrator, discretionary authority.(AR p. CG00028-29) However, because it is undisputed that the defendant AIG, not CGE&Y, made and communicated the decision denying benefits, AIG cannot rely on this Plan language. Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 583-584 (1st Cir. 1993) (where relevant plan documents gave plan fiduciaries discretionary authority, but plan administrator (who was not also a plan fiduciary) actually made the decision; *de novo,*, not arbitrary and capricious, standard of review appropriate). In its memorandum, CGE&Y notes the language of the SPD "echoes" the language of the Plan Administration Document. (CGE&Y Memo at p. 6) Whatever this may mean, it is not sufficient to give AIG discretionary authority. AIG asserts that CGE&Y delegated its discretionary authority to AIG. (AIG Memo at pp. 2, 6) Certainly, the Plan Administrative Document states that such delegation is possible, but no procedures for such delegation (as required by ERISA) were set forth in the Plan Administrative Document. Cf. Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 584 and n. 6 (1st Cir. 1993) ("ERISA allows named fiduciaries to delegate responsibilities... *through express procedures* provided in the plan." (emphasis added)) AIG points to certain language in the SPD as proof of the delegation of discretionary authority. (AIG Memo pp. 2, 6) First, this appears to be impermissible bootstrapping, because there is no evidence of the procedures necessary for a proper delegation, nor any evidence that those procedures were followed in preparation of the SPD. Second, as discussed below, the SPD was never properly "furnished" to Patricia Heller as required

2

by ERISA, so neither defendant should be permitted to rely upon the SPD as evidence of delegation in this case.

### 1. Because CGE&Y Failed to Properly Furnish the Summary Plan Description to Patricia Heller as Required By ERISA, This Court Should Ignore the Summary Plan Description in Deciding This Case

ERISA requires that participants be "furnished" a summary plan description (SPD). 29 U.S.C. §§1021-1024. There is no dispute that CGE&Y, through Fidelity, prepared an SPD for the AD&D Plan. (AR AIG 00084-00100) However, there is a dispute about whether CGE&Y properly "furnished" the SPD to Patricia Heller as required by ERISA. ERISA regulations distinguish between making information available to participants and furnishing information to participants. 29 C.F.R. §2510.104b-1(a) (disclosure takes three forms including furnishing material to participants at certain times, furnishing material upon participant request, and making material available for inspection by participants) Where ERISA requires that materials, including, but not limited to SPD's, be furnished to participants, the relevant ERISA regulations require administrators to "use measures reasonably calculated to ensure *actual receipt* of the material by plan participants..." (emphasis added) 29 C.F.R. §2510.104b-1(b)(1); Leyda v. AlliedSignal Inc. 322 F.3d 199, 202-203, 208-209 (2d Cir. 2003). CGE&Y does not contend that it furnished Patricia Heller with a written copy of the SPD. Rather, CGE&Y states that it made the SPD "available" to Patricia Heller electronically through its HR Portal and its Fidelity website.(AR p. CG00047, and CG000049) Although 29 C.F.R. §2510.104b-1(c) permits "disclosure through electronic media", it requires that:

> [t]he administrator take[] appropriate and necessary measures reasonably calculated to ensure that the system for furnishing documents—(A) Results in

3

> actual receipt of transmitted information (e.g. using return–receipt or notice of undelivered electronic mail features, conducting periodic reviews or surveys to confirm receipt of the transmitted information)

CGE&Y's "distribution" method appears to fail in two important respects: First, there is no evidence that CGE&Y transmitted the SPD to Patricia Heller. Rather, GCE&Y states that the SPD was (passively) made available on the HR Portal (or Fidelity website); both of which required Patricia Heller to take some action to review it. This passive method of "distribution" does not appear to comport with the requirements of 29 C.F.R. §2510.104b-1(b) and (c) requiring active transmission to the participant. Compare 29 C.F.R. §2510.104b-1(b)- ("in no case is it acceptable to merely place copies of the material in a location frequented by participants."); Sedlack v. Braswell Services Group Inc., 134 F.3d 219, 227 (4th Cir. 1998) (where ERISA (§1024(b)(4)) required that plan administrator furnish material upon request of participant, simply making material available for copying does not satisfy ERISA duty to furnish). Second, CGE&Y has failed to provide any evidence of actual receipt of the SPD by Patricia Heller (or other any other participant) (e.g. return –receipt etc.). Leyda v. AlliedSignal Inc. 322 F.3d 199, 202-203, 208-209 (2d Cir 2003) (where employer gave notice of meeting to each employee (where employer distributed SPD's), held not sufficient to comply with requirement that steps be designed to ensure actual receipt of the SPD, because, among other things, employees might have been too busy to attend meetings). Because CGE&Y failed to take steps ensure that Patricia Heller actually received a copy of the SPD, this Court should ignore the SPD in analyzing plaintiff's entitlement to benefits in this case.

