UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| EDWARD HELLER,<br><br>    Plaintiff,<br>vs.<br><br>CAP GEMINI ERNST & YOUNG WELFARE<br>PLAN (RE: ACCIDENTAL DEATH BENEFITS),<br>AMERICAN INTERNATIONAL LIFE ASSURANCE<br>COMPANY OF NEW YORK, and CAPGEMINI<br>U.S. LLC<br><br>    Defendants | CIVIL ACTION<br>FILE NO. 04-11875 - WGY |

## PLAINTIFF'S RESPONSE TO DEFENDANT CAPGEMINI'S STATEMENT OF THE MATERIAL FACTS ON SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

Pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1, the plaintiff Edward Heller responds to Defendant **Capgemini's** Statement of the Material Facts on summary judgment.

1) Admitted.

2) Admitted. But, Plaintiff contends that because CGE&Y failed to properly furnish the SPD to Patricia Heller as required by ERISA, the SPD should be ignored in deciding this case. (See Plaintiff's Fact #15 (no written copy provided- merely made available electronically on websites); Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment- at pp. 3-5--ERISA requires active transmission, not passive making material available).

1

3) Admitted But, Plaintiff contends that because Patricia's coverage never ended prior to her January 29, 2003 accidental death (because, among other things, premiums were paid through January 31, 2003), the conversion provisions of the Plan are irrelevant to plaintiff's claim. (Plaintiff's Memorandum in Support of His Motion for Summary Judgment and Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment).

4) Admitted. But, Plaintiff contends that the terms of the Group Policy are ambiguous. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at pp 5-6)

5) Admitted. But, the undisputed facts demonstrate that AIG, not CGE&Y, made and communicated the decisions denying benefits, hence this language is irrelevant. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at p. 2)

6) In all other instances in its Facts, Capgemini has quoted the relevant document. This does not appear to be a quote, but plaintiff admits the terms of the Master Application speak for themselves. Plaintiff further notes that the provisions of the Group Policy are ambiguous. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at pp5-6)

7) Admitted.

8) Admitted.

9) Admitted.

10) Admitted.

11) Admitted

12) Admitted.

13) Admitted. And further responding, plaintiff notes that by e mail dated June 10, 2003 Mr. Heller informed Laurie Jadick-Geiger, Associate Director of CGE&Y, of his conversation with AIG the day before about the likely denial of his claim for benefits. (See Capgemini's Summary Judgment Submission Ex. 7- For the convenience of the Court a copy of Capgemini's Ex 7 is attached hereto; see also Plaintiff's Facts #37-38) In his June 10, 2003 e mail, Mr. Heller informed CGE&Y that AIG was basing its decision on erroneous information. (CGE&Y Submission Ex. 7) The AIG representative told Mr. Heller "that she had been told the insurance premiums has (sic) stopped prior to Pat's death." (See Capgemini's Ex7 and Plaintiff's Facts #37-38.) Mr. Heller informed CGE&Y " That is clearly not the case if one looks at Pat's last pay stub." (CGE&Y Submission Ex. 7; see also Plaintiff's Facts #37-38)) Upon receipt of the e mail from Mr. Heller, Ms. Jadick-Geiger (Associate Director of CGE&Y) forwarded the e mail to Josephine Hughes (CGE&Y HR Director), and Jodie Kontowicz (acting Chief People Officer), stating that she needed their advice because Mr. Heller was not satisfied with what he was being told. (Capgemini Submission Ex. 7) Josephine Hughes asked Tracy McGee (Associate Director of CGE&Y) to review the issue and to set up a conference call with Josephine Hughes, Laurie Jadick-Geiger and Tracy McGee to "discuss and agree upon our unified approach to communicating with ED (sic)" (Capgemini Submission Ex. 7) Three days later, on June 13, 2003, Josephine Hughes sent a letter to Mr. Heller, (copy attached hereto) which among other things, stated that:

    a. "As you know, CGE&Y does not determine eligibility for benefits once a claim has been submitted. That responsibility, per the AD&D Plan, is within the sole discretionary authority of AIG." [This statement appears to be at odds with AIG's June 23, 2003 letter which stated that CGE&Y had both determined when premiums were paid through and when Patricia's coverage terminated. (Plaintiff's Fact #42)]

    b. "The payroll deduction taken from her final pay in the amount of $12.00 was for the period of coverage fro January 16, 2003 through January 25, 2003, her last day of employment." [This statement is at odds with CGE&Y's April 28, 2003 e mail to AIG (Plaintiff's Fact #33), its July 31, 2003 letter to Mr. Heller (Plaintiff's Fact #47); its May 28, 2004 letter to counsel for Heller (AR p. CG00047), and its proposed Summary Judgment Facts #8-10). This earlier letter also explains why, in August 2003, CGE&Y insisted that Ms. Oldham issue a modified (and "softened") letter to Mr. Heller on August 13, 2003, attempting to alter her more candid July 31, 2003 letter to him. (Plaintiff's Facts #47-48). Plaintiff would like to be able to inform the Court of Ms. Oldham's job title and role in the handling of this claim. Capgemini has objected to providing such information as irrelevant and inadmissible. (See exchange of e mails between counsel dated February 26, 2005 and February 28, 2005, copy attached hereto)

14) Admitted.

15) Admitted.

16) Admitted.

17) Admitted.

18) Admitted. Plaintiff notes that AIG did not provide responses to all inquires. (See Plaintiff's Fact #56.)

19) Admitted

20) Admitted Plaintiff notes that Capgemini did not provide a response to all inquiries. For example, the April 2, 2004 letter sought a description of the manner in which premiums were collected by CGE&Y and transmitted to AIG. A.R. p. CG0043- item #8. Capgemini's May 28, 2004 letter provided an inadequate response. (See also Plaintiff's Facts #58)

21) Admitted. But plaintiff contends that CGE&Y's attempt in the December 20, 2004 letter to alter the administrative record as to Patricia Heller's (non) receipt of a VP Continuation of Benefits Summary should be denied. See Plaintiff's Motion to Strike the affidavit of Ms. Jadick-Geiger. Plaintiff also disputes that CGE&Y properly furnished a copy of the SDP to Patricia Heller. (Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at pp. 3-4)

22) Admitted. But, Plaintiff contends that because Patricia's coverage never ended, the conversion provisions of the Plan are irrelevant to plaintiff's claim. (Plaintiff's Memorandum in Support of His Motion for Summary Judgment and Memorandum in Opposition to Defendants' Motions for Summary Judgment)

**ADDITIONAL FACTS DEMONSTRATING THAT PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED**

Plaintiff hereby incorporates his Rule 56.1 Statement of Material Facts in Support of his Motion for Summary Judgment (as amended to include the additional facts established by Ex. 7 of Capgemini's Summary Judgment Submission and CGE&Y's

June 13, 2003 letter to Mr. Heller discussed above in response to Capgemini Fact #13)

                                      EDWARD HELLER
                                      By his attorney,

                                      Joseph H. Skerry, III
                                      BBO# 544124
                                      237 Lexington Street
                                      Woburn, Massachusetts 01801
                                      781-938-1301
                                      781-938-1344
                                      jayskerry@rcn.com

### CERTIFICATE OF SERVICE

I Joseph H. Skerry, III hereby certify that I served the forgoing by mail on counsel of record.