In the absence of the SPD, there is no basis for AIG's claim to discretionary authority. Therefore this Court's review should AIG's decision to deny benefits *de novo*.

4

### B. The Defendants Have Failed to Demonstrate that Patricia Heller's Coverage Terminated on January 24, 2003

Although it is not clear from the defendants' Memoranda (in particular in AIG's Memorandum at pp. 3, and 8 which quotes the language of the SPD, but leads the reader to believe that it is quoting the Group Policy), comparison of the SPD and Group Policy reveals a conflict as to the date coverage terminates. The relevant portion of the Group Policy provides that coverage ceases "the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application" (AR AIG00060); while the SPD states that coverage terminates when "You are no longer employed by a participating employer." (AR p. AIG00092) Because the SPD expressly states that in the event of a conflict, the terms of the Group Policy control, (AR p. AIG00085), (and, as discussed above, CGE&Y never properly "furnished" the SPD to Patricia Heller in any event), this Court should ignore the language of the SPD in deciding these motions.

Examination of the language of the Group Policy reveals an ambiguity as to the date coverage terminated. The language of the Group Policy is not self explanatory- it requires reference to the Master Application (coverage ends "(4) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Master Application" (AR AIG00060)). The Master Application describes Class 1 as –"All active full-time employees working an average of 30 hours per week." (AR p. AIG00054) Neither the word "active", nor the manner for determining when an employee is working "30 hours per week" is defined in the either Master Application or Group Policy. The unique facts of this case, including but not limited to the fact that Patricia Heller left CGE&Y on Friday January 24, 2003

after working a full week, and died in a taxi cab accident the following Wednesday, and

CGE&Y's standard payroll practice of deducting the full premiums from final paychecks

of departing employees, (in Patricia Heller's case for both the weeks ending January 24,

and 31), create an ambiguity as to whether Patricia Heller worked an average of 30 hours

per week during January 2003.Cf. Tester v. Reliance Standard Life Ins. Co., 228 F.3d

372 (4th Cir. 2000) (where insurer claimed participant ceased to be eligible member of

class on her last day at work, but ambiguity existed concerning active employee

requirement, coverage found); Canada Life Assur. Co. v. Lebowitz, 185 F.3d 231 (4th

Cur. 1999) (where employer/administrator deducted premiums for participant, conclusive

evidence that employer considered employee covered); Lichtenberger v. Superior Oil,

392 N.E.2d 430, 73 Ill.App.3d 805 (Ill. 1979) (where insurer contended coverage

terminated on last day employee actually at work, but policy, read as a whole, combined

with fact that premiums had been paid, coverage found through later date). Because

ambiguities are construed against the drafter, Hughes v. Boston Mutual Life Ins. Co. 26

F.3d 264, 268 (1st Cir. 1994); Radford Trust v. First Unum Life Insurance Company of

America, 321 F.Supp.2d 226, 243 (D. Mass. 2004), the defendants have not conclusively

established that Patricia Heller's coverage terminated on January 24, 2003.

*C. Even Assuming Deferential Review, The Plaintiff Has Demonstrated That The
Defendants Acted With Bias, in Bad Faith, and Not In Accordance With the Plan, Such
that the Denial Decision Was Unreasonable*

As demonstrated in Plaintiff's Memorandum in Support of his Motion for Summary

Judgment (at pp. 14-20), the undisputed facts establish that even assuming a deferential

standard of review, the defendants' decision was unreasonable as matter of law due,

among other things, to their repeated failure to address Mr. Heller's premium payment

claim in good faith, and their repeated misleading statements concerning the period through which premiums had been paid.[1]

*D. In Any Event, The Plaintiff Has Demonstrated That The Defendants, By Retaining Unearned Premium, Waived Their Right to Deny Benefits*

As demonstrated in Plaintiff's Memorandum in Support of his Motion for

Summary Judgment, this Court has the authority to fashion a remedy under the federal common law of ERISA based on waiver principles. Furthermore, the facts of this case justify a finding that the defendants waived their right to claim that Patricia Heller's coverage terminated on January 24, 2003 because they should not be permitted to assert that Patricia Heller's coverage terminated on January 24, 2003, and at the same time refuse to refund the unearned premium for the period January 25, 2003 to January 31, 2003. (See Plaintiff's Memo at pp. 2-14)

## CONCLUSION

Based on the foregoing points and authorities, (and those contained in Plaintiff's Memorandum in Support of His Motion for Summary Judgment) the plaintiff Edward Heller respectfully requests that this Court **DENY** the defendants' Motions for Summary Judgment and **ALLOW** plaintiff's Motion for Summary Judgment.