March 25, 2005

                                      Joseph H. Skerry, III

## Hughes, Josephine P.

**From:** Hughes, Josephine P.
**Sent:** Friday, June 13, 2003 5:56 PM
**To:** Jadick-Geiger, Laurie; McGee, Tracey
**Cc:** Kontowicz, Jodie
**Subject:** FW: Follow-up on the AIG Insurance Claim - Pat Heller

Laurie and Tracey
  Here is the final version of the letter we discussed (including Neal's edits) which I sent today to Ed Heller. Regards. JO

-----Original Message-----
**From:** Hughes, Josephine P.
**Sent:** Tuesday, June 10, 2003 1:20 PM
**To:** McGee, Tracey
**Cc:** Jadick-Geiger, Laurie; Dascalu, Michele D.
**Subject:** FW: Follow-up on the AIG Insurance Claim - Pat Heller

Tracey
  Please review. Our research indicated from the beginning that Pat would not be eligible for AD&D since coverage ended on her last day of work with CGE&Y and she had not covered to an individual policy prior to her death.
Michele
  Could you set up a brief (1/2 hour) call with me, Laurie and Tracey ASAP? We need to discuss and agree upon our unified approach to communicating with ED (who will quickly get back to him, the message, etc.). Thanks. JO

-----Original Message-----
**From:** Jadick-Geiger, Laurie
**Sent:** Tuesday, June 10, 2003 11:54 AM
**To:** Hughes, Josephine P.; Kontowicz, Jodie
**Subject:** FW: Followup on the AIG Insurance Claim - Pat Heller

I need your advise here
Ed is not satisfied with what he is being told


Laurie

Laurie Jadick-Geiger
Associate Director / Services PRM
office: 917-934-8822  capcom: 8655234
IM: lauriejadick

-----Original Message-----
**From:** EDHELLER@aol.com [mailto:EDHELLER@aol.com]
**Sent:** Tuesday, June 10, 2003 10:42 AM
**To:** Jadick-Geiger, Laurie
**Subject:** Followup on the AIG Insurance Claim - Pat Heller

Laurie,

Yesterday I received word from Jill Vivian at AIG Claims Services that she had recommended that the AD & D claim under Pat's insurance throiugh CGEY be denied. She submitted this recomendation to her management for review. This outcome will not satisfactory to me.

This recommendation was based at least in part on information that is erroneous. She stated that she had been told the insurance premiums has stopped prior to Pat's death. That is clearly not the case if one looks at Pat's last pay stub.

4/20/2004

In addition, she seemed to be of the opinion that the 31 day conversion option did not apply. Both the CGEY Benefits documentation and the AD&D Summary Plan Description read otherwise (page 10), if premiums are current.

I have learned from insurance industry resources that it is standard practice to cover claims within the 31 conversion period. Four out of four companies surveyed supported this practice.

I hope you are able to help get this matter can be cleared up without a more extensive or expensive process.

Thank you for your asistance.

Regards,
Ed Heller

4/20/2004



Cap Gemini Ernst & Young U.S. LLC
750 Seventh Avenue
New York, NY 10019
Direct: 212-314-8200

June 13, 2003

Mr. Edward Heller
20 Indian Hill Road
Weston, MA 02493

Dear Mr. Heller:

We are responding to the questions you have regarding the status of your claim for benefits under the Cap Gemini Ernst & Young U.S. Accidental Death & Dismemberment Plan ("AD&D Plan"). As you know, CGE&Y does not determine eligibility for benefits once a claim has been submitted. That responsibility, per the AD&D Plan, is within the sole discretionary authority of AIG. However, we provide the information below as a guide to our understanding of AIG's position on your claim.

According to the provisions of the AD&D Plan, coverage under the Plan ends as follows.

### TERMINATION OF COVERAGE

Coverage under the AD&D Plan will cease on the day in which one of the following occurs:
- **You are no longer employed by a participating employer**
- The AD&D Plan terminates or is amended to exclude the class of individuals that includes you or your dependents
- If you become eligible for coverage under a plan intended to replace this coverage
- If AIG terminates the policy
- If the Company discontinues the Plan
- If premiums due under the insurance policy have not been timely paid.

Based on your wife's last day of employment, her coverage under the AD&D Plan ended on January 25, 2003. The payroll deduction taken from her final pay in the amount of $12.00 was for the period of coverage from January 16, 2003 through January 25, 2003, her last day of employment.