EDWARD HELLER
By his attorney,

Joseph H. Skerry, III
BBO# 544124
237 Lexington Street

---

[1] Plaintiff notes that, in addition to the facts set forth in his Rule 56.1 Statement, in its motion papers CGE&Y introduced a new Exhibit (#7) which, as discussed in Plaintiff's Response to Capgemini's Summary Judgment Facts, (¶13) discloses that CGE&Y high level employees attempted to mislead Mr. Heller concerning this issue.

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| EDWARD HELLER, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION |
| | ) FILE NO. 04-11875 - WGY |
| CAP GEMINI ERNST & YOUNG WELFARE | ) |
| PLAN (RE: ACCIDENTAL DEATH BENEFITS), | ) |
| AMERICAN INTERNATIONAL LIFE ASSURANCE | ) |
| COMPANY OF NEW YORK, and CAPGEMINI | ) |
| U.S. LLC | ) |
| | ) |
| Defendants | |

## PLAINTIFF'S RESPONSE TO DEFENDANT AIG'S STATEMENT OF THE MATERIAL FACTS ON SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF ADDITONAL MATERIAL FACTS

Pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1, the plaintiff Edward Heller

responds to defendant American International Life Assurance Company of New York's

(**AIG's**) Local Rule 56.1 Statement of the Material Facts on summary judgment.

1) Admitted.

2) Admitted. But, Plaintiff contends that the Plan lacked procedures for such

   delegation as required by ERISA (Plaintiff's Memorandum in Opposition to

   Defendants' Motions for Summary Judgment at p. 2)

3) Denied. Plaintiff contends that: (i) the Plan lacked procedures for such delegation

   required by ERISA; (ii) there is no evidence the procedures were followed and

   (iii) the SPD was not properly furnished to Patricia Heller, so for the purposes of

1

this case there was no effective delegation. (Plaintiff's Memorandum in

Opposition to Defendants' Motions for Summary Judgment at pp. 2-4).

4)  Denied. (See Response to Fact #3 above and Plaintiff's Memorandum in

Opposition to Defendants' Motions for Summary Judgment at pp 2-4)

5)  Admitted. But, Plaintiff contends the relevant provisions of the Group Policy are

ambiguous (Plaintiff's Memorandum in Opposition to Defendants' Motions for

Summary Judgment at pp 5-6)

6)  Admitted. But, plaintiff contends Patricia's coverage never ended, therefore the

conversion provisions of the Plan are irrelevant to plaintiff's claim. (Plaintiff's

Memorandum in Support of His Motion for Summary Judgment and Plaintiff's

Memorandum in Opposition to Defendants' Motions for Summary Judgment.)

7)  Admitted.

8)  Admitted.

9)  Admitted.

10) Admitted.

11) Admitted. But, Plaintiff contends Patricia's coverage never ended, therefore the

conversion provisions of the Plan are irrelevant to plaintiff's claim. (Plaintiff's

Memorandum in Support of His Motion for Summary Judgment and Plaintiff's

Memorandum in Opposition to Defendants' Motions for Summary Judgment.)

12) Admitted. But plaintiff objects to the use of the phrase "severing her employment

relationship" The materials cited by AIG do not establish this fact. The

Administrative Record pages establish that Patricia died as a result of injuries she

suffered when the taxi cab she was riding in crashed into a tree in Atlanta,

2

Georgia. The affidavit of Ms. Zimmerman adds nothing because she has no personal knowledge.

13) Admitted.

14) Admitted.

15) Admitted. Plaintiff further notes that both defendants admit that the $12.00 represented the premium for the period January 16, 2003 to January 31, 2003, and no refund or rebate was ever provided of the unearned premium for the period January 25, 2003 through January 31, 2003. (AIG's Memorandum in Support of Summary Judgment at p. 4; Capgemini's Summary Judgment Facts #8-10; A.R. p. CG00047; Plaintiff's Facts #21-25))

16) Admitted.