Please be advised that you have certain rights under the Employee Retirement Income Security Act of 1974 ("ERISA") in the event your claim is denied. Below is a summary of your right to file an appeal with AIG in the event that you do not agree with the



determination made on your claim. This information can also be found in the attached AD&D Summary Plan Description.

| Review of Claim | AIG has the sole discretionary authority to determine eligibility for benefits and to interpret the terms of the insurance policy. All determinations and interpretations made by AIG are conclusive and binding on all parties.

A decision on a claim will be made within 90 working days after receipt by AIG of a properly executed, complete proof of loss. Complete proof of loss includes any investigation by AIG necessary to determine its liability under the insurance policy.

If your claim is denied in whole or in part, AIG will provide written notice of the denial to you. The notice will contain: (1) the specific reason or reasons for the denial; (2) specific references to pertinent provisions of the policy upon which the decision is based; (3) a description of any additional material or information needed to perfect the claim and an explanation of why it is necessary; and (4) an explanation of the Plan's claim review procedures.

You may request a review of the denied claim. The request must be submitted in writing within 60 days after you receive written notice of the denial. You have the right to review, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits, and you may submit written comments, documents, records and other information relating to your claim. You should submit your request for review to the office of AIG to which you submitted your initial request for benefit payment.

AIG will review your claim and ordinarily notify you of its final decision within 60 days of receipt of your request. If special circumstances require an extension of time (of up to an additional 60 days), you will be notified of such extension during the 60 days following receipt of your request. The decision on review will be in writing, and it will include the specific reasons for the decision and the specific references to the pertinent provisions of the policy upon which the decision is based. |
|---|---|

We have confirmed with AIG that they are still in the process of making a determination on your claim for benefits.

Regards,

*Josephine Hughes*

Josephine Hughes – HR Director

**Joseph Skerry**

| | |
|---|---|
| **From:** | Epstein, Emily [eepstein@orrick.com] |
| **Sent:** | Monday, February 28, 2005 8:20 PM |
| **To:** | 'Joseph Skerry' |
| **Cc:** | 'gerry.silver@capgemini.com'; 'neal.stern@capgemini.com'; Edmundson, D.Barclay; D'Ambrosio, Alan A. |
| **Subject:** | Capgemini/Heller Job Titles |

Jay,

Hello. As we have discussed with you on several occasions, you are not entitled to discovery. A claim based on a denial of benefits is limited to the administrative record. See *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003); *see also Curtin v. UNUM Life Ins. Co. of Am.*, 298 F.Supp.2d 149 (D. ME 2004). We provided you a list of job titles as a courtesy, although we were not required to do so. You have now requested additional information that does not appear to be either relevant nor admissible in this matter. While we want to be as cooperative as possible, we will be unable to provide you with the additional information you requested. I would note, however, that much of the information regarding the job positions of personnel can be found in the Administrative Record. In fact, that is where most of our information came from. Moreover, the information you have requested does not relate to claims #4 or #5 (both of which claims you stated you would drop upon receiving the affidavit).

Thank you.

Emily

> -----Original Message-----
> **From:** Joseph Skerry [mailto:jayskerry@rcn.com]
> **Sent:** Saturday, February 26, 2005 5:10 AM
> **To:** Emily Epstein
> **Subject:** Job Titles
>
> Emily- I am in receipt of your February 25, 2005 letter. Thank you.
>
> Could you please provide sufficient information (such as their department, and the reporting hierarchy in the department(s)) so that I can determine the role of each of the listed individuals in the claim? Simply saying someone was an "Associate" or an "Associate Director" provides little guidance- an Associate Director of what?. I am not sure if you participated in the telephone call with Jim Baker about this topic, but as I informed Jim, my purpose in asking for job titles was so that I could evaluate who was participating/making decisions. At the time Jim, I was surprised to hear Jim argue that it did not make a difference who made the various decisions.
>
> Also- could you provide similar information for Lynne Oldham, the author of the July 31, 2003 (AR AIG 00133) and August 13, 2003 l(AR AIG 00128) letters? I neglected to include her in my December 23, 2004 e mail request.
>
> Thank you
> Jay Skerry

3/20/2005