17) Plaintiff admits AIG reached such a decision, and communicated the decision by letter dated June 23, 2003, but plaintiff contends that the decision was unreasonable and erroneous, and further, that by retaining the unearned premium for Patricia's coverage for the period January 25, 2003 to January 31, 2003, AIG waived its right to claim that Patricia's coverage terminated prior to her January 29, 2003 accidental death. (Plaintiff's Memorandum in Support of His Motion for Summary Judgment and Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment.)

18) Plaintiff admits that he filed an appeal of AIG's June 23, 2003 decision denying him the AD&D benefits, and that by letter dated December 11, 2003 AIG denied his appeal;, but Plaintiff contends that because AIG completely ignored the basis for Mr. Heller's appeal, its decision was unreasonable, and in any event, because

3

it failed to rebate the unearned premium for Patricia's coverage for the period

January 25, 2003 to January 31, 2003, AIG waived the right to claim that

Patricia's coverage terminated prior to her January 29, 2003 accidental death.

(Plaintiff's Memorandum in Support of His Motion for Summary Judgment and

Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary

Judgment.)

19) Plaintiff admits that AIG has quoted the reasons for its denial but Plaintiff

contends that because AIG completely ignored the basis for Mr. Heller's appeal,

its decision was unreasonable, and in any event, because it failed to rebate the

unearned premium for Patricia's coverage for the period January 25, 2003 to

January 31, 2003, AIG waived the right to claim that Patricia's coverage

terminated prior to her January 29, 2003 accidental death. (Plaintiff's

Memorandum in Support of His Motion for Summary Judgment and Plaintiff's

Memorandum in Opposition to Defendants' Motions for Summary Judgment.)

20) Admitted

21) Admitted.

22) Admitted. (See Plaintiff's Memorandum in Support of his Motion for Summary

Judgment and Plaintiff's Memorandum in Opposition to Defendants' Motions for

Summary Judgment)

## ADDITIONAL FACTS DEMONSTRATING THAT PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT SHOULD BE DENIED

Plaintiff hereby incorporates his Rule 56.1 Statement of Material Facts in Support

of his Motion for Summary Judgment (as amended to include the additional facts

4

established by Ex. 7 of CGE&Y's Submission and CGE&Y's June 13, 2003 letter to

Mr. Heller, all as discussed in Plaintiff's response to CGE&Y's Fact #13).

EDWARD HELLER
By his attorney,

Joseph H. Skerry III
BBO# 544124
237 Lexington Street
Woburn, Massachusetts 01801
781-938-1301
781-938-1344
jayskerry@rcn.com

CERTIFICATE OF SERVICE
I Joseph H. Skerry, III hereby certify that I served the forgoing by mail on counsel of record.

March 25, 2005

Joseph H. Skerry, III

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

EDWARD HELLER,                                    )
                                                  )
        Plaintiff,                                )
vs.                                               )        CIVIL ACTION
                                                  )        FILE NO. 04-11875 - WGY
CAP GEMINI ERNST & YOUNG WELFARE                  )
PLAN (RE: ACCIDENTAL DEATH BENEFITS),             )
AMERICAN INTERNATIONAL LIFE ASSURANCE)
COMPANY OF NEW YORK, and CAPGEMINI                )
U.S. LLC                                          )
                                                  )
        Defendants

## **PLAINTIFF'S** RESPONSE TO DEFENDANT **CAPGEMINI'S** STATEMENT OF THE MATERIAL FACTS ON SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

Pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1, the plaintiff Edward Heller

responds to Defendant **Capgemini's** Statement of the Material Facts on summary

judgment.

1) Admitted.

2) Admitted. But, Plaintiff contends that because CGE&Y failed to properly furnish

the SPD to Patricia Heller as required by ERISA, the SPD should be ignored in

deciding this case. (See Plaintiff's Fact #15 (no written copy provided- merely

made available electronically on websites); Plaintiff's Memorandum in

Opposition to Defendants' Motions for Summary Judgment- at pp. 3-5--ERISA

requires active transmission, not passive making material available).

1

3) Admitted But, Plaintiff contends that because Patricia's coverage never ended prior to her January 29, 2003 accidental death (because, among other things, premiums were paid through January 31, 2003), the conversion provisions of the Plan are irrelevant to plaintiff's claim. (Plaintiff's Memorandum in Support of His Motion for Summary Judgment and Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment).

4) Admitted. But, Plaintiff contends that the terms of the Group Policy are ambiguous. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at pp 5-6)

5) Admitted. But, the undisputed facts demonstrate that AIG, not CGE&Y, made and communicated the decisions denying benefits, hence this language is irrelevant. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at p. 2)

6) In all other instances in its Facts, Capgemini has quoted the relevant document. This does not appear to be a quote, but plaintiff admits the terms of the Master Application speak for themselves. Plaintiff further notes that the provisions of the Group Policy are ambiguous. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at pp5-6)

7) Admitted.

8) Admitted.

9) Admitted.

10) Admitted.

11) Admitted

2

12) Admitted.

13) Admitted. And further responding, plaintiff notes that by e mail dated June 10,

2003 Mr. Heller informed Laurie Jadick-Geiger, Associate Director of CGE&Y,

of his conversation with AIG the day before about the likely denial of his claim

for benefits. (See Capgemini's Summary Judgment Submission Ex. 7- For the

convenience of the Court a copy of Capgemini's Ex 7 is attached hereto; see also

Plaintiff's Facts #37-38) In his June 10, 2003 e mail, Mr. Heller informed

CGE&Y that AIG was basing its decision on erroneous information. (CGE&Y

Submission Ex. 7) The AIG representative told Mr. Heller "that she had been told

the insurance premiums has (sic) stopped prior to Pat's death." (See Capgemini's

Ex7 and Plaintiff's Facts #37-38.) Mr. Heller informed CGE&Y " That is clearly

not the case if one looks at Pat's last pay stub." (CGE&Y Submission Ex. 7; see

also Plaintiff's Facts #37-38)) Upon receipt of the e mail from Mr. Heller, Ms.

Jadick-Geiger (Associate Director of CGE&Y) forwarded the e mail to Josephine

Hughes (CGE&Y HR Director), and Jodie Kontowicz (acting Chief People

Officer), stating that she needed their advice because Mr. Heller was not satisfied

with what he was being told. (Capgemini Submission Ex. 7) Josephine Hughes

asked Tracy McGee (Associate Director of CGE&Y) to review the issue and to

set up a conference call with Josephine Hughes, Laurie Jadick-Geiger and Tracy

McGee to "discuss and agree upon our unified approach to communicating with

ED (sic)" (Capgemini Submission Ex. 7) Three days later, on June 13, 2003,

Josephine Hughes sent a letter to Mr. Heller, (copy attached hereto) which among

other things, stated that:

3

a. "As you know, CGE&Y does not determine eligibility for benefits once a claim has been submitted. That responsibility, per the AD&D Plan, is within the sole discretionary authority of AIG." [This statement appears to be at odds with AIG's June 23, 2003 letter which stated that CGE&Y had both determined when premiums were paid through and when Patricia's coverage terminated. (Plaintiff's Fact #42)]

b. "The payroll deduction taken from her final pay in the amount of $12.00 was for the period of coverage fro January 16, 2003 through January 25, 2003, her last day of employment." [This statement is at odds with CGE&Y's April 28, 2003 e mail to AIG (Plaintiff's Fact #33), its July 31, 2003 letter to Mr. Heller (Plaintiff's Fact #47); its May 28, 2004 letter to counsel for Heller (AR p. CG00047), and its proposed Summary Judgment Facts #8-10). This earlier letter also explains why, in August 2003, CGE&Y insisted that Ms. Oldham issue a modified (and "softened") letter to Mr. Heller on August 13, 2003, attempting to alter her more candid July 31, 2003 letter to him. (Plaintiff's Facts #47-48). Plaintiff would like to be able to inform the Court of Ms. Oldham's job title and role in the handling of this claim. Capgemini has objected to providing such information as irrelevant and inadmissible. (See exchange of e mails between counsel dated February 26, 2005 and February 28, 2005, copy attached hereto)

14) Admitted.

15) Admitted.

16) Admitted.

4

17) Admitted.

18) Admitted. Plaintiff notes that AIG did not provide responses to all inquires. (See Plaintiff's Fact #56.)

19) Admitted

20) Admitted Plaintiff notes that Capgemini did not provide a response to all inquiries. For example, the April 2, 2004 letter sought a description of the manner in which premiums were collected by CGE&Y and transmitted to AIG. A.R. p. CG0043- item #8. Capgemini's May 28, 2004 letter provided an inadequate response. (See also Plaintiff's Facts #58)

21) Admitted. But plaintiff contends that CGE&Y's attempt in the December 20, 2004 letter to alter the administrative record as to Patricia Heller's (non) receipt of a VP Continuation of Benefits Summary should be denied. See Plaintiff's Motion to Strike the affidavit of Ms. Jadick-Geiger. Plaintiff also disputes that CGE&Y properly furnished a copy of the SDP to Patricia Heller. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at pp. 3-4)

22) Admitted. But, Plaintiff contends that because Patricia's coverage never ended, the conversion provisions of the Plan are irrelevant to plaintiff's claim. (Plaintiff's Memorandum in Support of His Motion for Summary Judgment and Memorandum in Opposition to Defendants' Motions for Summary Judgment)

## ADDITIONAL FACTS DEMONSTRATING THAT PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Plaintiff hereby incorporates his Rule 56.1 Statement of Material Facts in Support of his Motion for Summary Judgment (as amended to include the additional facts established by Ex. 7 of Capgemini's Summary Judgment Submission and CGE&Y's

5

June 13, 2003 letter to Mr. Heller discussed above in response to Capgemini Fact

#13)

EDWARD HELLER
By his attorney,

Joseph H. Skerry, III
BBO# 544124
237 Lexington Street
Woburn, Massachusetts 01801
781-938-1301
781-938-1344
jayskerry@rcn.com

CERTIFICATE OF SERVICE
I Joseph H. Skerry, III hereby certify that I served the forgoing by mail on counsel of record.

March 25, 2005

Joseph H. Skerry, III

6

## Hughes, Josephine P.

**From:** Hughes, Josephine P.
**Sent:** Friday, June 13, 2003 5:56 PM
**To:** Jadick-Geiger, Laurie; McGee, Tracey
**Cc:** Kontowicz, Jodie
**Subject:** FW: Follow-up on the AIG Insurance Claim - Pat Heller

Laurie and Tracey
    Here is the final version of the letter we discussed (including Neal's edits) which I sent today to Ed Heller.  Regards.  JO

-----Original Message-----
**From:** Hughes, Josephine P.
**Sent:** Tuesday, June 10, 2003 1:20 PM
**To:** McGee, Tracey
**Cc:** Jadick-Geiger, Laurie; Dascalu, Michele D.
**Subject:** FW: Follow-up on the AIG Insurance Claim - Pat Heller

Tracey
    Please review.  Our research indicated from the beginning that Pat would not be eligible for AD&D since coverage ended on her last day of work with CGE&Y and she had not covered to an individual policy prior to her death.
Michele
    Could you set up a brief (1/2 hour) call with me, Laurie and Tracey ASAP?  We need to discuss and agree upon our unified approach to communicatng with ED (who will quickly get back to him, the message, etc.) .  Thanks.  JO

-----Original Message-----
**From:** Jadick-Geiger, Laurie
**Sent:** Tuesday, June 10, 2003 11:54 AM
**To:** Hughes, Josephine P.; Kontowicz, Jodie
**Subject:** FW: Followup on the AIG Insurance Claim - Pat Heller

I need your advise here
Ed is not satisfied with what he is being told


## Laurie

Laurie Jadick-Geiger
Associate Director / Services PRM
office: 917-934-8822  capcom: 8655234
IM: lauriejadick

-----Original Message-----
**From:** EDHELLER@aol.com [mailto:EDHELLER@aol.com]
**Sent:** Tuesday, June 10, 2003 10:42 AM
**To:** Jadick-Geiger, Laurie
**Subject:** Followup on the AIG Insurance Claim - Pat Heller

Laurie,

Yesterday I received word from Jill Vivian at AIG Claims Services that she had recommended that the AD & D claim under Pat's insurance throiugh CGEY be denied.  She submitted this recomendation to her management for review.  This outcome will not ' atisfactory to me.

This recommendation was based at least in part on information that is erroneous.  She stated that she had been told the insurance premiums has stopped prior to Pat's death.  That is clearly not the case if one looks at Pat's last pay stub.

4/20/2004

In addition, she seemed to be of the opinion that the 31 day conversion option did not apply. Both the CGEY Benefits documentation and the AD&D Summary Plan Description read otherwise (page 10), if premiums are current.

I have learned from insurance industry resources that it is standard practice to cover claims within the 31 conversion period. For out of four companies surveyed supported this practice.

, hope you are able to help get this matter can be cleared up without a more extensive or expensive process.

Thank you for your asistance.

Regards,
Ed Heller

4/20/2004